*ALLEN and DANIEL, Js.,
dissented on the last question considered
by Judge Bee, for the reasons stated in the opinion ‘ of Judge Allen in the preceding case of Phaup &c. v. Stratton. They concurred on the other questions.
Judgment affirmed.
BILLS, NOTES, AND CHECKS.
I. Definitions.
II. Requisites and Validity.
1.. Form.
2. Negotiability.
3. Capacity and Authority; of Parties.
a. Agents.
b. Partners.
c. Alien Enemies.
4. The Consideration.
a. Presumption of Consideration.
b. Legality and Sufficiency.
c. Failure of Consideration.
5. What Law Governs the Validity.
III. Acceptance of Bill of Exchange.
IV. Transfer.
1. By Indorsement.
2. By Assignment.
3. By Delivery.
V. Rights of Holder.
1. What Constitutes Holder in Due Course.
a. Value.
b. Bona Fides.
2. Right of Holder in Due Course.
3. Paper Transferred, Overdue.
4. Presumptions in Holder’s Favor.
5. Effect of Fraud or Duress.
6. Effect-of Usury.
7. Effect of Alteration.
VI. Diligénce Required of Holder.'
1. Of Negotiable Paper.
a. Presentment' for’ Acceptance.’
b. ’ Presentment for Payment
(1) . Necessity Of Presentment.
(2) Mode of Presentment.'
(3) ‘ Time of Presentment!
(4) Place of Presentment:
c. Protest. '
(1) Necessity of Protest.
(2) Time of Making Protest.
(3) ’ Protest as Evidence.
d. 'Notice’of’Dishonor.
CO ’Necessity of Notice.
(2) Mode of Giving'Noti'ce.
(a) Where Parties Reside in Samé Town.
(b> Where Parties Ré'si’de iñ Différ ent Towns.
(3) What Amounts to Sufficient Sérvice by Mail.
(4) Time of Giving Notice.
(5) Place of Giving Notice.
"e. Excuses for Want of' Presentment, Protest, ’ and Notice.
2. Of Nonnegotiable’ Paper.'
VII: Liabilities of Parties.
1! The Maker.-
2. The Drawer of a Check.
3.. Indorsqrs.
4. Irregular Indorsers.
5: Assignors.
6. Transferrer without Indorsement.
'7. Accommodation Parties.
VIII. Discharge and,Payment.
1. By Execution of a New Note.
2. To Whom Payment May Be Made.
3. In What Currency Payment May Be Made.
4. Effect of Payment by Particular Parties.
5. Tender of Payment.
6. Discharge of Parties.
7. /Equities Arising upon Payment by Parties Secondarily Liable,
a. Contribution.
’b. Subrogation.
IX. Actions.
1. Who May Bring Action.
2. Against Whom-Action May Be Brought.
3. The Declaration.
4. The Pleas.
5. ’Set-Off.
*283 6. Evidence.
a. Admissibility.
b. Weight of Evidence.
c. Competency of Witnesses.
7. The Judgment.
8. Relief in Equity.
Cross References to Monographic Notes.
Action of Debt, appended to Davis v. Meade, 13 Gratt. 118.
Agencies, appended to Silliman v. Fredericksburg, etc., R. Co., 27 Gratt. 119.
Assignments, appended to Ragsdale v. Hagy, 9 Gratt. 409.
Banks and Banking, appended to Bank v. Marshall, 25 Gratt. 378.
Bonds, appended to Ward v. Churn, 18 Gratt. 801.
Interest, appended to Fred v. Dixon, 27 Gratt. 541.
Usury, appended to Coffman v. Bruffy, 26 Gratt. 698.
Í. DEFINITIONS.
Bill of Exchange. — A bill of exchange may be defined as an open letter of request, addressed by one person to another, desiring him to pay a certain sum of money to a third person mentioned therein, or to his order, or it may be made payable to bearer. Fitzhugh v. Love, 6 Call 5; Dunlop v. Harris, 5 Call 28.
Promissory Note. — Promissory notes are instruments . purporting an absolute promise, by the maker, to pay to a person therein named, or his order, a sum of money therein named. Dunlop v. Harris, 5 Call 28.
Check. — A check .is an .inland bill ¡of exchange drawn on a bank or other house of deposit. Purcell v. Allemong, 22 Gratt. 739.
II. REQUISITES AND VALIDITY.
1. FORM.
Must Be Absolute and Certain. — A bill of exchange or promissory note, müst be for money certain in amount, and payable absolutely and at all events. But it is not essential either to the character of a bill of exchange or of a promissory note that it should be negotiable. Averett v. Booker, 15 Gratt. 163.
So an order drawn on a particular fund or debt, and for the whole thereof, is not a bill of exchange because not payable absolutely, its payment being subject to the contingency that the fund shall remain in existence; Such an order only operates as equitable assignment of the fund on which it is drawn. First Nat. Bank v. Kimberlands, 16 W. Va. 555; Jolliffe v. Higgins, 6 Munf. 3; Riffe v. Gerow, 29 W. Va. 462, 2 S. E. Rep. 104; Shinn v. Board of Education, 39 W. Va. 497, 20 S. E. Rep. 604.
And an order drawn by a legatee under a will upon the executors, for value received, directing them to pay to the order of the drawee a specific sum, the amount of the legacy, out of the funds in their hands, destined by the testator for the payment thereof, Is an equitable assignment of the legacy and not a bill of exchange. Anderson v. De Soer, 6 Gratt. 363.
Order to Pay Out of a Certain Fund. — An order to payout of a specified fund, or an order to pay the payee a certain amount on account of work and labor done by the drawer for the drawee, is not a bill of exchange. Pitman v. Breckenridge, 3 Gratt. 127; Bank of Wellsburg v. Kimberlands, 16 W. Va. 555; Averett v. Booker, 15 Gratt. 163.
And an order to “pay four hundred dollars out of funds that'may be dhe me as per onr contract” is not absolute, but conditional; and the acceptor’s liability thereon is dependent on the contingency that the amount shall be due to drawer according to the terms of the contract between the drawer and drawee. Riffe v. Gerow, 29 W. Va. 463, 2 S. E. Rep. 104.
And the following instrument does not constitute a bill.of exchange, nor import a valuable consideration, and no promise is raised thereby, in favor of the-payee against the drawer, from the failure of the drawer to accept or to pay: “Lynchburg, Dec. 8, 1852, $1,080.59. The trustee of Norvell and Averett will pay to William T. Booker the sum of one thousand and eighty dollars and fifty-nine cents, with interest from the first of March, 1850, out of any moneys in his hands belonging to me. William B. Averett.” Averett v. Booker, 15 Gratt. 163.
Agreements for Attorney’s Fees. — But an agreement-in a note to pay attorney’s fees for collection does not destroy,its negotiability but such stipulation is a - penalty, and not enforcible. Rixey v. Pearre, 89 Va.. 113, 10 S. E. Rep. 498. But where no objection is made to such penalty in the trial court, an -objection in the appellate court comes too late. Ronald v. Bk. of Princeton, 90 Va. 813, 20 S. E. Rep. 780.
Must Not -Be under Seal, — A single bill under seal is not a note, but a specialty; and,, therefore, the drawers and indorsers .of ,such single bill, though It be made payable and. negotiable at a bank in the state, cannot be sued-jointly in debtor in assumpsit. Mann v. Sutton, 4 Rand. 253; Laidley v. Bright, 17 W. Va. 779. But where an instrument has scrolls attached opposite the signatures which are intended as substitutes for seals, this is not sufficient to make them sealed instruments, unless the seals are recognized in the body of the instrument, and they still reta-in their original character and may be declared on as simple bills or notes. Peasley v. Boatwright, 2 Leigh 195; Jenkins v. Hurt, 2 Rand. 446; Cromwell v. Tate, 7 Leigh 301; Clegg v. LemessUrier, 15 Gratt. 108.
2. NEGOTIABILITY.
Negotiability of Paper Payable at a Particular Bank —Statute,—By the Code of 1860, ch. 144, §7, it was provided, that, “every promissory note, or check fon money, payable in this state at a particular bank, or at a particular -office thereof for discount and deposit, or at the place of business of a savings institution or a savings bank shall be deemed negotiable.” Under this statute a note made by residents of Alexandria and indorsed by the president of-the Bank of the Old Dominion where it was discounted, was held negotiable although it did not appear upon its face that it was payable in the state of Virginia, as it was competent to show this by extrinsic evidence. McVeigh v. The Bank of the Old Dominion, 26 Gratt. 785.
Payable at Either of Two Banks. — So in Freeman’s Bank v. Ruckman, 16 Gratt. 126, a note which was payable at either of two banks in this state was held not negotiable under this statute because it did not appear from its face to- be payable at a “particular bank in this state.”
Name of Bank Written in after Negotiation. — But under this statute a note which on its face was not negotiable because not payable at a particular bank, but which had a blank space left for the insertion of the bank, was held to be negotiable, where it was shown that the parties intended it to be negotiable and thought that they were executing negotiable paper, and there was a usage shown to leave notes *284 blank as to the bank at which they were payable, and for the holder to fill such blank. Woodward v. Gunn, Va. Law J., 1878, p. 243, 1 Va. Dec. 293.
Later Statute — Bank Must Appear from Paper. — But the revisors of the Code of 1887, with full knowledge of the construction placed upon this statute by the court, altered the language so as to read, “Every promissory note which on its face is payable in this state at a particular bank,” etc. Under this statute a note dated “Harrisonburg, Va.,” and payable at the “First National Bank of Harrisonburg,” was held not to be negotiable, because it did not show on its face that the bank at which it was payable was in this state. Long v. Pence, 93 Va. 584, 25 S. E. Rep. 593.
Bank Out of Existence. — Under this statute an indorsement of an overdue note payable at a bank which had ceasedto exist more than five years before the indorsement was made, was held to be merely an assignment of common-law paper and such indorsement was not to be governed by the rules of the law merchant. In this case it was held that the "assignee of the paper was bound to exercise due diligence in suing the maker and obtaining judgment and execution against him, as a condition precedent to his recourse against the indorser, unless the maker was notoriously insolvent. Broun v. Hull, 33 Gratt. 23.
Bank Must Be an Incorporated Institution. — And under this statute, which is the law of West Virginia as well as of Virginia, it has been held that the bank at which the paper is payable must be an incorporated institution in order for the paper to be negotiable. Bank v. Hysell, 22 W. Va. 142.
Negotiable Instruments Law. — Under the negotiable instruments law which is now in force in Virginia, any paper which contains words of negotiability is negotiable if it possesses the other requisites of negotiable paper, such as certainty, etc. § 1, Negotiable Instruments Law.
Paper Payable at a Bank Out of Virginia — Statute.— Under act of March 22, 1837, a note for a sum certain, payable to- order, and negotiable and payable at a bank out of the state of Virginia, is a note negotiable at a bank in Virginia, and therefore is placed on the same footing as foreign bills of exchange, with the like remedy for recovery thereof against the maker and indorsers jointly, and with the like effect, except as to damages. Hays v. Northwestern Bank of Virginia, 9 Gratt. 127.
3. CAPACITY AND AUTHORITY OF PARTIES.
a. Agents.
The General Rules of Agency Are Applicable. — The principles which ordinarily govern the authority of agents are applicable to agents to draw or indorse bills of exchange, promissory notes and checks. The principal is bound by the acts of the agents within the authority which he has actually given them, which not only includes the precise act which he expressly authorized them to do, but also whatever usually belongs to the doing of it, or is necessary to its performance. Beyond this, he is*bound by the acts of the agent within the apparent authority which the .principal himself knowingly permits the agent to assume or which he holds the agent out to the public as possessing. Hooe v. Oxley, 1 Wash. 19; Mann v. King, 6 Munf. 428; Hopkins v. Blane, 1 Call 361; Smith v. Lawson, 18 W. Va. 212; Richmond, etc., R. Co. v. Snead, 19 Gratt. 354.
Acts within the Apparent Scope of Authority. — Thus a power of attorney in due form, authorized the party “to draw checks, indorse notes, and generally to do all and every act and deed, towards the execution of the donor’s business at a certain bank.” This power was deposited in the bank to be inspected, when called for, by any person interested in matters relating thereto. The donor was held bound to make good to a bona fide purchaser for a valuable consideration, an indorsement of a note negotiable at the said bank, which the party made in his name as attorney; notwithstanding the real object of the power, verbally declared at the time of its execution, was to authorize the attorney to renew certain accommodation papers then in the bank, and not to endorse any other paper. Mann v. King, 6 Munf. 428.
Excess of Authority. — But where an agent is authorized to draw bills of exchange only for certain specified purposes, this is a special agency, and if the agent exceeds his authority and gives bills of exchange for purposes not specified in his authority, they do not bind the principal. Hopkins v. Blane, 1 Call 361.
And a party who deals with an agent, with knowledge or means of knowledge that he is exceeding his authority by indorsing the name of his principal for his own benefit, is not entitled to recover from the principal. Stainback v. Bank, 11 Gratt. 269.
Effect of a General Power of Attorney. — A general power of attorney to draw, indorse, and accept bills, and to make and indorse notes does not authorize the attorney to draw a bill in the joint names of himself and principal. And such a power does not authorize the attorney to draw a bill in the name of his principal upon a person having no funds of the principal in his hands, and if such bill is accepted and paid by the drawee for the accommodation of the drawee, there is no implied obligation of the principal to repay him. Stainback v. Read, 11 Gratt. 281.
And in the absence of anything to show a different intention, a power of attorney'to draw, indorse or accept bills; and to make and indorse notes, negotiable at a particular bank in the name of the principal, must be construed as giving authority to act only in the separate individual business of the principal; and an indorsement of a bill by the agent for his own benefit in the name of his principal does not bind the principal. Stainback v. Bank, 11 Gratt. 269.
Authority to Execute a Joint Note No Authority to Execute an Individual Note. — Where several persons united in a power to authorize another to indorse their names upon a bill drawn in favor of one of them, it was held that the power given did not warrant several and successive indorsements, but only a joint indorsement of and for them all, so that they should be jointly bound as indorsers to the holder, and equally and jointly bound among themselves. Bank of U. S. v. Beirne, 1 Gratt. 234, 42 Am. Dec. 551.
How the Agent Should .Sign. — Where a negotiable instrument is made by an agent for his principal, the agent, in order to exempt himself from liability must not only ñamé his principal, but he must express by some form of words that the writing is the act of the principal, though done by the hands of the agent. A mere description of the general relation which the person signing the paper owes to another, without indicating that the particular signature was made in the execution of the agency, is not sufficient to charge the principal or to exempt the agent from personal liability. Exchange Bank *285 v. Lewis County, 28 W. Va. 273. Thus, the mere addition of the word “president” to the signature of the president of the corporation on negotiable paper does not bind the corporation. Scott v. Baker, 3 W. Va. 285; Rand v. Hale, 3 W. Va. 495.
And a note signed “J. B., Agent for Lewis county” is not the note of Lewis county, but the individual note of the agent. Exchange Bank v. Lewis County, 28 W. Va. 273.
President of a Bank. — A president of a bank has no inherent authority to indorse or transfer negotiable paper belonging to the bank, but such authority may be implied by his habit, known to the directors, of doing acts of the same general character. Smith v. Lawson, 18 W. Va. 212.
Implied Authority of a Bank Cashier. — The cashier of a bank has yrima facie authority by virtue of his office to transfer negotiable promissory notes belonging to the bank in the transaction of the nsual business of the bank, and his transfer of such a note to a party, who receives it in good faith, confers a valid title to the note on the transferee. Smith v. Lawson, 18 W. Va. 212.
Transfer by Cashier for Improper Purpose. — But the cashier's prima fade authority to transfer the negotiable notes of a bank will not make such transfer valid, if it be proven that the transferee knew that the transfer was made by the cashier not in the usual course of business and for an improper purpose. Smith v. Lawson, 18 W. Va. 212.
Authority of Cashier Restricted by Charter. — And so where the management of the affairs of a banking corporation is entrusted by its charter to aboard of directors, unless specially authorized by the charter, the cashier of such banking corporation has no power to assign the discounted bills and notes to a depositor in payment of his deposits without authority from the board of directors. Lamb v. Cecil, 25 W. Va. 288.
Implied Authority of Treasurer of a Corporation.— The treasurer of a corporation has as an incident of his office the authority to draw checks unless such authority is taken away or restrained. But the power to bind the corporation by indorsing negotiable notes is not inherent in the treasurer, and he that takes such notes by indorsement from an officer of the corporation does so at his peril. Davis v. Rockingham, etc.. Co., 89 Va. 290, 15 S. E. Rep. 547.
President of Railroad Company. — The authority of a president of a railroad company to make contracts for necessary labor for the company is incident to his office, and he may furnish evidence of the amount payable under the contract, either before or after the performance of the service, and put that evidence in the form of a due bill or promissory note, in his discretion, unless his authority is restricted by special legislation, or by regulations of the company known to the other contracting party. Richmond, etc., R. Co. v. Snead, 19 Gratt. 354.
Bills by Railroad President in Unusual Form.— And the fact that the president of a railroad company usually gave notes of the company on printed forms, and signed them as president, was held not sufficient to prevent a recovery against the company upon a due bill, not upon a printed form, and not signed as president, but was a mere circumstance to be weighed by the jury in determining whether or not the consideration passed to the company so as to make them liable. Richmond, etc., R. Co. v. Snead, 19 Gratt. 354.
Parol Evidence to Show Benefits Received by Principal. — "Where the president of a railroad company signed in his own name a bill for “labpr performed on cottage lot of railroad company,” parol evidence was held admissible to ascertain whether the work was performed for the president or for the company. Richmond, etc.., R. Co. v. Snead, 39 Gratt. 354.
Note by Agent of Confederate States. — A note given by an agent of the late confederate government, and binding himself for the price of cattle purchased for the support of the armies of .such government and for the purpose of aiding and carrying on the war against the United States is a valid contract, and may be enforced against the obligor, after the end of the war. Ruckman v. Lightner, 24 Gratt. 19.
Agent for Negotiation — Scope of Authority. — The delivery of an incomplete negotiable note by the maker to a third person to be negotiated does not constitute the latter the agent of the former to make alterations, in parts of the note already complete, which are necessary to give effect to the note for the purpose for which it was intended. Hoffman v. Planters’ Nat. Bk. (Va. 1901), 7 Va. Law Reg. 570.
Parol Testimony Inadmissible to Show Agency.— Where there was nothing on the face of anote to indicate that it was made by a party acting as agent, parol evidence was held inadmissible to show that the maker made the note in payment for cattle for the confederate government for which he was agent. Ruckman v. Lightner, 24 Gratt. 19.
Express Ratification. — if one promises to pay a note, to which his name has been signed by one assuming, without authority, to act as his agent, it is an adoption of the act of the agent, and in law, is equivalent to an antecedent authority to execute the note. Devendorf v. W. Va., etc., Co., 17 W. Va. 135.
But an express ratification of an insolated act beyond the authority of agent, is not sufficient to charge the principal for like acts in the future. Thus a letter authorized the addressee and another to use the name of the sender as indorser. With this letter in his possession the addressee indorsed the name of the sender upon his bills in such manner that it did not appear by the paper to have been done by an agent. Some of these bills were protested, and afterwards the donor of the power by an indorsement on the letter, said ; “The above is my signature and letter, the legal liabilities of which I hereby acknowledge.” The addressee again indorsed the name of the donor of the power of other bills in the same manner. The donor of the power was held not liable upon these indorsements. Union Bank of Maryland v. Beirne, 1 Gratt. 226.
Implied Ratification of Power. — And where in consequence of a notorious agency, the agent is in the habit of drawing bills, which the principal has regularly paid, this is such an affirmation of his power to draw, that the principal will be bound to pay other bills drawn by the agent, though the agent makes a misapplication of the money raised by such bills. Hooe v. Oxley, 1 Wash. 19, 1 Am. Dec. 425.
While the courts should generally refuse to allow a recovery against one person on a negotiable instrument made by another, on proof that the latter was acting as his agent, yet a person may make the signature of another his own by using or allowing it to be used as such in the course of his business, and he will and should, under such circumstances when clearly proved, be as much bound as if his own name was affixed to the bill or other negotiable instrument in question. But the court in applying this principle should be careful to limit its application to the class of cases to which it properly belongs, and not so apply it as to ignore other *286 well-established principles applicable to negotiable instruments. Devendorf v. W. Va., etc., Co., 17 W. Va. 135.
b. Partners.
Firm Paper Given for Partner’s Private Transaction. —Where a third party takes from a partner his signature of his firm upon his own private individual transaction he cannot hold the firm without proof of authority, adoption, or ratification of the act. And the taker of the note under such circumstances must prove the assent of the other partners, for prima facie such a transaction is a fraud, both on the part of the debtor and the creditor. Tompkins v. Woodyard, 5 W. Va. 216.
Power of Partners to Make an Indorsement for Accommodation. — The power of partners to bind one another by commercial paper does not extend to indorsements or other contracts for the accommodation of a third person. Hence, the rule is well settled that when one member of a partnership becomes an accommodation maker or indorser, for the benefit of a third person, in the name of the firm, without the assent, express or implied, or the subsequent ratification of his copartners, such paper cannot be enforced against them or the firm by the holder who takes with knowledge of its accommodation character. Tompkins v. Woodyard, 5 W. Va. 216.
Renewal of Note after Retirement of Some Members of Firm. — Where a partnership note is given, and renewed after the dissolution of the partnership by the remaining partner in the old firm name, such renewal does not bind the retiring partner, neither does its acceptance, discharge the preexisting debt; not being valid as to the retiring partner, the consideration fails, and the old debt remains. The renewal of the note in the firm name is strong evidence that the promisee did not intend to release the other partner and hold, the partner’ who’ executed it liable alone. Parker v. Cousins, 2 Gratt. 372; Miller v. Miller, 8 W. Va. 542.
Thus, in Miller v. Miller, 8 W. Va. 542, a note was made by a firm and indorsed at a bank for the firm’s accommodation by a party who did not know all of the members composing the firm. After the execution of this, note one of the members of the firm withdrew, the indorser not being notified of his withdrawal. The note was'renewed at the request of the firm and the indorser again went on the note. Upon the maturity of the note and the failure of the firm to pay it, it was retired by the indorser. In an action by this indorser against the firm, the members of the firm, including the party who had withdrawn prior to the renewal of the note, were held liable to the indorser for the money paid by him upon his indorsement.
Sealed Obligation by One Partner Held a Note in Equity. — A partner, instead of executing a promissory note for a sum of money lent the firm, executed by mistake a penal obligation, in the name of the firm, under seal. Upon a suit in equity upon the instrument, it was held that although at law there was no remedy on the sealed obligation, except against the partner who executed it, yet equity had jurisdiction to correct the mistake, and hold all the partners as much bound as if there was no seal and it was an ordinary promissory note. Galt v. Calland, 7 Leigh 594.
Notes between Partners in Settlement of Partnership flatters. — The execution of a negotiable note by one member of the partnership to the other, for the balance found due to him upon,a settlement of the partnership accounts, is conclusive upon such partner as to the correctness of such settlement in the absence of accident, mistake or fraud in making such settlement. Mahnke v. Neale, 23 W. Va. 58. See post, “Evidence.”
c. Alien Enemies. — War operates as an interdiction of all commercial and other pacific Intercourse and communication with the public enemy ; and every species of private con tract made with subjects of the enemy during the war is unlawful. The late rebellion was war, and citizens on opposite sides were alien enemies, and their relations under the constitution were suspended and superseded for the time.by new relations under the laws of war. A check drawn by a citizen of one belligerent upon a, citizen of the other during this war was unlawful and void. Billgerry v. Branch, 19 Gratt. 393; McVeigh v. Bank of Old Dominion, 26 Gratt. 785.
And a note made in June 1861, by a person resident within the confederate lines,' and discounted by a bank located within the Union lines, was illegal and void; unless it was given in renewal of a note made before the war, and by an agent acting under authority conferred before the war- McVeigh v. Bank of Old Dominion, 26 Gratt. 785.
4. THE CONSIDERATION.
a. Presumption oe Consideration.
Possession Prima Facie Imports Consideration. — In an action upon a bill of exchange or a promissory note, the party may recover without averring or proving that- any valuable consideration has been received for it. Such a bill is presumed to stand on valuable consideration, and prima facie imports it. Averett v. Booker, 15 Gratt. 163.
The possession of a bill or a note is prima facie evidence of ownership, and also that the holder received it upon - a valuable consideratiou paid therefor in the usual course of trade. As a general rule, therefore, even where there is a failure of consideration or other equitable defence as between the defendant and the drawee or the payee of the bill or note or his immediate indorser, he cannot call upon the plaintiff to prove when or upon what consideration the bill or note upon which the suit is brought was transferred to him, or how it came into his hands. Bank of Spencer v. Simmons, 43 W. Va. 79, 27 S. E. Rep. 299; Ford v. McClung, 5 W. Va. 156; Averett v. Booker, 15 Gratt. 163; Peasley v. Boatwright, 2 Leigh 195; Snead v. Coleman, 7 Gratt. 300; Crawford v. Daigh, 2 Va. Cas. 521.
Checks — Presumption of Consideration. — The drawing and delivery of a check imply the indebtedness of the drawer to the payee to the amount of the check, and in an action upon a check it is not necessary to aver in the declaration any further consideration. McClain v. Lowther, 35 W. Va. 297, 13 S. E. Rep. 1003.
When Proof of Consideration Is Required. — It is never necessary to aver consideration for any engagement on a bill or note, or to prove the existence of such consideration, unless a presumption against it be raised by the evidence of the adverse party, or unless 'it appear that injustice will be done to the defendant, or that the law will be violated if the plaintiff recover. Bank of Spencer v. Simmons, 43 W. Va. 79, 27 S. E. Rep. 299.
“For Value Received.” — The words, “for value received,” in a note, prima facie establishes a valuable consideration, where it becomes necessary to prove such consideration. Williamson v. Cline, 40 W. Va. 194, 20 S. E. Rep. 917.
*287 b. Legality and Sufficiency.
Note Given in Compromise of Bastardy Proceedings. —A note given to a woman in compromise of a bastardy proceeding is binding and valid, and on sufficient consideration, and the payment thereof cannot be avoided on the ground that the compromise of such proceeding is contrary to public policy, or against public morals. Nor can the innocence of the putative father be set up as a defence against the recovery of such note, in the absence of fraud on the part of the obligee in procurement thereof. Billingsley v. Clelland, 41 W. Va. 234, 23 S. E. Rep. 812.
Notes Payable in Confederate Honey. — A note made payable in confederate money was illegal and void and no payment of it could be enforced. Nor does it matter that it was made within the military lines of the late so called Confederacy, as a question of illegality is to be tested not by the pretended authority of the late insurrectionists, but by the laws of the lawful government of the country. Where the parties to a contract to be paid in confederate money, are in pari delicto, a court of equity will equally withhold its aid from the guilty party who would invoke it to get rid of such illegal contract executed. Brown v. Wylie, 2 W. Va. 502; Calfee v. Burgess, 3 W. Va. 274. But notes given in renewal o C notes which were given for confederate money, were held valid in McLaughlin v. Beard, 5 W. Va. 538.
Notes Given for Hire of Slaves. — During the year 1861, slavery was recognized as existing both by the United States and Missouri, and slaves owed no allegiance to either. There could be no demand for their services by the United States or the state, which could occasion a failure of the consideration of notes, made in the state of Missouri, and given for the hire of slaves. Booker v. Kirkpatrick. 26 Gratt. 145.
Usurious Considerations. — Every subsequent security given for a loan originally usurious, however remote or often removed, is void. Coffman v. Miller, 26 Gratt. 701; Drake v. Chandler, 18 Gratt. 909. But a new note made by a different person is purged of usury, unless the transaction was merely intended as an evasion of the usury statute. Coffman v. Miller, 26 Gratt. 701; Keckley v. The Union Bank, 79 Va. 464.
Usurious Notes Sold through a Broker to Innocent Purchasers. — But where the maker of a negotiable note payable to his own order, indorsed it and sold it through a third person at a greater rate of interest than that allowed by law, the transaction was held not usurious, where the purchaser did not know the character of the note or that it was sold for the benefit of the maker. Bailey v. Hill, 77 Va. 492; Taylor v. Bruce, Gilmer 42; Whitworth v. Adams, 5 Rand. 333; Brummel v. Enders, 18 Gratt. 873.
Forbearance — Recovery of Usurious Consideration.— A sale at a greater discount than the legal interest, of negotiable notes made and indorsed in blank for the purpose of raising money, by a broker for the maker to a purchaser ignorant of that purpose is not usurious. But payment of illegal interest after maturity of notes for forbearance is usury, and the usurious premium may be recovered back. Moseley v. Brown, 76 Va. 419.
Double Charges of Interest in Renewals. — Where it is agreed to renew a note every sixty days for the same amount upon paying the discount, and upon the renewals interest for every sixty-fourth day is charged twice, the notes are not usurious. Parker v. Cousins. 2 Gratt. 372.
Fraudulent and Voluntary Transfers Void as to Creditors. — Negotiable paper, like any other property, may be the subject of fraudulent transfer, as the law merchant cannot protect a transaction mala Jides from the operation of statutory law. Hence, the transfer of an overdue negotiable note with the fraudulent intent to delay, hinder, or defraud the maker of such note out of a just set-off, is void as to such set-off, unless made to a bona fide purchaser of value, without notice of such intent. Davis v. Noll, 38 W. Va. 66, 17 S. E. Rep. 791.
And every gift, assignment, or transfer of a negotiable instrument, on consideration not deemed valuable in law, is void as to existing creditors in the hands of such donee, assignee, or transferee, but not in the hands of a bona fide holder for value. Davis v. Noll, 38 W. Va. 66, 17 S. E. Rep. 791. See monographic note on “Fraudulent and Voluntary Conveyances'’ appended to Cochran v. Paris, 11 Gratt. 348.
Inadequacy of Consideration Must Be Gross to In= validate the Instrument — Where the parties are competent to contract, relief will not be decreed on the ground of inadequacy of consideration, unless the inequality be so gross as to shock the conscience, and of itself to amount to proof of fraud. Jones v. Degge, 84 Va. 685. 5 S. E. Rep. 799; Matthews v. Crockett, 82 Va. 394.
So in a suit to enjoin the defendant from disposing of certain notes executed to him by the plaintiff, and to set aside a sale evidenced by the notes, a contention by the plaintiff that the contract of sale was unconscionable is of no force when it appears that the property will yield from 12 to 22 per cent, on the investment. Loftus v. Maloney, 89 Va. 576. 16 S. E. Rep. 749.
Payment of Interest Is Sufficient for an Extension.— Payment of interest in advance, though at a usurious rate, is sufficient consideration for an agreement to extend the time of payment. Glenn v. Morgan, 23 W. Va. 467.
Want of Consideration in Original Note No Objection to One Given in Renewal. — A party who gives a renewal note after discovering that the representations which led him to sign the first were false, cannot plead want of consideration of the first as a defence to the second. Keckley v. Bank, 79 Va. 458.
Forbearance to Sue. — Forbearance to sue is valuable consideration, and if a creditor take from his debtor and surety a note giving further time for payment, this is a valid consideration to bind the surety. Williamson v. Cline, 40 W. Va. 194, 20 S. E. Rep. 917.
c. Failure of Consideration. — Failure in the consideration does not affect the validity of a negotiable note in the hands of a bona fide holder for value. But the maker, upon paying the holder the amount of the instrument may recover it from the payee if the consideration between them has failed. Wilson v. Lazier, 11 Gratt. 477. For a full discussion of consideration, see monographic note on “Consideration.”
5. WHAT LAW GOVERNS THE VALIDITY.
General Rule. — The general rule is that all instruments made and executed in a country, take effect and are to be construed, as to their nature, operation and extent, according to the laws of the country where they are made and executed. But where the contract is either expressly or tacitly to be performed in any other place than where the same was made and executed, the general rule is in conformity to the presumed intention of the parties, that the contract as to its validity, nature, obligation and. *288 interpretation is to be governed by the law of the place of performance. Hefflebower v. Detrick, 27 W. Va. 16.
Thus, a paper signed in blank was sent to Maryland to be there filled up. It was filled up there, and at the same time, and place was indorsed by the payee to the holders, for value; the note being in fact for the accommodation of the payee. This was held a Maryland contract and to be governed by the Maryland law, though the note was headed from a town in Virginia. Fant v. Miller, 17 Gratt. 47.
Place of Performance. — A note made in Massachusetts and payable at either of the banking houses in Wheeling, Va., is to be governed by the law of Virginia. Freeman’s Bank v. Ruckman, 16 Gratt. 126.
No Place of Performance Named. — Where no place of performance is named in an instrument it is presumed that it is payable where made, and that law will govern. Wilson v. Lazier, 11 Gratt. 477; Heffiebower v. Detrick, 27 W. Va. 16.
Law Existing at the Time of Making Contract Gov« erned. — The rights and obligations of the parties to negotiable paper are governed by the law as it was when the contract was made, and not by the law as it was when the contract becomes payable. The ordinance of the Virginia convention on the 24th of June 1861, dispensed with demand, protest and notice upon all checks, bills and notes payable at a bank located in any city or town if at the time of maturity of such instruments, the town or city was occupied or invested by the public enemies. By an act of the legislature passed on the 10th of May 1862, this ordinance was amended so as to require notice of the dishonor of the bill or note to be given within ten days after the removal of the obstruction created by the presence of the enemies. A note was made and indorsed on the 11th of December 1861, payable at a bank in Fredericksburg in six months. When it fell due the town of Fredericksburg was in possession of the United States forces, but they left in a few months; but no notice of nonpayment was given at any time to the indorsers. The rights and obligations of the parties, were held to be governed by the ordinance which was in operation when the note was made and indorsed; and notice of nonpayment was not necessary to bind the indorsers. Duerson v. Alsop, 27 Gratt. 229.
Making and Indorsing Each Governed by Lex Loci Contractus. — Making a note and indorsing or assigning it are distinct contracts, each governed by the law of the place of the contract. Nichols v. Porter, 2 W. Va. 13.
Presumption as to Law of Foreign State. — In an action by an indorsee against the drawer of a bill of exchange, it was found.by special verdict, that the bill was drawn in Maryland on a person in Virginia, and no law of Maryland was found, declaring such a bill an inland bill. It was held that the court could not take judicial notice of any law of Maryland to that effect, unless it be expressly found ; and such bill being a foreign bill of exchange, according to the general law merchant, it would be so regarded. Brown v. Ferguson, 4 Leigh 37.
Lex Fori Governs Questions of Evidence. — The law of the state where an action is brought determines what is evidence of presentment and dishonor of promissory notes and inland bills of exchange. Corbin v. Planters’ Bank, 87 Va. 661, 13 S. E. Rep. 98.
So where the law of a state where a note is made, declares that it shall be void unless it is stamped, it is void everywhere and an action cannot be maintained upon it in another state. But if in such case the law only declares that the note shall not be available as evidence, an action may be maintained .upon it in another state. Fant v. Miller, 17 Gratt. 47.
Presumption as to Place of Performance —In Hefflebower v. Detrick, 27 W. Va. 16, it was held, that a promissory note purporting on its face to be made at a place within that state and not specifying any place of payment, would in the absence of proof be presumed to have been made and to be payable within that state.
III. ACCEPTANCE OF BILL OF EXCHANGE.
Definition — Acceptance Is the act by which the drawee of a bill of exchange signifies his undertaking to pay,the bill. Bigelow on Bills, Notes, and Checks 36; Christian v. Keen, 80 Va. 369.
Nature and Effect. — An acceptance is an engagement to pay the bill according to the terms of the acceptance. The effect of the acceptance is to give credit to the bill, and to render the acceptor liable as the maker of a note ; it implies an acknowledgment that he has effects of the drawer in his hands, and the circumstance that there were no effects in the hands of the acceptor is of.no consequence, for by making himself a party to the instrument he has contributed to its currency and that perhaps was one reason, on which the holder parted with his money. Bennett v. Maule, Gilmer 305.
Acceptance Is Conclusive as to Signature of Drawer. —It is a well-established rule of commercial law, that the drawee of a bill of exchange is presumed to know the handwriting of the drawer, and if he accepts or pays the bill, although the drawer’s name has been forged, he is bound by the act and cannot recover back the money so paid. Johnston v. Com. Bank, 27 W. Va. 343.
Right of Acceptor to Charge Bill to Drawer before Payment. — Acceptance of a bill does not entitle the acceptor to charge it in account against the drawer from the date of the acceptance, unless he pays the whole money at the time, or discharges the drawer from all responsibility. Braxton v. Willing, 4 Call 288.
When Acceptor May Sue Drawer on His Acceptance. —And the acceptor of a bill of exchange does not become entitled to sue the drawer of the bill upon acceptance. When he has paid the bill, and not be.fore, he may recover back the amount from the drawer in an. action for money had and received. Christian v. Keen, 80 Va. 369; Braxton v. Willing, 4 Call 288.
Acceptance on Faith of Funds. — Where a bill of exchange is drawn on one, who accepts it on the faith of funds of the drawer in his hands, he acquires an equitable interest in those funds, and is entitled to set-off his liability on the acceptances, against his obligation to pay those funds, and to retain them pro tanto for his indemnity. Lambert v. Jones, 2 P. & H. 144.
Where the Consideration for Acceptance Fails. — The general acceptance of an order binds the acceptor, in favor of a payee who took the note bona fide and for a valuable consideration, notwithstanding the consideration, which induced the acceptance, after-wards fails, without any fault on the part, of the payee. Corbin v. Southgate, 3 H. & M. 319.
Effect of a Promise to Accept. — Where the drawee of a bill of exchange promises to accept a bill of exchange drawn on him, this promise to accept is not binding unless supported by a valuable considera *289 tion, or unless some party has taken the hill on the faith of his promise to accept. Brown v. Ferguson, 4 Leigh 37.
Action against Acceptor.— Formerly an action of debt would not lie against the acceptor of a bill of exchange. Wilson v. Crowdhill, 2 Munf. 302; Smith v. Segar, 3 H. & M. 394. But under the Virginia statute (1 Rev. Code, ch. 125, § 4), an action of debts lies by the payee against the acceptor. Hollingsworth v. Milton. 8 Leigh 50.
IV. TRANSFER.
1. BY INDORSEMENT.
Definition of Indorsement. — Indorsement is a term known in law, which by the custom of merchants, transfers the property to the indorsee. Fitzhugh v. Love, 6 Call 5.
Necessity of Indorsement.™Bills payable to bearer may be transferred by the delivery, but to transfer those payable to order it is necessary, in addition to delivery, that there should be something by which the payee may appear to express his order. This additional circumstance is an indorsement. Fitzhugh v. Love. 6 Call 5.
Effect of Indorsement. — The effect of indorsing the payee’s name upon a negotiable instrument is perfectly understood in the commercial world. It is in the nature of a warranty that the maker will pay the note upon presentment at maturity, and if not so paid, he, the indorser, will upon due and reasonable notice of the dishonor of the note, pay the same to the holder. The term “indorsed,” when applied to bills of exchange and other negotiable instruments, imports a transfer for the legal value. But with respect to bonds and other securities not negotiable, the equitable title passes by assignment only. Welsh v. Ebersole, 75 Va. 651.
Indorsement in Full. — An indorsement in full is one which mentions the name of the person in whose favor it is made, and to whom or to whose order the sum is to be paid. For instance, “Pay to B or order,” signed “A,” is an indorsement in full by A, the payee or holder of the paper, to B. An indorsement in full prevents the bill or note from being indorsed by any one but the indorsee, and none but the special indorsee or his representative can sue upon it. Spence v. Robinson, 35 W. Va. 313, 13 S. E. Rep. 1004.
Effect of a Blank Indorsement. — A. blank indorsement is in legal effect a direction to the maker or drawee to pay the amount of the instrument to bearer, and therefore renders the paper transferable by delivery, without further indorsement. It also carries the right to any holder to insert his own name above the blank indorsement, and thus make the paper payable to himself. This will, however, release all subsequent indorsers. 1 Daniel, Neg. Instr. 694, 694a; Rees v. Conococheague Bank, 5 Rand. 329; Orrick v. Colston, 7 Gratt. 189; Frank v. Lilienfeld, 33 Gratt. 377, 385; Ritchie v. Moore, 5 Munf. 388; Jordan v. Neilson, 2 Wash. 164.
But a blank indorsement upon á note, does not per se transfer a title, but is an authority for the holder, either to hold it as the agent of the indorser, or to claim it as his own by assignment, at his election. without any further act to be done by the assignor. The blank indorsement is conclusive proof of the assent of the indorser to transfer the note to the holder, if he elects to lake it as a transfer. The assent and election of the holder to treat the indorsement as a transfer, was held to be as well proved by suing upon it in his own name, as if he had written over it an assignment to himself, as it is the assent of both parties to the transfer, which perfects it, and not the form in which the assent is evidenced. Rees v. Conococheague Bank, 5 Rand. 326.
Modes of Filling Blank Indorsements. — A paper signed in blank, and indorsed in blank, may be filled up either as a common promissory note or a negotiable note; and the person who indorsed it in blank will be liable on his indorsement to a holder for value. If the paper is filled up as a common promissory note to a third person, who advances the money to the maker, he may treat the indorser as an original security of the note. If after the note is filled up and delivered to the payee, the holder fills up the indorsement without a guaranty, he may afterwards erase it, and proceed against the indorser as original security. Orrick v. Colston, 7 Gratt. 189.
Blank Indorsement May Be Filled during Trial. — And the plaintiff’s attorney may fill up a blank indorsement and make it payable to the plaintiff during the trial of a cause. Hooe v. Wilson, 5 Call 61.
What Is Equivalent to Blank Indorsement. — An indorsement by one of two payees of a negotiable note to the other by which the indorser “assigns and transfers all right, title and interest” in the note to such other is equivalent to a blank indorsement of the note, and carries with it the consequences of an indorsement without restriction or limitation, and cannot be varied or contradicted by evidence of any contemporaneous parol agreement between the parties. Citizens’ National Bank v. Walton, 96 Va. 435, 31 S. E. Rep. 890.
Right to Strike Out Indorsements.— The holder of a bill of exchange, with indorsement in blank, may strike out the indorsement subsequent to the first, and may write over the first indorsement an assignment to himself, or the bill, without such assignment, will be considered the property of the holder, he having the power to make it. Ritchie v. Moore, 5 Munf. 388, 7 Am. Dec. 688.
But where there were two indorsers to a promissory note, the last indorsee struck out the second indorsement, and filled up the first to himself. It was held, that he could, not charge the first indorser upon an execution against the maker returned “no effects” because there was no privity between them. Hooe v. Wilson, 5 Call 61.
lndorsement“WitboutRecourse.”-in Ober v. Goodridge, 27 Gratt. 878, a number of negotiable notes were transferred “without recourse.” It was held, looking to all the circumstances of the case, that the words were to be construed in their literal sense; and that the transferrer was not liable for the failure to recover from the indorser. If the transferee intended that the words should be used in this instance in their restricted and limited sense, he should have been careful to express his meaning, or have it expressed in plain and unmistakable terms.
Restrictive Indorsement. —Where the payee of a bill of exchange indorses it “Pay to A or his order only” such indorsement restricts the negotiability of the instrument, and the drawer may prove that no consideration was paid for the instrument when sued upon it. Power v. Finnie, 4 Call 411.
Indorsement Enlarging Liability of Indorsers. — in Nat. Bank v. McElfresh, etc., Co. (W. Va.. 1900), 37 S. E. Rep. 541, the payees in a negotiable note made the following indorsement on the back of it: “For value received we hereby guaranty the payment of the *290 within, note at maturity, waiving demand, notice of nonpayment, and.protest,” which was followed by their signatures. It was held, that this operated as a transfer of the note, and as an indorsement thereof with enlarged liability.
Indorsement after Maturity. — The indorsement of negotiable notes, though 'made * after maturity, passes the legal title without notice to the maker. But in case of transfers of choses - in action not negotiable, only the equitable title passes, and the maker may make payments to the payee or obligee until he has notice of the transfer. Davis v. Miller, 14 Gratt. 1; Smith v. Lawson, 18 W. Va. 212.
Effect of Indorsement after Haturity. — When a note is indorsed after it becomes due it is considered as a note newly drawn by the person so indorsing it. Broun v. Hull, 33 Gratt. 29.
Indorsement of Overdue Paper Does Not Relate Back. —The indorsement of an overdue note does not relate back to the date of a note ; but is a new and independent contract only taking effect-from the time it is made, and must be determined by the laws and circumstances then existing. Broun v. Hull, 33 Gratt. 23.
Necessity of Delivery to-Complete the Transfers. — It is an elementary principle that delivery is essential to perfect the transfer of a promissory note. Until delivered to the payee it has no vitality; and not only must there be a delivery, but there must be an acceptance by the payee. Wright v. Smith, 81 Va. 777; Howe v. Ould, 28 Gratt. 1; Rowan v. Chenoweth (W. Va. 1900), 38 S. E. Rep. 544; Grasswitt v. Connally, 27 Gratt. 19.
Constructive Delivery Is Sufficient. — Delivery of a promissory note is essential to its efficacy, and if not delivered in the lifetime of the maker, it cannot be delivered after his death. But delivery may be constructive as well as actual, and where it is clear that the maker of a note intended it to be a finished note and binding on him, without further act on his part, it will so operate, though not actually delivered in his lifetime. Rowan v. Chenoweth (W. Va. 1900), 38 S. E. Rep. 544; Howe v. Ould, 28 Gratt. 1.
What Amounts to Constructive Delivery. — Thus, the payee of a note indorsed it in blank and deposited it with a bank as collateral security for a loan, and afterwards sold the same for value and gave an order on the bank therefor to the purchaser, who presented the order to the bank and was informed that the president was absent from town. Some days later the purchaser had an interview with the president at the bank, and was told by him' that the loan for which the note was pledged was nearly paid, and that he would deliver the note to the purchaser but for the service of attachment upon the bank. The loan was after-wards paid in full. Before the sale of the note an attachment had been served upon the maker at the suit of a creditor of the payee, but the purchaser had no notice thereof at the time of the purchase. After the sale and notice to the bank by him, an attachment was served on the bank by another creditor of the payee. It was held, that these circumstances amounted to indorsement- and constructive delivery to the purchaser, and that he was entitled to the note as against the attaching creditor. Howe v. Ould, 28 Gratt. 1.
Evidence to Show Want of Delivery. — And to establish the fact that there was no delivery of a note sued on, or delivery thereof for a special purpose only, parol evidence is admissible. When such evidence in connection .with written evidence shows for the purpose for which the note was delivered has failed, there is no liability on the maker. Solenberger v. Gilbert, 86 Va. 778, 11 S. E. Rep. 789; Ronald v. Bank of Princeton, 90 Va. 813, 20 S. E. Rep. 780.
2. BY ASSIGNMENT.
Assignment Defined. — Assignment, as to bonds or notes, implies more than indorsement. It means, indorsement by one party, with intent to assign, and an acceptance of that assignment by the other party. Bank v. Pindall, 2 Rand. 465.
No Form of Words Necessary to Constitute an Assignment. — No particular form is necessary to constitute an equitable assignment of a debt or chose in action. An order for value appropriating the fund is sufficient, No action can be maintained against the drawee without his acceptance. Notice to the debtor is essential to perfect the title. Until such notice, the assignee is liable to all equities between the debtor and assignor. Switzer v. Noffsinger, 82 Va. 518.
Assignment of Note Carries Security, — Where a note is secured by a deed of trust or mortgage, the assignment of the note carries with it the benefit of the security, unless excluded expressly or by fair and reasonable implication. Thomas v. Linn, 40 W. Va. 122, 20 S. E. Rep. 878; Briggs v. Enslow, 44 W. Va. 499, 29 S. E. Rep. 1008.
What Is Sufficient Averment of Assignment. — The declaration in an action upon a note averred that the payee of the note indorsed and delivered it to the plaintiff; the note not being negotiable but assignable. This was held as sufficient averment of its assignment. Freeman’s Bank v. Ruckman, 16 Gratt. 126.
Law Governing the Assignment. — The declaration averred that the note sued on was made in Boston, and on the same day and year was indorsed and delivered to the plaintiff, a bank corporation under the laws of Massachusetts. Upon a demurrer the court considered the assignment made in Massachusetts, where it might legally have been made. Freeman’s Bank v. Ruckman, 16 Gratt. 126.
Assignment Written on Back of Attorney’s Receipt. —In Clarke v. Hogeman, 13 W. Va. 718, a note was placed in tbe hands of an attorney for collection. The party entitled to the note wrote the assignment .of “the within claim” on the back of the attorney’s receipt. This was held a valid assignment of the note.
Note Secured by Deed of Trust — What Amounts to Assignment. — The payee of a note which was secured by a deed of trust, directed the trustee to sell the property, and pay the proceeds to a third party. This was held to be a good equitable assignment of the note to such third party. Lambert v. Jones, 2 P. & H. 144.
Injunction to Assignment. — The grantee of land who had been defrauded by his grantor charged in a bill in equity that his grantor had transferred his negotiable notes given for the purchase price of the land to a third person without consideration, and prayed the court to enjoin such third party from transferring the notes to a bona fide holder. The court enjoined such third person for assigning the notes and ordered the same cancelled to protect the grantee. Dickenson v. Bankers’ Loan, etc., Co., 93 Va. 498, 25 S. E. Rep. 548.
Bill of Exchange flay Be Transferred after Protest.— A bill of exchange does not lose its negotiable character by being protested; but after protest such bill may be assigned or transferred without- assignment. Richie v. Moore, 5 Munf. 388.
*291 Principles Which Govern Assignments of Bills and Notes. — The principles which govern the transfer by assignment of bills and notes which are not negotiable, are the same which govern the assignment of ordinary choses in action.' The assignment is controlled in all cases by the rules of the common law, and the assignee acquires no better title to the instrument than that possessed by his assignor. Davis v. Miller, 14 Gratt. 1; Clarke v. Hogeman, 13 W. Va. 718. For a full discussion of this subject, see monographic note on “Assignments” appended to Ragsdale v. Hagy, 9 Gratt. 409.
3. BY DELIVERY. — An instrument which is payable to bearer, or which has been indorsed in blank, may be transferred without any formal indorsement or assignment. The title to such instrument passes by the delivery of the instrument and no other act is necessary to give the holder title to the instrument. Howe v. Ould, 28 Gratt. 1; Myers v. Friend, 1 Rand. 12; Branch v. Commissioners, 80 Va. 427.
V. RIGHTS OF HOLDER.
1. WHAT CONSTITUTES HOLDER IN DUE COURSE.
a. Value.
Necessity for a Valuable Consideration. — In order to constitute one a holder for value in the due course of trade, he must have taken the instrument upon a valuable consideration. Smith v. Lawson, 18 W. Va. 212; Davis v. Miller, 14 Gratt. 1.
Transferred as Collateral or in Payment of PreExisting Debt. — The best-considered as well as the most numerous authorities regard the creditor, who received the bill or note of a third party from his debtor either in payment of, or as collateral security for his debt, as entitled to the full protection of a bona fide holder for value, free from all equities which might have been pleaded between the original parties. Devendorf v. W. Va., etc., Co., 17 W. Va. 135; Hotchkiss v. Fitzgerald, etc., Co., 41 W. Va. 357, 23 S. E. Rep. 576; Shepherd v. Anderson, 2 P. & H. 203.
Collateral for a Valid Pre-Existing Debt. — Where a negotiable instrument is transferred as collateral to secure a valid pre-existing debt, by being properly indorsed and delivered, or by delivery only when indorsed in blank or made payable to bearer, so that the transferee becomes a party to the instrument, and he takes the same before maturity, in good faith and without notice of equities, he thereby becomes, without more, a holder for value in the usual course of "business. Hotchkiss v. Fitzgerald, etc., Co., 41 W. Va. 357, 23 S. E. Rep. 576.
But the holder of a negotiable note, which has been transferred to him, as collateral security for a debt, by a person who could not have recovered against the maker in an action on,the note, cannot recover in an action of debt on the note against the maker, more than the amount of the debt for which the note was taken as security. Shepherd v. Anderson, 2 P. & H. 203.
Pre-Existing Debt Prima Facie a Valuable Consider-alien. — a valid pre-existing debt is prima facie a valuable consideration for the transfer before maturity of a negotiable note in the hands of a bona fide holder for value, without notice of latent equities between the maker and first indorser, although such note be held merely as collateral security for the payment of such debt. Mercantile Bank v. Boggs (W. Va. 1900), 37 S. E. Rep. 587,
Same — Under Negotiable Instruments Law. — A preexisting debt constitutes value for a transfer of negotiable paper. If the transfer be made merely as collateral, the transferee is a holder for value to the extent of the amount due him. §§ 25 and 27 of the Negotiable Instruments Law; Payne v. Zell, 98 Va. 294, 36 S. E. Rep. 379.
Conflict of Laws — Cases Distinguished. — These cases may appear to be in conflict with Prentice v. Zane, 2 Gratt. 262, and Union Trust Co. v. McClellan, 40 W. Va. 405, 21 S. E. Rep. 1025, but upon examination of. these cases it will be found that in each case the instrument in question was subject to the laws pf the state of Pennsylvania, and the court applied the Pennsylvania law regardless of the fact that the law of the forum was otherwise. See Hotchkiss v. Fitzgerald, etc., Co., 41 W. Va. 359, 23 S. E. Rep. 576.
Transfer in Consideration of Paying Debts of the Indorser. — Negotiable notes made for the accommoT dation of the payee were indorsed by him to that holders in consideration of money previously advanced by them to him, of money advanced to him at the time of the transfer, and of notes of the payee. falling due at a future day, which they undertook to pay, and did pay as they became due; all of whieft amounted to the full amount of the notes soindorsed to them. The holders were held to be holders for; value. Fant v. Miller, 17 Gratt. 47.
Instrument Pledged as Collateral — Right to Sue Pledgor. — Where notes of third parties are given as collateral security for the payment oi the maker’s note, the holder has the right to proceed to recover upon the collateral securities notwithstanding the note of the maker. Nothing short of its satisfaction would prevent a recovery by the creditors. Lazier v. Nevin. 3 W. Va. 622.
Instruments Pledged as Collateral - Right of Pledgee to Sell. — Where a note or accepted order of a third person, is transferred and delivered to a creditor as? collateral security for a debt, the debtor may sue upon the chose in action at law, and if necessary, sue in the name of the legal owner. Unless a power, to,sell is superadded to the agreement, whereby such chose in action is pledged as a collateral security, the creditor has no right to sell such chose in action and he cannot come into a court of equity to ask a sale thereof. Whitteker v. Charleston, etc., Co., 36 W. Va. 717.
b. Bona Files.
Meaning of “Bona Fide Holder.” — The term “bona fide holder” means a holder who has acquired the instrument without notice of equities. Absence of knowledge or notice of equities is the essential thing inthe matter of bona fides, and where a party is not chargeable with either knowledge or notice of eqnir ties affecting an instrument of which he is the holder, he is a "'bona fide holder.” Smith v. Lawson, 18 W. Va. 212; Roberts v. Tavenner (W. Va. 1900), 37 S. E. Rep. 576; Frank v. Lilienfeld, 33 Gratt. 377; Cussen v. Brandt, 97 Va. 1, 32 S. E. Rep. 791.
Nothing Short of Mala Fides Will Invalidate the Holder’s Title. — The law is well settled, that to invali: date the title of the holder of a negotiable instrument (not absolutely void by statute law), indorsed in blank, and acquired for value, in due course of trade and before maturity, it is not sufficient to show circumstances in the acquisition of the note affecting such holder with suspicion merely, or that he was guilty of ordinary negligence, or even gross negligence, but it is necessary to show that he was guilty of mala fides. Frank v. Lilienfeld, 33 Gratt. 377; Smith v. Lawson, 18 W. Va. 212.
Evidence to Show Mala Fides. — Gross negligence in the receipt of a note may be evidence of mala fides,
*292 and as such may he received in evidence, but it does not of itself show mate Mes, and the holder cannot be deprived of his right to recover, unless he acquire the note mala fide. Smith v. Lawson, 18 W. Va. 212.
“Notice” Used in This Connection Heads Knowledge. —In order to stand upon a better footing than his transferrer, the holder must acquire the instrument without notice of fraud, defect of title, illegality of consideration, or other fact which impeaches its validity in his transferrer’s hands; and the word “notice” in this connection signifies the same as knowledge. Roberts v. Tavenner (W. Va. 1900), 37 S. E. Rep. 576.
Facts Sufficient to Charge a Purchaser with Notice. —A party who acquires a note with full knowledge of facts, which in law show that the party from whom he took the note had no authority to transfer it, cannot be regarded as acquiring it bona Me, though under a misconception of law he may have supposed that the party from whom he acquired ,it had a right to make the transfer. Smith v. Lawson, 18 W. Va. 212.
So in Cussen v. Brandt. 97 Va. 1; 32 S. E. Rep. 791, a party who purchased from an agent to collect, one of a series of negotiable notes secured by a deed of trust on real estate and payable in the order of their maturity, was postponed to the holder of the note thereafter maturing, where the note sold bore the indorsement “for collection” which was still legible, though erased, this being sufficient to put him upon inquiry.
Purchaser from an Unauthorized Bank President Not a Bona Fide Holder. — And 'the holder of a note to whom it has been transferred for valuable consideration by the president of a bank, who had no authority to transfer it, is not a bona Me holder of the note, and the maker of the note may dispute his title to it in an action brought on the note. Smith v. Lawson, 18 W. Va. 212.
Actual Notice of Equities. — And so where an agent indorsed a note for the benefit of his principal, and was assured by the principal that he should not be held responsible upon such indorsement, he was held not liable to pay the money at the suit of the person, to whom the note was indorsed with notice of such equity. Chalmers v. McMurdo, 5 Munf. 252.
Purchaser from an Agent for Collection. — The purchaser of overdue negotiable paper, from an agent for collection, acquires only such title as the agent had. Cussen v. Brandt, 97 Va. 1, 32 S. E. Rep. 791.
Personal Representative of an Accommodation Indorser. — The personal representative of an accommodation indorser of a negotiable note protested for nonpayment, can only acquire the note, whether by purchase or payment, in his fiduciary character. And he cannot in any event, either by purchase or payment, acquire larger rights than his testator or intestate would have had, had he paid the note in his' lifetime and after protest. Burton v. Slaughter, 26 Gratt. 914.
2. RIGHTS OF HOLDER IN DUE COURSE.
Title Acquired by a Bona Fide Holder for Value.— Where negotiable paper is transferred before maturity to a bona Me holder for value, he takes it free from all equities existing between the antecedent parties of which he had no notice; such holder often acquires a better right than that of the indorser under whom he claims. Cottrell v. Watkins, 89 Va. 801, 17 S. E. Rep. 328, 19 L. R. A. 754, and note, 37 Am. St. Rep. 897; Davis v. Miller, 14 Gratt. 1; Smith v. Lawson, 18 W. Va. 212; Leonard v. Dougherty, 22 W. Va. 536.
And a bona Me holder of negotiable paper who purchased it for value in the ordinary course of business before maturity and without notice of equities which impeach its validity between antecedent parties, has title thereto unaffected by such equities and may recover on the note, although it was without legal validity between the antecedent parties. Bank v. Johns, 22 W. Va. 520; Leonard v. Dougherty, 22 W. Va. 536; Lomax v. Picot, 2 Rand. 247; Norton v. Rose, 2 Wash. 233; McNiel v. Baird, 6 Munf. 316.
Reason for Rule That Equities Do Not Affect a Bona Fide Holder. — The holder of a bill of exchange, or promissory note, is not to be considered in the light of an assignee of the payee. An assignee must take the thing assigned, subject to all the equities to which the original party was subject. If this rule was applied to bills and promissory notes, it would stop their currency. Norton v. Rose, 2 Wash. 233.
Holder of Lost Paper. — When a note payable to bearer, which has once become operative by delivery has been lost or stolen from the owner and has subsequently come to the hands of a bona Me holder for value, the latter may recover against the maker and all indorsers on the paper when in the hands of the loser, and the loser must sustain the loss. Branch v. Commissioners, 80 Va. 427.
Right of Holder of a Note Cut in Two. — where a bank note was cut In two, and one-half sent by mail and lost, it was held that the holder of the remaining half had a right to demand payment at the bank, upon presentation of the half in his possession, proving ownership, and giving bond and adequate security for the indemnification of the bank. But where these prerequisites were not complied with, and the bank was sued In consequence of refusing payment, the holder was not allowed to recover interest or costs, even though he performed the conditions after the suit was brought. Farmers’ Bank v. Reynolds, 4 Rand. 186. See also, Bank of Va. v. Ward, 6 Munf. 166.
Right to Tack a Note to a Hortgage. — -A creditor by a mortgage or deed of trust, has not a right, without a written agreement, to tack to such mortgage a deed of trust and note of the debtor, in exclusion of another mortgage or deed of trust, bearing date either before or after such note. Colquhoun v. Atkinsons, 6 Munf. 550.
3. PAPER TRANSFERRED OVERDUE,
Valid Transfer May Be Made after Maturity. — A negotiable note may be transferred any time while it remains a good, subsisting, unpaid note, whether before or after maturity: and, in the latter case, even though it be protested for nonpayment, and bears upon its face the stamp of dishonor. Cottrell v. Watkins, 89 Va. 801, 17 S. E. Rep. 328, 19 L. R. A. 754, and note, 37 Am. St. Rep. 897.
Title of indorsee of Overdue Paper. — But in case of a transfer of overdue paper the holder takes it as a dishonored instrument, subject to all the defences and equities to which it was subject in the hands of his immediate indorser, whether he has any notice thereof or not; such holder takes nothing except the title and right of his Immediate indorser. Cottrell V. Watkins, 89 Va. 801, 17 S. E. Rep. 328, 19 L. R. A. 754, and note, 37 Am. St. Rep. 897; Davis v. Miller, 14 Gratt. 1; Smith v. Lawson, 18 W. Va. 212.
Overdue Note Secured by Trust Deed. — in Karn v. Blackford (Va. 1894), 20 S. E. Rep. 149, after the acceptance of a note, the payee, in a composition of creditors of the maker, agreed that the note should be paid according to the terms of a trust deed. A *293 party who acquired the note after maturity was held to hold the same subject to the provisions of the trust deed, though the deed was unrecorded when the note was acquired.
Indorsee of Overdue Paper Not a Bona Fide Holder.— And one who purchases a note after maturity is not a tona fide holder, and takes it subj ect to the defence of payment in whole or in part. Cottrell v. Watkins, 89 Va. 801, 17 S. E. Rep. 328; Davis v. Miller, 14 Gratt. 1; Arents v. Com., 18 Gratt. 750.
Indorsee Does Not Take Subject to Set-Off. — But a tona fide purchaser for value of an overdue negotiable instrument holds it subject to only such equities as attaches to the note itself at the time of the transfer. He takes it in the same manner that he would take any other personal property. The right of set-off was unknown to the common law. but is of modern statutory creation, and is neither an equity nor a lien recognized by the law merchant as attaching to a negotiable instrument. Hence, a tona fide purchaser of an overdue negotiable note is not required to take notice of existing set-offs in the absence of legislative enactment; and this, though the indorsee gave no consideration for the paper, and had notice of, and took the paper on purpose to defeat the set-off. Davis v. Noll, 38 W. Va. 66, 17 S. E. Rep. 791; Davis v. Miller, 14 Gratt. 1; Ritchie v. Moore, 5 Munf. 388. 7 Am. Dec. 688.
Title of Indorsee of Overdue Accommodation Paper.— While it is a general rule that if the paper be overdue at the time of transfer, that circumstance of itself is notice, and the indorsee can acquire no better title than that possessed by his indorser, yet, if the indorser’s title was unimpeachable, the fact that the paper was executed for accommodation, without consideration, and that the indorsee knew it. is no defence, even where the paper was overdue at the time of the indorsement, it being considered that parties to accommodation paper hold themselves out to the public, by their signatures, to be bound to every person who shall take the same for value, to the same extent as if paid to him personally. If the holder receive the paper after maturity from an indorser, who took it tona fide before maturity, there is no question as to his right to recover. Cottrell v. Watkins, 89 Va. 801, 17 S. E. Rep. 328, 19 L. R. A. 754, and note, 37 Am. St. Rep. 897.
Same — He Stands in His Endorser’s Shoes —An indorsee of an accommodation note, taken after maturity, with or without knowledge of its consideration, may enforce it against prior parties to the same extent as if it had "been executed for value, if his immediate indorser was entitled toso enforce it. Cottrell v. Watkins, 89 Va. 801, 17 S. E. Rep. 328, 19 L. R. A. 754. and note, 37 Am. St. Rep. 897.
And if a person for whose beneiit accommodation notes were made, pays them off as they fall due, but, instead of cancelling them passes them to a third person, they cannot be enforced by him, and if they are enforced by means of the sale of property under a trust deed given to secure their payment, such sale is fraudulent and will be vacated in equity. Cottrell v. Watkins, 89 Va. 801, 17 S. E. Rep. 328.
Overdue Paper Is Negotiable. — In Virginia it is provided 1)3' statute (see Va. Code, § 2860). that, “the assignee of any bond, note orwriting notnegotiablemay maintain thereupon any action in his own name which the original obligee or payee might have brought, but shall allow all just discounts, not only against himself, but against the assignor, before the defendant had notice of the assignment.*’ In Davis v. Miller, 14 Gratt. 1, it was argued that this statute was applicable to negotiable paper which had been transferred after maturity; but the court held that the statute did not include such paper.
4. PRESUMPTIONS IN HOLDER’S FAVOR.
General Rule. — The general rule is that the holder of a negotiable instrument, regular upon its face, is presumed to have acquired it before maturity for value and without notice of any infirmity in the paper. Piedmont Bank v. Hatcher, 94 Va, 229. 26 S. E. Rep. 505; Duerson v. Alsop, 27 Gratt. 229; Wilson v. Lazier, 11 Gratt. 477; Dashiell v. Bank (Va. 1895), 22 S. E. Rep. 169; Vathir v. Zane, 6 Gratt. 246.
Possession Prima Facie Evidence That the Holder Gave Value — And the mere possession of a negotiable instrument is prima facie evidence that the holder took it for value, and that he came by it honestly. A total failure of the consideration of a negotiable instrument does not impose on the innocent holder the burden of proving that he gave value for it. But where the evidence raised a suspicion of fraud in the procurement of the note, then the holder is bound to show that he gave value for it. Wilson v. Lazier, 11 Gratt. 477; Dashiell v. Bank (Va. 1895), 22 S. E. Rep. 169; Vathir v. Zane, 6 Gratt. 246.
Burden of Proof, Not Shifted by Failure of Consideration. — A total failure of consideration of a negotiable note does not impose on the innocent holder the burden of proving that he gave value for it. Wilson v. Lazier, 11 Gratt. 477.
Fraud Is Never Presumed but ilust Be Proved. — And the general rule, that fraud is never presumed, but must always be proved by clear and satisfactory evidence, is applicable to negotiable instruments. In a suit to set aside a note on the ground of fraud, the possession of instruments being grima facte proof of ownership, the burden of proof is on the plaintiff to show that the note has been fraudulently obtained. Dashiell v. Bank (Va. 1895), 22 S. E. Rep. 169.
Presumption That Holder Is Holder for Value Fails in Certain Cases. — But under certain circumstances the presumption that the holder of a negotiable note is a holder for value, fails, and the burden of proof shifts upon him to show that he is such. Thus, in Duerson v. Alsop, 27 Gratt. 229, a holder of a note indorsed for the accommodation of the maker, gave no notice to the indorser or his personal representative that he held the note, ior eight years after maturity of the note. The holder made no effort to collect from the maker, though for the greater part of the time he was able to pay it. Under these circumstances the presumption that the holder of the note was a holder for value failed, and the burden of proof was held to be upon him to show that he gave value for the note.
So if the maker or party primarily liable for its payment, or any party bound by the original consideration, proves that it was obtained by fraud or illegality in its inception, or if the circumstances raise a strong suspicion of fraud or illegality, the burden of proof is shifted, and the holder of the note must show that he acquired it bona fide for value in the usual course of business while current, and under circumstances which create no presumption that he knew of the facts which impeach its validity. Piedmont Bank v. Hatcher, 94 Va. 229. 26 S. E. Rep. 505; Vathir v. Zane, 6 Gratt. 246.
Fraud in Procurement Shifts Burden of Proof. — And where a note is shown to have been procured by fraud in the procurement on the part of the payee, the holder in order to entitle himself to recover, *294 must prove that he is a bona Me holder for value. Vathir v. Zane, 6 Gratt. 246.
Misappropriation of the Instrument by Payee — Burden of Proof. — And where it is shown in evidence that a negotiable note was made and delivered to the payee at his instance, and for his accommodation for a specific purpose, and that such payee, without the knowledge or consent of the maker, used such note for a different purpose, the burden is on the holder to show that he received it in the ordinary course of business, before maturity, for value, and without notice of its wrongful misuse by the payee, before he can recover from the maker. Union Trust Co. v. McClellan, 40 W. Va. 405, 21 S. E. Rep. 1025.
5. EFFECT OF FRAUD OR DURESS.
Fraud in Esse Contractus — West Virginia Rule. — A bona Me holder of negotiable paper has avalid title and can recover against the maker thereof, unless at the time he purchased the note it was absolutely void, although the maker was induced to sign such note by fraud, not intending to sign such a note but a paper of entirely different character. In such case the question of negligence in the maker forms no legitimate subject of inquiry. Bank v. Johns, 22 W. Va. 520; Leonard v. Dougherty, 22 W. Va. 536, overruling Morehead v. Bank, 5 W. Va. 74.
Noté in Renewal of a Note Obtained by Fraud. — Where a plea avers that the defendant had been induced by the plaintiff to make a note, for which the note in suit is a renewal, and which was given for another’s debt, by representing to defendant that that debt was amply secured by a deed of trust on real estate, while the plea on its face shows that the note was renewed several times after the defendant knew that the deed of trust would not satisfy the debt, and that the defendant had changed the debt by dropping the original debtor, and giving the note in suit; such facts constitute no defence to the note in the suit. Keckley v. The Union Bank, 79 Va. 458.
Fraudulent Concealment of Facts, — In the sale of a lease of a house and tenement, the vendor failed to show the lease to the vendee, and did not inform him of a covenant therein, that in case of destruction of the house by fire, the lease should terminate and become void. This was held such a concealment as to vitiate the contract, and the house being destroyed by fire, a court of equity relieved the vendee by in joining the vendor from collecting the purchase money, and by directing his notes for the same to be given up and cancelled. Snelson v. Franklin, 6 Munf. 210; McNiel v. Baird, 6 Munf. 316.
Threat of Prosecution of riaker’s Son unless He Executed Note, Is Not Duress. — The maker of a note forged the name of two parties as indorsers on the note, one of whom was his son-in-law. The holder of the note discovering the forgery informed the son-in-law that unless he procured the maker to make a new note with the parties whose names had been forged as indorsers, that he would prosecute the maker. The new note was accordingly given and the prosecution did not take place. The note was repeatedly renewed and a note was given by the indorser (the maker having dropped off) for the balance, after sundry payments. These facts were held not to constitute such duress as would avoid the note. Keckley v. The Union Bank, 79 Va. 458.
6. EFFECT OF USURY.
Usury in Transfer Does Not Affect Bona Fide Holders. —A note which was valid in its inception, was afterwards indorsed by a party to whom it had regularly come, to a third person, at a greater discount than legal interest. This transaction was held not to be usurious, as an intermediate indorsement of a note, for a usurious consideration as between indorser and indorsee, does not vitiate the note in the hands of a subsequent bona Me holder without notice of the usury. Whitworth v. Adams, 5 Rand. 333; Taylor v. Bruce, Gilmer 42; Bailey v. Hill, 77 Va. 492.
Usury No Defence to Note in Hands of Bona Fide Holder. — Since the passage of the act now embodied in § 2818 of the Code, which declares that usurious contracts shall be deemed to be for an illegal consideration, as to the excess beyond the principal sum loaned orforeborne, the plea of usury cannot be sustained in an action on negotiable paper brought by a bona Me holder for value, who acquired the same before maturity in due course of trade. The only effect of such plea is to cast the burden of proof on the plaintiff to show that he is a bonaMe holder for value. When he has shown this he is entitled to recover. Lynchburg Nat. Bk. v. Scott, 91 Va. 652, 22 S. E. Rep. 487.
Purging a Transaction Affected with Usury by Taking a New Note. — in an action of assumpsit upon a negotiable note it was set’up by a special plea that the note was made for a balance of a note given by one party to the suit, for the aggregate of sundry notes, one of which was-undue, and that there was no allowance made for that fact in ascertaining such aggregate, and that interest having been twice exacted for the sum of the undue note, the note for the aggregate was usurious, and tainted the note sued upon. It was held, that the failure to include the present worth only, instead of the face value of the undue note, did not constitute usury in the note for the aggregate: but if it did, the taking of the note in suit was such change of parties as purged the transaction of usury, and the new note was valid. Keckley v. The Union Bank, 79 Va. 458.
7. EFFECT OF ALTERATION.
Alteration Renders Instrument Invalid unless Consented to. — Where a person puts his name to paper, which is full in form, for a certain sum, payable at a certain time and place, for the accommodation of another who is to become a party to the same when it shall be negotiated, his liability is limited by the precise terms of that paper. An alteration after-wards, which is material, without his consent will make it a contract which he never executed and which it is manifest he never intended to execute; and it is a new contract to which he can in no sense be treated as a party; and he cannot be bound by it. But a party to the instrument, or one of several parties to the instrument, may consent to the alteration and the party so consenting will be bonnd. Bank v. Lockwood, 13 W. Va. 392; Batchelder v. White, 80 Va. 103; Dobyns v. Rawley, 76 Va. 544; Morehead v. Parkersburg Nat. Bank, 5 W. Va. 74.
But'the objection that a material alteration has been made in anote in suit cannot be made for the first time in the appellate court. Tate v. Bank, 96 Va. 765, 32 S. E. Rep. 476.
Changing Name of Payee. — And an unauthorized change of the name of the payee of a negotiable note is such a material alteration as renders the note void as to the maker. The fact that the note was incomplete when altered, does not affect the result. §§ 124 and 125 of the Negotiable Instruments Law as ,to the alteration of such instruments, is simply declaratory of the former law on the sub *295 ject. Hoffman v. Planters’ Nat. Bank (Va, 1901), 7 Va. Law Reg. 570.
Changing an Ordinary Promissory Note into a Nego=* tiableNote. — And changingan ordinary promissory note into a negotiable note without the knowledge or consent, either expressed or implied, of the promisor is such a material alteration as vitiates the note. Morehead v. Parkersburg Nat. Bank, 5 W. Va. 74.
Instruments Delivered in Blank and Completed Fraudulently — Rule of the Law flerchant. — The authority implied by a signature to a blank note, and the credit given, are so extensive, that the party so signing will be bound, although the holder was only authorized to use it for one purpose and has perverted it to another. But the holder cannot alter the material terms of theinstrumentby erasing what is written or printed as part of the same ; or pervert its scope and meaning by filling blanks and stipulations repugnant to what is clearly expressed in the note before it is delivered by the indorser in blank. Frank v. Lilienfeld, 33 Gratt. 377: Guerrant v. Guerrant (Corporation Court,of Danville), 7 Va. Law Reg. 639. See also, Brummel v. Enders, 18 Gratt. 877.
Thus, a negotiable note signed in blank and indorsed in blank by several persons, was delivered to another to raise money on for his own accommodation. The party to whom it was delivered filled it up so as to make it payable sixty days after date, and having put his own name on it as last indorser, delivered it to the plaintiffs to deposit in bank to take up a note which they had indorsed for him. The plaintiffs after offering it to the bank for discount, altered the word “sixty*’ to “thirty,” so as to make the time of payment thirty days earlier. This alteration was made with the assent of the last indorser, but in the absence and without the knowledge of the drawer and other indorsers. The plaintiffs were allowed to recover on the note against the drawer and all of the indorsers, notwithstanding the alteration. Douglass v. Scott, 8 Leigh 43.
Same — Rule by Negotiable Instruments Law. — While it is a rule of the law merchant that where a negotiable instrument is intrusted to another with an unfilled blank, the person in possession has authority, so far as concerns a holder in due course, to complete it, consistently with the written or printed terms of the instrument, although he may thereby violate his actual authority, this rule has been altered by the Negotiable Instruments Law, in the case where the holder takes the instrument before the blank is filled. In such case, he is put on notice, and must ascertain the real authority of the person iutrustedwith the incomplete instrument, and takes it at his peril. Guerrant v. Guerrant (Corporation Court of Danville), 7 Va. Law Reg. 639; Hoffman v. Planters’ Nat. Bank (Va. 1901), 7 Va. Law Reg. 570.
Alteration of Check by Holder — Bank Is Still Liable if Drawer Is Not Negligent — A bank is responsible to a depositor for the payment of a check which has been altered in a material particular after signature, unless the negligence or laches of the drawer has laid the foundation 'for the error of the bank. The depositor, however, is only chargeable' with the duty of ordinary care and diligence. Merely giving a stranger a check in exchange for money is not such negligence on the part of the drawer as will excuse the bank on which it is drawn for paying the check after it has been raised to a larger amount by the drawee without authority. National Bank v. Nolting, 94 Va. 263, 26 S. E. Rep. 826.
Change by Agreement of Parties Is Not an Alteration. —Where the parties to a bill or note agree to a , change of any of its terms, they cannot complain of such change as an alteration. They have as much right to change as to make the contract. Schmelz v. Rix, 95 Va. 509, 28 S. E. Rep. 890; Bank v. Lockwood, 13 W. Va. 392.
VI. DILIGENCE REQUIRED OF HOLDER.
1. OF NEGOTIABLE PAPER.
a. Presentment jtor Acceptance.
Must Be Presented for Acceptance within Reasonable Time. — in order to hold the drawer of a bill of exchange liable the holder must present the bill to the drawee for acceptance within a reasonable time. In case of bills payable at sight, in states where such paper is entitled to grace, or of paper payable at a given time after sight, the courts have declined to lay down any rule prescribing what is a reasonable time in which theymustbepresented for acceptance, leaving the question in every case as it arises, to be determined by its peculiar circumstances, and if the bill is not presented within a reasonable time the drawer is discharged, although the party continue solvent and no damage is caused by the delay. One of the circumstances affecting the question of what is a reasonable time, in such case, is whether the bill has been put in, and kept in circulation, for if it has been kept in circulation the delay of a year or even more, would not necessarily amount to negligence. But if the holder retains possession of the bill for an unreasonable time and thus locks it up from circulation, he makes it his own, and has no remedy against antecedent parties from or through whom he derived title. Thornburg v. Emmons, 23 W. Va. 325.
Should Be Presented within Business Hours. — In cases where it is necessary to present a bill of exchange to the drawee for acceptance, the presentment should be made during the usual hours of business. Nelson v. Fotterall, 7 Leigh 179.
To Whom Presentment Should Be Made. — The presentment of a bill of exchange for acceptance should in all cases be made to the drawee himself or his duly authorized agent. Nelson v. Fotterall, 7 Leigh 179.
Presentment to Clerk. — It seems that it is not necessary to prove that the clerk at the drawee’s counting house is the clerk of the drawee authorized to accept or refuse acceptance of bills drawn on the drawee. Nelson v. Fotterall, 7 Leigh 179. But parol evidence has been held admissible to show that the clerk was authorized to refuse acceptance. Stainback v. Bank, 11 Gratt. 260; Nelson v. Fotterall, 7 Leigh 179.
b. Presentment eor Payment.

(l) Necessity of Presenim.&7bt.

To Fix Liability of Drawer and Indorsers. — In order to charge an indorser of a bill or note or the drawer of a check, it is necessary that the instrument should be presented for payment or some good, excuse shown for the failure to make such presentment. Peabody Ins. Co. v. Wilson, 29 W. Va. 528, 2 S. E. Rep. 888; Waring v. Betts, 90 Va. 46, 17 S. Rep. 739.
To Fix Liability of Maker and Acceptor —But in order to sustain an action against the acceptor of a bill of exchange or the maker of a promissory note payable at a time' and place specified in the acceptance of note, it is not necessary to aver or prove a presentment and demand at the time and *296 place so specified. Armistead v. Armisteads, 10 Leigh 512.
To Fix Liability of the Drawer of a Check. — Presentment of a check to a hank for payment is not absolutely necessary in order to hold the drawer. But the fact that a check is presumed to he drawn on funds makes it extremely important to the drawer that the check should be promptly presented for payment and the drawer notified if there is a refusal to pay, so that he may inquire into the cause of the refusal. Therefore, it is a general and well-established rule that where the holder of a check fails to present it for payment within a reasonable time, during which time the bank fails, the drawer is discharged to the extent of the prejudice he may suffer through such failure. But where a check is presented for payment, and payment refused, and notice is given to the holder at any time before the hank fails the drawer is not discharged, if it be shown that he is not prejudiced by the delay; and if prejudiced he is only discharged pro tanto. Purcell v. Allemong, 22 Gratt. 739; Bell v. Alexander, 21 Gratt. 1; Cox v. Boone, 8 W. Va. 500; Compton v. Gilman, 19 W. Va. 312; McClain v. Lowther, 35 W. Va. 297, 13 S. E. Rep. 1003.
Former West Virginia Doctrine Overruled. — It has been held, that unless a check is promptly presented at the hank for payment, the drawer is discharged from liability whether any injury has been sustained by him by reason of the failure to present or not. Ford v. McClung, 5 W. Va. 156. But this case is overruled in Compton v. Gilman, 19 W. Va. 312.
Presumption of Injury to Drawer of a Check. — Where a check is not presented in time, and notice of nonpayment is not given, injury to the drawer will be presumed; but a check is always presumed to be drawn on actual funds; and while if the holder has been guilty of laches in not presenting it in due time, or in failing to give notice of nonpayment, it becomes incumbent upon him to show that the drawer has not been injured by the dereliction, yet, on the other hand, if he shows that the drawer had no funds in the hank against which he drew, the burden of proving actual damage is shifted upon the drawer, and in the absence of such proof the plaintiff is entitled to recover. McClain v. Lowther, 55 W. Va. 297, 13 S. E. Rep. 1003.
Where Presentment Is Impossible Holder Must Notify Drawer. — Where the holder of the check is not able to present the check by reason of the removal of the bank and the condition of the country, he should give notice of the fact to the drawer, and offer to return it. If he fails to do this the drawer is not liable. Purcell v. Allemong, 22 Gratt. 739.

(2) Mode of Presentment.

Instrument Must Be at Hand. — Presentment of the bill or note and demand of payment should be made by an actual exhibition of the instrument itself ; or at least the demand of payment should be accompanied by some clear indication that the instrument is at hand ready to be delivered, and such must really be the case. This is requisite in order that the maker or acceptor may be able to judge of the genuineness of the instrument and of the right of the holder to receive payment, and that he may immediately reclaim possession of it upon paying the amount. Waring v. Betts, 90 Va. 46, 17 S. E. Rep. 739.
Formal Exhibition of Instrument Not Necessary unless Required. — But where, on demand for payment of a note, exhibition of the instrument is not asked for, and the party on whom the demand is made declines to pay on other grounds, a formal, actual presentment of the instrument is waived. Waring v. Betts, 90 Va. 46, 17 S. E. Rep. 739.
Paper Payable at Bank and Held by That Bank for Collection. — So where paper is payable at a hank and is held by that bank for collection, presentment in the ordinary way — by exhibiting the paper — is not required ; the maker or acceptor must have provided funds there with which to pay, and if he has not done so, it only remains to say that the note has not been paid, to show or to indicate the dishonor. All that can he done, or ought to be required, is that the books of the hank should he examined to ascertain whether the maker had any funds in their hands; and, if not, there is a default which gives the holder a right to look to the indorser for payment. Peabody Insurance Co. v. Wilson, 29 W. Va. 528, 2 S. E. Rep. 888.
Where Personal Presentment Is Impossible. — Though the holder of a check is disabled, so that he cannot go in person to present the payment, yet, if he could have sent it by mail, he will not be excused for not presenting it. Purcell v. Allemong, 22 Gratt. 739.
(5) Time of Presentment.
Paper Payable at a Particular Time Must Be Presented at That Time. — When a note is made payable at a particular time due diligence requires that it shall be presented at that time and it is incumbent on the holder of the note to show a compliance with this on his part by suitable averments in his declaration, and by proper proofs at the trial. To charge the indorser it is indispensable that the notes should be presented for payment, and payment thereof demanded at the time designated in the note, and that due notice he given him that the demand is ineffectual; and it is necessary to prove that the presentment for payment was then made, otherwise the indorser will he absolutely discharged. Peabody Ins. Co. v. Wilson, 29 W. Va. 528, 2 S. E. Rep. 888.
Paper Payable on Demand Must Be Presented within Reasonable Time —A note payable on demand or on call is payable at once, and interest and the statute of limitations commence to run from its date. But in order to charge the indorser of a negotiable note so payable, it must be presented for payment within a reasonable time. No fixed rule can be laid down as to what will constitute a reasonable time, but this must be determined by the facts of the particular case. Bacon v. Bacon, 94 Va. 686, 27 S. E. Rep. 576.
What Amounts to Presentment within a Reasonable Time. — A creditor received on account of his debt, at his own dwelling on Wednesday evening, his debtor’s check on a hank in a town fifteen miles away. The mail for that town closed at the postoifice nearest to and three or four miles from the creditor’s residence at 7:30 o’clock the next morning, and the nextfollowing mail closed on the same hour on Saturday, arriving at the town in which the bank was located between eleven A. M. and noon. The check was not sent by either mail. The bank stopped payment at noon on Saturday. It was held, that there was no laches in not sending the check on Thursday, nor on Saturday, because if the creditor had then sent it to his agent, the latter would have had at least all that day in which to present it, and that, therefore, the debtor was not discharged. Cox v. Boone, 8 W. Va. 500.
Time of Payment Limited — Hust Be Presented before the Expiration of That Time. — Under the authority of an ordinance a city issued notes for the purpose of raising money. The time within which these *297 notes were redeemable was limited in the ordinance. Some of these notes not having been presented for payment within the prescribed time, it was held, that the holders of them were not entitled to set them off against taxes due the city, after the fund which had been provided for their payment by the city had perished, and after the expiration of the time limited fortheir redemption. Miller v. Lynchburg, 20 Gratt. 330.
Presentment on Fourth Day of Grace Insufficient in Absence of Usage —Where a bill is payable at a place or bank, at which there is a special established usage, that bills there payable shall be presented on the fourth and not on the third day of grace, such special usage must be alleged in the declaration upon such bill, otherwise proof of presentment on the fourth day of grace is not admissible. Jackson v. Henderson, 3 Leigh 196.
Presentment during War Illegal. — Presentment and demand of payment of a check made by a resident of Vicksburg upon a bank in New Orleans while commercial intercourse between Vicksburg and New Orleans was prohibited by the proclamation of the president, was illegal. Billgerry v. Branch. 19 Gratt. 393.
Presentment Hast Be Made during Business Hours.— Where presentments made at the place of business of the maker it must be during such hours when such places are customarily open, or at least, while some one is there competent to give an answer. Waring v. Betts, 90 Va. 46, 17 S. E. Rep. 739; Nelson v. Fotterall, 7 Leigh 179.
Paper Payable at Bank Must Be Presented during Banking Hours. — When an instrument is payable at bank it must be presented during banking hours; and the payer is allowed until the expiration of banking hours for payment Waring v. Betts, 90 Va. 46, 17 S. E. Rep. 739.
Paper Not Payable at Bank or Place of Business. — But when the note is not made payable at bank, but to an individual, presentment may be made at any reasonable time during the day during what are termed business hours, which, it is held, range through the whole day to the hours of rest in the evening. Waring v. Betts, 90 Va. 46, 17 S. E. Rep. 739.
(4) Place of Presentment.
Paper Payable at a Particular Place Must Be Presented There. — Where paper is payable at a particular place due diligence requires that it shall be presented at that place, and it is incumbent upon the plaintiff to show compliance with this rule at the trial by suitable evidence. To charge the indorser it is indispensable that the instrument in question should be presented atthe place therein designated, and nnless this is shown by satisfactory evidence the indorser will be absolutely discharged. Peabody Ins. Co. v. Wilson, 29 W. Va. 528, 2 S. E. Rep. 888.
Same — West Virginia Statutory Rule. — But under Code of 1868 of West Virginia, ch. 99, sec. 1, a declaration against the maker of a promissory note payable at a particular place, need not aver presentment for payment at the time or place specified. Merchants' etc., Bank v. Evans, 9 W. Va. 373.
Presentment at Bank Excused Where Bank Has Cessed to Exist. — Although the note is made payable at a bank, presentment and demand for presentment at the bank within banking hours is excused if the bank has ceased to exist, and in such case presentment to and demand on the indorser of such note and manager of the bank made at his residence at 5:30 P. M. is sufficient to charge him. Waring v. Betts, 90 Va. 46, 17 S. E. Rep. 739.
Presentment to Cashier Must Be Made at His Bank.— In an action on a negotiable note payable at a bank, it is not sufficient to show that such note was presented for payment to the cashier of the bank at which it was payable, unless it further appears that such presentment was made to the cashier at the hank. Peabody Ins. Co. v. Wilson, 29 W. Va. 528, 2 S. E. Rep. 888.
Paper Payable at One Bank and Negotiated at Another. — A note negotiable and payable at the Farmers’ Bank of Virginia, was in fact negotiated at the bank of the United States, with the knowledge and assent of the maker and indorser. Presentment of the note at the latter bank was held not sufficient to charge the indorser, though he assented to the negotiation of the note there: nor could any usage of the bank of the United States dispense with due presentment at the Farmers' Bank where it was payable. Watkins v. Crouch, 5 Leigh 522.
Presentment at Bank Not Necessary to Charge the Maker. — In an action against the maker arid indorser of a note negotiable and payable at the Farmers' Bank of Virginia, it was held not necessary to aver and prove due presentment of the note and demand of payment at the bank, in order to entitle the plaintiffs to recover of the maker, but it was necessary, in order to entitle them to recover against the indorser. Watkins v. Crouch, 5 Leigh 522.
Presentment at the Office of an Authorized Agent.— A bank upon the cessation of its banking operations in a city, to wind up its affairs in that place put its notes, etc., falling due at that place in the hands of a private banker in that city, for collection, and made his office its office of discount and deposit, and of this the maker and indorsers of the note had notice. The presentment and demand of payment at the office of this private banker was held a sufficient presentment and demand. Crews v. Farmers’ Bank, 31 Gratt. 348.
Note Negotiable at a Bank Not Necessarily Payable There. — In an action of debt on a promissory note, by the indorsee against the maker, the declaration stated that the note was only made negotiable at the bank of Virginia, and averred that the note at maturity was duly presented at the bank, and protested for nonpayment. The note offered in evidence, was made negotiable at the bank, and there was no proof that it was presented at the bank for payment. It was held, that a note made negotiable at a bank is not necessarily payable there also, and so the averment of presentation at the bank was wholly immaterial, and need not be proved. Barrett v. Wills. 4 Leigh 114.
c. Protest.

(i) Necessity of Protest

To Fix Liability of Parties to Foreign Bills of Ex= change. — By the law merchant, which is a part of the common law, protest of a dishonored foreign bill of exchange is ordinarily indispensable, and the attorney’s certificate of protest proves itself; that is, it is prima facie evidence of presentment and nonacceptance or nonpayment. But the rule does not extend to promissory notes and inland bills. As to those, the protest is not regarded as an official act. and accordingly, in the absence of statute, is not receivable as evidence of dishonor. Corbin v. Planters’ Bank, 87 Va. 661. 13 S. E. Rep. 98; Peabody Ins. Co. v. Wilson, 39 W. Va. 528, 2 S. E. Rep. 888.
To Fix Liability of Indorsers of a Note —West Virginia Rule. — But in Peabody Ins. Co. v. Wilson, 29 W. Va. 528, 2 S. E. Rep. 888, the court said: “As in the case *298 of foreign bills of exchange, so now, by virtue of our statute, due diligence requires that, if a negotiable note be dishonored for nonpayment, the holder is required to protest the same in order to charge the indorser. * * * In order to charge the indorser, itis not only necessary to aver and prove that the note at its maturity was presented for payment, and payment thereof demanded, at the place of payment designated in the note, but it must also be averred and proved that the note was protested for nonpayment and that notice of the dishonor of the note was duly given to the indorsers.”
To Enable the Holder to Bring a Joint Action. — And in order to hold an indorser of a negotiable note liable in an action of debt, with the maker, it must appear that the note was duly and formally protested for nonpayment, and that the indorser was duly notified of such nonpayment and protest. Shields v. Farmers’ Bank, 5 W. Va. 254.
Where Instrument Is Not Protestable by Virginia Law. — In the absence of proof that a bill or note sued on in Virginia was protestable by the law of the state where it was made payable, the presumption prevails that it was not. Corbin v. Planters’ Bank, 87 Va. 661, 13 S. E. Rep. 98.
(2) v Time of Making Protest — Protest cannot be made until after the instrument becomes payable, and where a bill of exchange is protested for nonpayment and notice thereof given to the drawer before the bill according to its tenor and effect becomes payable, such protest and notice are premature, and fix no liability on such drawer to pay the bill, and the drawer’s liability upon the bill is the same as if no protest had eyer been made. Thornburg v. Emmons, 23 W. Va. 326.
But in a doubtful case it is proper for the jury to determine whether the protest was made after dishonor or not. . Thus in an action of assumpsit by an indorsee against the drawers of a foreign bill of exchange drawn by merchants in Virginia on Liverpool, it appeared that the bill was presented to the drawee at Liverpool, and acceptance refused, on the 27th of March,.and that the bill was put into the hands of a notary for the purpose of protest on the 28th. It was held a proper question for the jury to 'decide, upon the evidence, whether the refusal of the drawee to accept was within or after business hours of the 27th, so that the bill could be put into the notary’s hands on that day, or not until the next day. Nelson v. Fotterall, 7 Leigh 179.
(3) Protest as Evidence.
To Prove Dishonor. — A protest of a foreign bill of exchange, in a foreign county is proved by the notarial seal. The protest is not conclusive, hut only prima facie evidence of the dishonor of the hill. Nelson v. Fotterall, 7 Leigh 179.
But where a promissory note or inland bill is payable in another state, the notarial .certificate of protest thereof made in that state is not evidence of dishonor, in an action brought thereon in the state of Virginia. Corbin v. Planters’ Bank, 87 Va. 661, 13 S. E. Rep. 98.
As Evidence of Dishonor by Failure to Accept.— Where the protest of a foreign hill of exchange, stated that the notary took the hill to the counting house of the drawee and there exhibited it to a clerk of the drawee and demanded acceptance thereof; and that the said clerk replied that the same could not be accepted, it was held, that the protest was sufficient to bind the indorser, and parol evidence was admissible in an action by the holder against the indorser to prove that the clerk was authorized to refuse acceptance. Stainback v. Bank of Virginia, 11 Gratt. 260.
Of Facts Stated Therein. — Under W. Va. Code, sec. 7, ch, 51, sec. 8, ch. 99, the protest of a negotiable instrument is prima facie evidence of the facts “stated therein, or at the foot, or on the back thereof, in relation to presentment and dishonor, and notice thereof.” Peabody Ins. Co. v. Wilson, 29 W. Va. 528, 2 S.E. Rep. 888; Walker v. Turner, 2 Gratt. 534.
To Prove Presentment, Dishonor, and Notice. — But when the protest is the only evidence relied on to establish due presentment, dishonor, and notice, such protest must contaiu averments sufficient to show that everything requisite has been done on the part of the holder or his agent to authorize the demand upon the indorser. Peabody Ins. Co. v. Wilson, 29 W. Va. 528, 2 S. E. Rep. 888.
To Prove Notice. — And where a protest simply states that notice of dishonor was sent by mail to the indorser, directed to their “several addresses,” such certificate, in the absence of all other evidence is insufficient to prove due notice. Peabody Ins. Co. v. Wilson, 29 W. Va. 528, 2 S. E. Rep. 888.
But in Slaughters v. Farland, 31 Gratt. 134, a certificate of a notary that he gave notice of a protest of a note for nonpayment sent hy mail to the place of residence of the indorser while there was a mail communication between the place of starting and the residence, though not hy the direct route, was held to he sufficient evidence of notice.
Copy of Protest. — A copy of a bill of exchange and notarial protest, with an affidavit of the payee that the original was lost or mislaid, was held not to he legal evidence to charge the drawer. Wright v. Hencock, 3 Munf. 521.
Aiding Protest by Extrinsic Evidence. — Where the protest itself did not state that notice of the dishonor .of the note was given to the indorser, the affidavit of the notary stating that notice had been given, was held not competent evidence. Walker v. Turner, 2 Gratt. 534.
In an action of debt upon a negotiable note the plaintiff offered in evidence the protest of the notary, which stated the due presentment and demand of the note, the failure to pay, the protest for nonpayment, and the fact that notice of the protest had been forwarded to the makers of the note. It omitted to state that the notice had been forwarded to the indorser, who was the defendant. He then offered in evidence the ex parte affidavit of the notary, that he had forwarded it by mail, informing him of the protest and dishonor of the note. It was held, that such affidavit was not admissible to prove notice, in a case where the protest did not state that notice of the dishonor had been sent to the indorser. Walker v. Turner, 2 Gratt. 534.
Effect as Evidence Determined by the Court. — a notarial certificate of protest is in the nature of documentary evidence, and the proper construction as well as the legal effect thereof, as an instrument of evidence of the facts stated therein, are questions of law, to he determined exclusively by the court. Peabody Ins. Co. v. Wilson, 29 W. Va. 528, 2 S. E. Rep. 888.
Inferences on Demurrer to Evidence — Virginia Rule. —In an action of debt against the indorsers of a protested note discounted at the hank, the protest of the notary stated that “he placed in the postoffice of this place four written notices, one directed to the payer, and one directed to the two indorsers, at Blacksburg, Virginia, informing them,” etc. On de *299 Ttrarrer to the evidence it was held, that as the jury would have been warranted to infer from this evidence that the residence of the defendants was in Blacksburg the court must make the same inference upon a demurrer to evidence. Linkous v. Hale, 27 Gratt. 668. This case overrules the law as laid down in a headnote to Raine v. Rice, 2 P. & H. 529.
Same — West Virginia Rule. — But this case is disapproved by the West Virginia court, and it is held, that where the only evidence introduced to prove presentment, dishonor, and notice is contained in the notarial certificate of protest, the court, upon a demurrer to evidence, will not infer that any step was regularly taken, or that any fact existed, which is not certified to in the protest. Peabody Ins. Co. v. Wilson, 29 W. Va. 528, 2 S. E. Rep. 888.
And so where a certificate of protest simply states that notice was addressed to the indorser at a certain place, without adding that such place was the postoffice or residence of the indorser, the court, upon a demurrer to evidence, will not infer that such was the fact, and such certificate is, therefore, insufficient to prove due notice. Peabody Ins. Co. v. Wilson, 29 W. Va. 528, 2 S. E. Rep. 888.
Protest without Notarial Seal Admissible in Evidence. — And the want of a notarial seal is not sufficient to prevent the receipt of a certificate of protest signed by a notary of this state in evidence. Second Nat. Bank v. Chancellor, 9 W. Va. 69.
d. Notice oe Dishoxok.
(i) Necessity of Notice.
Knowledge without Notice Not Sufficient. — Notice of dishonor means notification of dishonor; and knowledge of nonpayment of the instrument by the party to-be charged is not sufficient. Bank of Old Dominion v. McVeigh. 29 Gratt. 546; Brown v. Ferguson, 4 Leigh 37.
To Fix Liability of Drawers and Indorsers of Bills of Exchange.-The drawer of a bill of exchange, or order, is not directly liable to the payee or indorser, but his implied obligation or contract is to pay, in the event the amount is not paid by the drawee. The general rule is well established, that drawers and endorsers are entitled to prompt notice of the nonacceptance or nonpayment, in order that the former may look after his funds, and withdraw and secure the same, and that the latter may take the necessary steps to secure himself; and that upon the failure to receive such notice, they are discharged from liability; and the bill or order, as between the drawer and payee or indorsee, will be considered paid. Ford v. McClung, 5 W. Va. 156: Brown v. Ferguson. 4 Leigh 37; Thompson v. Cumming, 2 Leigh 321; Willock v. Riddle, 5 Call 358; Davis v. Poland, 92 Va. 225, 23 S. E. Rep. 292; Early v. Preston, 1 P. & H. 228; Wood v. Luttrel, 1 Call 232.
To Fix Liability of Indorsers of Notes.- So the indorser of a note is entitled to notice of dishonor of the instrument and a failure to use due diligence in giving him notice will discharge him. May v. Boisseau, 8 Leigh 181; Bank of Old Dominion v. McVeigh, 29 Gratt. 546; Brown v. Ferguson, 4 Leigh 37; Peabody Ins. Co. v. Wilson, 29 W. Va. 528, 2 S. E. Rep. 888; Davis v. Poland, 92 Va. 225, 23 S. E. Rep. 292.
To Fix Liability of Drawer of Check. — The contract of the drawer of a check differs materially from the contract of the drawer of a bill of exchange. In order to hold the drawer of a check liable, the holder is not absolutely bound to present the check for the payment promptly, and the drawer is not absolutely entitled to notice of its dishonor. But the fact that a check is presumed to be drawn against deposited funds makes it of great importance that a check should be presented, and that the drawer should be notified of its nonpayment, in order that he may speedily inquire into the cause of refusal and be placed in a position to secure his funds which are deposited in bank. Therefore, where the holder of a check fails to present the check at the bank for payment within a reasonable time, or fails to give notice to the drawer of its dishonor, the drawer is discharged to the extent that he is prejudiced by such failure. Bell v. Alexander, 21 Gratt. 1; Purcell v. Allemong, 22 Gratt. 739; Cox v. Boone, 8 W. Va. 510; Devendorf v. W. Va. Oil, etc., Co., 17 W. Va. 174; Compton v. Gilman, 19 W. Va. 312.
To Fix Liability of flaker and Acceptor. — The contract of the maker of a negotiable note is an absolute one and it is of course never necessary to prove notice of dishonor to him, as he necessarily knows of the dishonor of the instruments through his own failure to pay; and the same is true of the acceptor óf a bill of exchange. Peabody Ins. Co. v. Wilson, 29 W. Va. 528, 2 S. E. Rep. 888: Hays v. Northwestern Bank, 9 Gratt. 127; Hansbrough v. Gray, 3 Gratt. 356; Watkins v. Crouch, 5 Leigh 522.
To Fix Liability of Irregular Indorsers. — Where a negotiable promissory note is first indorsed by a stranger and then delivered to the payee, such irregular indorser, according to the West Virginia rule, is prima facie an original promisor or guarantor as the holder may elect. His liability is not governed by the strict rules of the law merchant, but is determined by the manner in which the holder elects to treat him. If the holder elects to treat him as a joint maker or guarantor, instead of an ordinary indorser, protest and notice of nonpayment are not necessary in order to bind him. Miller v. Clendenin, 42 W. Va. 416, 26 S. E. Rep. 512.
It has not been decided in Virginia whether an irregular indorser is entitled to notice of dishonor or not; but it is certainly necessary now under the provisions of sec. 63 of the Negotiable Instruments Law. See Call v. Scott, 4 Call 402; Fitzhugh v. Love. 6 Call 5; Frank v. Lilienfeld, 33 Gratt. 377. See infra, “Liabilities of Parties — -Irregular Indorsers.”
To Fix Liability of Accommodation Maker. — The maker of a note made for the accommodation of the payee, is not released by the failure to protest the note and give him notice of dishonor, though it is known to the holder that he is an accommodation maker of the note. Hansbrough v. Gray, 3 Gratt. 356.
To Fix Liability of the Endorser of Notes Made for His Accommodation. — Where notes are made for the accommodation of the payee, the payee is liable upon his indorsement without having been served with notice of protest and dishonor. McVeigh v. Bank of Old Dominion, 26 Gratt. 785.
To Fix Liability of Accommodation Indorser. — An indorser is chargeable without notice if he indorsed for the drawer for accommodation only, and had no expectation that the drawee would pay. Farmers’ Bank v. Vanmeter, 4 Rand. 553.
To Fix Liability of Endorser of a Nonnegotiable In=> strument. — And it is a well-settled rule that a party whose name appears on the back of a nonnegotiable instrument, as assignor or indorser, is not entitled to notice of the dishonor of the instrument. Pitman v. Breckenridge, 3 Gratt. 127.
Notice of Failure to Accept Necessary. — In case of the dishonor of a bill of exchange by a failure *300 of the drawee to accept, it is just as essential that the holder have notice of the dishonor by such failure to accept, as it is for him to have notice of the failure to pay when presented for payment. Thompson v. Cumming, 2 Leigh 321.
Not Necessary to Notify All in Order to Hold One.— Where there are several indorsers to a negotiable instrument, the holder does not have to give notice of protest to all of them in order to bind one. Those who have received notice of protest are bound notwithstanding the fact that there are others who have not been notified. Cardwell v. Allan, 33 Gratt. 160.
Condition Precedent to Recovery. — The burden of proof that due presentment of a note for payment has been made, and due notice of protest thereof given to the indorser, or that due diligence has been used to give such notice, rests upon the plaintiff; and clear proof on his part of such presentment, dishonor, and notice is a condition precedent to his right to recover against the indorser. Peabody Ins. Co. v. Wilson, 29 W. Va. 528, 2 S. E. Rep. 888; Early v. Preston, 1 P. & H. 228.
Injury Implied from Failure to Give Notice. — In case of failure to give notice to the drawer of a bill upon its dishonor, the law implies injury to the drawer. Ford v. McClung, 5 W. Va. 156.
Penalty for Failure to Give Notice of Protest of Inland Bill. — The penalty for not giving notice of the protest of an inland bill of exchange, is the loss of interest and damages; but the principal is nevertheless recoverable. Willock v. Riddle, 5 Call 358.
(2) Mode of Giving Notice.
(a) Where Parties Reside in Same Town.
Personal Service Necessary. — The best evidence of notice is proof of personal service on the party to be affected by it, or by leaving a copy at his dwelling house. Depositing a notice in the postoffice affords but presumptive evidence of its reception, and is permitted to be substituted' for the former only where the latter would be too inconvenient or expensive. Hence, when the convenience of the public post is not needed for the purposes of the transmission, as where the parties reside in the same city or town, there is no reason for its use, or for waiving the more stringent and certain evidence of notice. Therefore, where the parties reside in the same city or town the general rule is that notice must be delivered in person to the party to be charged, or left at his residence or place of business. Brown v. Bank of Abingdon, 85 Va. 95, 7 S. E. Rep. 357; Peabody Ins. Co. v. Wilson, 29 W. Va. 528, 2 S. E. Rep. 888; McVeigh v. Bank of Old Dominion, 26 Gratt. 785.
And this rule holds good even though the party to be charged resides outside of the town, but in the vicinity, if he receives his mail at this town. And in the absence of proof of a usage known to him at the time of entering into the contract notice must be left at his residence or dwelling; and notice deposited in the postoffice is not sufficient to charge him in the absence of proof of its actual receipt. Brown v. Bank of Abingdon, 85 Va. 95, 7 S. E. Rep. 357; Peabody Ins. Co. v. Wilson, 29 W. Va. 528, 2 S. E. Rep. 888.
Distinction between Different nodes. — The distinction between the different modes of giving notice is this : That where the holder and indorser reside in different places, if the holder deposit the notice in the postoffice in due season, he has no further burden on him as to the actual receipt of it by the latter ; but when the parties both live in the same town, the sender of the notice is bound to show that it was actually received by the indorser in due season, or left at his dwelling house, which in that case, is deemed equivalent to personal service. Peabody Ins. Co. v. Wilson, 29 W. Va. 528, 2 S. E. Rep. 888.
(b) Where Parties Reside in Different Towns.— Where the parties live at a distance from each other and in different cities or towns, so that personal service would be inconvenient and expensive, notice sent by mail to the nearest postoffice is sufficient to bind the party. Brown v. Bank of Abingdon, 85 Va. 95, 7 S. E. Rep. 357; McVeigh v. Bank of Old Dominion, 26 Gratt. 785.
(3) What Amounts to, Sufficient Service by Mail.
Deposit in Postoffice Sufficient. — The deposit of the notice in the postoffice, properly addressed and in proper time, is all that is required to charge the party so notified, and the sender has no further duty on him as to the actual receipt. Friend v. Wilkinson, 9 Gratt. 31; Farmers’ Bank v. Gunnell, 26 Gratt. 137; McVeigh v. Bank of Old Dominion, 26 Gratt. 785.
Party Equal Distance from Two Postoffices. — Where an indorser resided in a country district passing under a particular name, and having a postoffice within it; and being the same distance from that office and another out of the bounds of the district, a notice of protest sent to the first-mentioned office, was held sufficient, though in fact he was accustomed to receive his letters and papers from the other office. Rand v. Reynolds, 2 Gratt. 171.
Letter Deposited in Mail during War. — Where the holder and indorser resided in different localities at the time of the dishonor, and for months before and afterwards, the usual and ordinary intercourse by mail being intercepted by a state of war, itwas held that the holder did not prove due diligence by simply proving that he deposited in thispostofflceattheday of dishonor of the note, a notice of dishonor addressed to the indorser at his place of residence. Farmers’ Bank v. Gunnell, 26 Gratt. 131.
And so notice of dishonor of a check deposited in the postoffice at New Orleans while that city was under permanent federal occupancy and control, and addressed to Petersburg, Va., during the pend-ency of the Civil War was of no avail, unless it was shown that the law or a general usage required the letter containing the notice to be preserved by the postmaster until the restoration of mail communication, and then forwarded to its destination. Billgerry v. Branch, 19 Gratt. 393.
Notice Sent by One of Two Equally Good Routes. — A bill drawn in Petersburg, Va., on a house in London, was protested for nonacceptance on the 5th of April 1843. The next Cunard steamer sailed from Liverpool for the United States on the 19th of that month, and notice of the dishonor of the bill was sent by that steamer. At that time these steamers carried the mail between the two countries under a contract with the British government, and it was the usual mode of transmitting letters. There were, however, regular lines of sailing packets between London and Liverpool and the United States, for which letter bags were made up at the London post-office, and such packets sailed from London or Liverpool on the 7th, 10th and 17th of April 1843. But it was probable that the steamer of the 19th would arrive before any of them. The notice was held sufficient. Stainback v. The Bank of Virginia, 11 Gratt. 260.
Notice Addressed to “Legal Representative” of Party. — An indorser on a negotiable note died intes *301 late before the note became due. When the note became due it was regularly protested for nonpayment, and no person haying then qualified as administrator on the estate of the indorser, the notary on the same day deposited in the postoffice of the town in which the note had been made payable, and discounted, the notice of protest directed to “the legal representative, ” of the indorser. This was held sufficient notice. Boyd v. City Sav. Bank, 15 Gratt. 501. The reason upon which this case is based is, that as no person had qualified as administrator on the estate, there was no one on whom personal service could be made, and it was, therefore, excused.

(4) Time of Giving Notice.

Where Parties Reside In Different Places. — If the
party to be charged reside at a different place from the holder, the notice must be sent to him by the first mail which leaves after the day of the dishonor is passed, and does not close before early and convenient hours of the day succeeding the day of dishonor. directed to him at the place of his residence, or to his nearest postoffice, or to the postoffice where he usually receives his mail matter, advisinghim of the protest. Peabody Ins. Co. v. Wilson, 29 W. Va. 528, 2 S. E. Rep. 888; Corbin v. Planters’ Nat. Bank, 87 Va. 661, 13 S. E. Rep. 98; Brown v. Ferguson, 4 Leigh 37
But where a note was due on the 14th of the month in New York, and on the 17th the holder received notice of its dishonor in Richmond, Virginia, which on the same day he forwarded to the indorser, there is no proof of due notice of dishonor, as it does not appear when the notice was mailed in New York. Corbin v. Planters’ Nat. Bank, 87 Va. 661, 18 S. E. Rep. 98.
Any party to a bill of exchange, or a notary who protests it may give notice of its dishonor; and such notice will be sufficient, if it be sent by the notary on the day after or the next mail day after protest; or by any party thereto, on the day thereafter, or the next mail day after such notice is received by mail-excluding Sundays in both cases. Early v. Preston, 1 P. & H. 228.
Where Parties Live in Same Place. — Where the indorser lives in the same place where the note is payable, notice of protest given him on either the same day the demand is made or the next day is sufficient. Brown v. Ferguson, 4 Leigh 37.
Notice by Successive Indorsers. — If due notice is given by the holder to his immediate indorser, who, on receiving „ notice, transmits notice reasonably to his immediate indorser, the holder may recover against the latter, although he has never given him any notice, as notice by an indorser whose liability has been fixed inures to the benefit of all subsequent parties to the instrument; and this, regardless of the fact that the prior indorser did not receive notice as soon as he would have received it, had it been sent him by the holder, for the holder has a reasonable time to give notice to his immediate indorser, and this indorser has the same time in which to give notice to his predecessor, and so on. Big Sandy Nat. Bk. v. Chilton, 40 W. Va. 491, 21 S. E. Rep. 774; Brown v. Ferguson, 4 Leigh 37.
Successive Indorsers — Agent for Collection. — Every party to a bill of exchange is entitled to one full day, to give notice to the party next before him, of the dishonor of the instrument. This rule is applicable even to a party who is a mere agent for collection, and who indorses the bill only for the purpose of collection. Brown v. Ferguson, 4 Leigh 37.
Each Party Must Exercise Due Diligence. — Over diligence of one party to a bill does not supply the under diligence of others ; and though the drawer or indorser sought to be charged, in fact receives notice as early as he would regularly be entitled to it, yet the holder, in order to charge him, is bound to show due diligence in each and every party through whose hands the bill has passed. The onus probandi, in such case, lies on the plaintiff, to prove due diligence, and not on the defendant to prove negligence. Brown v. Ferguson, 4 Leigh 37.
Burden Proving That Notice Was flailed in Proper Tisne.- in an action upon a bill of exchange by an indorsee against an indorser, it appeared to be a proper case in which to send notice of protest by the mail, and it also appeared that such protest had not arrived at as early a date as in the regular course of the mail it might have come if started at the proper time. The burden of proof was held to be upon the plaintiff to prove that it was put into the mail at the proper time. Friend v. Wilkinson, 9 Gratt. 31.
Unreasonable Delay. — Wherever there is an unreasonable delay in giving notice to the indorser he will be discharged. A delay of two months is unreasonable, and a notice if sent there is of no effect to charge the indorser. Bank of Old Dom. v. McVeigh, 29 Gratt. 546.
Nonsecular Days Must Be Proved. — The courts will not take judicial notice of the fact that the next day after the protest, or receipt of notice thereof, is not a mail day; or the time it requires for a letter to go by mail between two given points. Such matters if material, must be proved. Early v. Preston, 1 P. & H. 228
Notice of Protest of Foreign Bill under Act of 1848.— If notice of the protest of a foreign bill of exchange be given within eighteen months from the date of the bill, it will be sufficient under the act of 1848 (see Hen. Sts. 85), unless there be particular circumstances to warrant a departure from the general rule. Stott v. Alexander, 1 Wash. 331.
“Due Diligence” a Question of Law. — The question of due diligence in serving notice of dishonor of negotiable paper is a question of law, and if there be doubt or difficulty, in making proper deductions from the evidence, it must be solved by the court, as if the jury had not passed on the evidence. Early v. Preston, 1 P. & H. 228; Peabody Ins. Co. v. Wilson, 29 W. Va. 528, 2 S. E. Rep. 888.
Excuses for Delay in Giving Notice. — Where the holder and indorser reside in different states or countries at the time of the indorsement and maturity of the note, and war arises between such states or countries between those periods, and continues to exist at the time of such maturity, the impossibility which thus arises of their givingsuch notice is a legal excuse for not doing so. The excuse, however, is not permanent, but is only for a delay until the impossibility ceases when due notice must be given. McVeigh v. Bank of Old Dom., 26 Gratt. 785; Farmers’ Bk. v. Gunnell, 26 Gratt. 131; Tardy v. Boyd, 26 Gratt. 631.
(5) IHace of Giving Notice.
flust Be Left at Place of Business or Residence, or Deposited in Postoffice. — Notice served by delivering a copy at the residence or place of business of the indorser is always sufficient to bind him whether he actually received it or not; and where the parties reside in different towns notice sent by mail addressed to the postoffice which is nearest to the indorser’s residence or place of business, is sufficient. *302 Peabody Ins. Co. v. Wilson, 29 W. Va. 528, 2 S. E. Rep. 888; McVeigh v. Bank of Old Dom., 26 Gratt. 785.
But notice of dishonor of a note left with a servant at the residence of an indorser, who was at the time a refugee in the confederate lines, was not sufficient, as the statute directing how notices may be given does not apply to notice of dishonor of negotiable paper. McVeigh v. Bk. of Old Dom., 26 Gratt. 785.
Temporary Residence. — Where a party has an actual domicil and -a temporary residence it is a general rule that notice sent to such -temporary residence will bind him. But where the party to be charged has ceased to reside at his temporary place of residence, notice there will be insufficient. Thus, where notice was left at the dwelling house of a member of congress in Washington after the adjournment of congress and after he had left, the city, notice there was held to be insufficient. Bayly v. Chubb, 16 Gratt. 284.
Notice Sent to Wrong Place alter Due Inquiry.— Where the holder using due diligence to ascertain the place of residence of the indorser is wrongly informed, and transmits notice by mail according to such information, the liability of the indorser becomes thereby fixed and absolute; and the holder is not bound to give any other notice, even though he may afterwards be informed correctly as to the residence of the indorser. McVeigh v. Bank of Old Dom., 26 Gratt. 785.
e. Excuses for Want of Presentment, Protest, and Notice.
Notice Hay Be Expressly Waived. — The consequences of neglect to give notice may be waived by the person entitled to take advantage of the failure, but the act which is to operate as a waiver must be the act of the indorser himself. May v. Boisseau, 8 Leigh 181; Dey v. Martin, 78 Va. 1.
Waiver Is Intentional Relinquishment of a Known Right. — Where an indorser of a negotiable note executed a trust deed to thé holder in ignorance of the fact that the holder had extended time to the maker, by which extension the indorser is released, the trust deed was enjoined. Giving the trust deed did not amount to a waiver, as a waiver is the intentional relinquishment of a known right, and there must be both knowledge of the existence of the right and an intention to relinquish it. Dey v. Martin, 78 Va. 1.
Unequivocal Promise to Pay Is a Waiver. — Although a promise to pay by an indorser, with full knowledge of all the facts, and of the laches of the holder, may be held in point of law to amount to waiver of the right to notice, yet this rule must be taken with this qualification ; the promise tobe obligatory must be deliberately made in clear, explicit language, and must amount to an admission of the right of the holder, or of a duty and willingness of the indorser to pay. If, therefore, the conduct or acts of the indorser be equivocal, or the language used be of a qualified or uncertain nature, the indorser will not be held responsible. A conditional promise to pay, or an offer to pay in a certain manner, is not binding, as a waiver of the rights acquired by the laches of the holder, if the terms be not accepted. Tardy v. Boyd, 26 Gratt. 631; Pate v. McClure, 4 Rand. 164.
Offer to Pay in Depreciated Currency. — But an offer by an indorser to pay the debt in depreciated currency, which offer is refused, is not sufficient to excuse notice, for as soon as the offer to pay in such currency is refused the parties stand upon their , former footing, the offer not constituting a waiver. Tardy v. Boyd, 26 Gratt. 631.
Acknowledgment of Debt by the Indorser — If the drawer of a protested bill of exchange, being applied to in behalf of the holder for payment, acknowledges the debt to be just and promises to pay it, saying nothing about his having received notice, the holder in an action of debt upon the bill, against such drawer, is not bound to prove that notice' was given him of the protest. Walker v. Laverty, 6 Munf. 487; Pate v. McClure, 4 Rand. 164.
. Thus, in an action on a bill of exchange, the defendant required proof of notice of protest for nonpayment of the bill. The plaintiff introduced a witness, who proved, that-he applied to -the defendant for payment of the said bill, who acknowledged that the debt was a just one, and said he would pay it; nothing was said as to his receiving notice. The defendant moved the court to instruct the jury that unless the acknowledgment was made, with the knowledge of all the facts in the case, as to the laches of the holder of the bill, the evidence of acknowledgment was not to be received. The court refused to give such instruction, and instructed the jury that such acknowledgment was a waiver of notice. This instruction was held proper on appeal. Pate v. McClure, 4 Rand. 164.
Where Residence of Indorser Cannot Be Found by Due Diligence. — Where the holder uses due diligence to ascertain the place of residence of the indorser at the time of the maturity of the note without being able to do so, he is altogether excused for giving such notice, and the liability of the indorser then becomes fixed and absolute, and the holder is under no obligation to give such notice even though he may afterwards discover the place of the residence of the indorser. McVeigh v. Bank of Old Dom., 26 Gratt 785.
Where Indorser Receives Assets of Maker. — The assignment of property by the maker of a note to the indorser to relieve him against his contract of indorsement is not a sufficient excuse for failure to make presentment, and give the indorser notice of dishonor, unless the property so assigned is adequate to indemnify the indorser against all possible loss by his contract of indorsement. Watkins v. Crouch, 5 Leigh 522.
Conveyance in Trust by Indorser to Secure His Contract of Indorsement. — Where an indorser of a negotiable instrument executes a deed of trust to a trustee as collateral security for his contract of indorsement, the property conveyed by the deed of trust may be subjected and sold, anditisnotincumbent upon the holder of the instrument to give the indorser notice of protest of the instrument in order to subject this property. Cardwell v. Allan, 33 Gratt. 160.
Knowledge of Insolvency by Drawee Not Sufficient Excuse. — Knowledge of the insolvency of a drawee of a bill, or of the fact that the bill will be dishonored, does not excuse the holder from notifying the drawer of protest for nonpayment. Until the drawer or indorser receives such notice, he has no reason to conclude that resort will be had to him. Brown v. Ferguson, 4 Leigh 37.
Promise to Accept Counter Draft No Excuse. — A promise of a drawer of a bill of exchange to accept a bill to be drawn on him by the drawees, to enable him to take up his bill, has not the effect of a waiver of notice to such drawer. Brown v. Ferguson, 4 Leigh 37.
*303 Where Drawer Has No Reasonable Grounds to Draw. —Where the drawer of a bill o f exchange has no reasonable grounds to draw he is not entitled to notice of the dishonor of the instrument. But it is not necessary that the bill should be drawn on funds in order to entitle the drawer to notice. Thus, where the drawer had no funds with the drawee, he was held entitled to notice of dishonor where the previous course of dealing between the parties furnished reasonable ground to draw. Thornburg v. Emmons, 23 W. Va. 325.
Fraudulent Indorser Is Not Entitled to Notice. — An indorser, who unites with the drawer to deceive the holder, by representing a bill as one that will probably be accepted, with a knowledge that it will not, is guilty of a fraud, which deprives him of the right to insist upon notice. Therefore, an indorser who indorsed a bill of exchange for the accommodation of the drawer, for the purpose of procuring a discount at the bank, and who had no expectation that the bill would be paid by the drawee, was held not entitled to notice. Farmers’ Bank v. Vanmeter, 4 Rand. 553.
War a Temporary Excuse. — -A state of war which intercepts intercourse by the ordinary and usual course of mail between the holder and the indorser of a note, excuses the holder from giving notice of dishonor so long as such interruption continues: but due diligence on the part of the holder requires that he should forward notice to the indorser as soon as interruption ceases. Farmers’ Bank v. Gunnell, 26 Gratt. 131; McVeigh v. Bank of Old Dom., 26 Gratt. 785; Tardy v. Boyd, 26 Gratt. 631.
Law Dispensing with Notice Unconstitutional as to Existing Instruments. — The ordinance of Virginia convention passed June 24, 1861. which provided that in cases specified the parties to negotiable instruments in such cities and towns (as before specified), shall remain bound after the maturity of such instruments, without demand, protest or notice as if the requirements of the law in that respect had been complied with, was as to instruments made and discounted before its passage, in violation of the constitution of the United States, which declares that “no state shall pass any law impairing the obligation of the contract, ” Farmers’ Bank v. Gunnell, 26 Gratt. 131.
Verdict of Jury Should Find Exc&ses. — Upon the question whether or not the drawer has received or is entitled to notice of the dishonor of the instrument, a special verdict of the jury in such case ought to find the causes which would excuse the delay in giving notice, if any such existed. Brown v. Ferguson, 4 Leigh 37.
2. OF NONNEGOTIABLE PAPER.
Must Bring Suit against Maker Generally. — The general rule is that due diligence must be used by the assignee, in bringing suit against the maker, before the assignor can be sued. But there are many cases in which no suit need be brought against the maker, as where the note was a forgery, and the assignor has received the money from the assignee, or where the assignor practiced a fraud upon the assignee, or where exchange notes were given between the maker and the assignor, as a consideration for each other, and the note given by the assignor has never been paid by him nor sued upon. Therein no obligation on the assignee to pursue the bail of the maker before suing his assignor. Caton v. Lenox, 5 Rand. 31; Lee v. Love, 1 Call 497.
Holder Cannot Set Off a Claim against Maker. — -So in Mandeville v. Patton, 3 Call 9, it was held that the assignee of a promissory note negotiable at the bank of Alexandria, could not offer it as set-off, to a suit brought against him by the assignor, upon a note in writing to deliver to the plaintiff goods and groceries to a certain amount, because in such case the assignee must first proceed against the maker.
Must Sue the Maker within a Reasonable Time. — And in Thompson v. Govan, 9 Gratt. 695, an assignee of a note who had delayed suing the maker for two years, was not allowed to recover the amount of the note in an action against the assignor, in the absence of proof of the maker’s insolvency at the time, or shortly after the note fell due.
Must Bring a Valid Suit against Maker. — And it is not sufficient exercise of due diligence on the part of the assignee of a promissory note to bring a suit against the maker, which fails because of informality in the proceedings; but he must bring a sufficient suit, before he can charge the assignor. Bronaugh v. Scott, 5 Call 78.
Record of Suit against the flaker Must Be Certain. In order for the holder of a promissory note to sue the assignor he must show that he has*used due diligence to collect the note from the maker. Where the evidence of the holder’s due diligence consists of the record of a suit brought against the maker, this record must be certain to every intent. Hooe v. Wilson, 5 Call 61. In this case an assignee in blank of the payee of the promissory note indorsed it in blank to a firm under a special agreement. One of the partners filled up the blank indorsement to himself, brought suit against the maker, obtained judgment, and issued a JL fa. which was returned, “no effects.” This partner then brought suit against the assignor. It was held, that the record of the suit against the maker was not proof of a suit upon the note assigned, by the defendant, because that record stated an assignment to that partner individually, while in fact the assignment was made to the firm, and the partner individually had no title to the note.
Exceptions to Necessity of Suing Maker. — As a general rule it is necessary for the holder of a promissory note to sue the maker before he can proceed against the indorser; but to this rule there are exceptions. One of the instances in which it is not necessary to proceed against the maker is where he has been discharged in bankruptcy under the bankrupt laws of the United States, or the insolvent laws of a state, or that the drawer was actually insolvent, so that a suit against him would have been wholly unavailing. Brown v. Ross. 6 Munf. 391.
The object of the suit by the assignee against the maker of a note, is to ascertain his ability to may the money. If his inability can be ascertained, to every reasonable certainty, by any other means, there is no necessity of a suit against him, and recourse may be had, in the first instance, under such circumstances, to the assignor. Therefore, where the maker of a note was notoriously insolvent. the assignee was allowed to proceed against the assignor in the first instance. Saunders v. Marshall, 4 H. & M. 455. See Caton v. Lenox, 5 Rand. 31.
And where exchange notes have been given between the maker and assignor of a note as a consideration for each other, and the note given by the assignor has never been paid by him, nor sued upon, the assignee need not bring suit against the maker in order to charge the assignor. Catón v. Lenox, 5 Rand. 31.
Assignee Must Proceed against Acceptor. — a party *304 having a claim for a debtin suit, assigned that claim for a valuable consideration, and wrote á letter to his attorney entrusted to prosecute and collect the claim, informing him of the assignment, and requiring him to pay the money when collected, to the assignee. The attorney accepted the order, payable when collected. He afterwards collected the money, and became insolvent before paying it over to the assignee. It was held, that the assignor and drawer were not liable to the assignee, unless he had used due diligence to recover the money from the acceptor of the order, and given the assignor and drawer notice of the acceptor’s failure to pay. Wood v. Duval, 9 Leigh 6.
Burden of Proving Due Diligence. — In an action by an assignee against the assignor of a promissory note, the plaintiff, in order to maintain his action, must show that the maker was insolvent at the time the note was made, or fell due, or that he has used due diligence to recover from the maker, and failed. Drane v. Scholfield, 6 Leigh 386. In this case the maker of the note had removed to an adjoining state. Whether or not the assignee was hound to pursue the maker in the adjoining state in order to entitle him to proceed against the assignor, was left undecided. But It was held, that whether he was bound to pursue the maker or not, he might elect to do so; and as he had made his election to do so, and failed to commence or prosecute his suit against the maker, he had no recourse against the assignor. See monographic nole on “Assignments” for a full discussion of this subject.
Statute of Limitations. — Action upon a note is barred by the statute of limitations'by the lapse of five years after date of the note, before the bringing of the action. Watson v. Hurt, 6 Gratt. 633.
VII. LIABILITIES OF PARTIES.
1. THE MAKER.
Maker’s Contract Is Absolute. — The contract of a maker of a negotiable note Is an absolute one. His contract is to pay at all events and he is liable for the amount of the note without presentment, demand, protest, or notice thereof. Peabody Ins. Co. v. Wilson, 29 W. Va. 528, 2 S. E. Rep. 888; Hansbrough v. Gray, 3 Gratt. 356; Hays v. Northwestern Bank, 9 Gratt. 127; Watkins v. Crouch, 5 Leigh 522.
Note in Singular Number Signed by Two Is Joint and Several. — A promissory note in the singular number, but signed and sealed by two persons, is joint and several. Holman v. Gilliam, 6 Rand. 38.
Haker Conclusively Presumed to Know His Own Signature. — If one pays a forged note purporting to be made by him he cannot recover back the amount. Johnston v. Com. Bank, 27 W. Va. 343.
Surety in a Note Treated as Principal. — Where one of two or more makers of a joint and several promissory note is surety, he is liable to the payee as principal; and except in special cases provided by statute, the holder of such note has the same legal rights against such surety as he has against the principal debtor. Merchants’ Nat. Bank v. Good, 21 W. Va. 455.
Where Maker Leaves the State Statute of Limitations Stops Running. — And where a party makes a negotiable note payable in one state and then leaves that state and goes to another state and continues to reside there, he will be considered as a person who has obstructed the payee in the prosecution of his right of action on such note during his absence from the state, and, under the statute, the time which he has been absent from the state is to be excepted from the operation of the statute of limitations. Hefflebower v. Detrick, 27 W. Va. 16.
Survivor of Joint Makers Alone Liable under Statute. —The surviving obligor in a joint note, made before the act of 1786 (Rev. Code, p. 31), is alone liable to an action at law; nor can the note be set up in equity against the representatives of the deceased obligor, but on the ground of a moral obligation antecedently existing on his part to pay the money. Chandler v. Hill, 2 H. & M. 124.
Liability of Maker for Interest. — In an action in Virginia upon a note made in Maryland, on which more than six per cent, interest was charged, the plaintiff may recover the principal and six per cent, interest, and where a separate note was given for the excess of interest, which is still in the hands of the plaintiff unpaid, he will be permitted tore-cover the principal of the note sued on and six per cent, interest thereon. Fant v. Miller, 17 Gratt. 47.
2. THE DRAWER OP A CHECK. — The liability of the drawer of a check is different from that of the maker of a note, in that it is not an absolute liability, and it is different from that of the drawer of a bill of exchange in that it is more binding. The drawer of a check is absolutely liable to pay the check unless he is prejudiced by the laches of the holder, and this is the only peculiarity of the liability of the drawer of the check. Bell v. Alexander, 21 Gratt. 1; Purcell v. Allemong, 22 Gratt. 739; Cox v. Boone, 8 W. Va. 510; Devendorf v. W. Va. Oil, etc., Co., 17 W. Va. 174; Compton v. Gilman, 19 W. Va. 312. See ante, "Notice — Necessity of Notice.”
3. INDORSEES.
Indorsee’s Contract Is Conditional. — The contract of an indorser of a negotiable note is conditional. His undertaking is that if, upon due diligence having been used against the maker, the money is not paid, he will become liable for it. The due diligence is a condition precedent to a right of recovery against him. Being only collaterally and conditionally responsible, the Indorser must he dealt with with the utmost strictness. Peabody Ins. Co. v. Wilson, 29 W. Va. 528, 2 S. E. Rep. 888.
Indorsement Both a Transfer and a Contract. — An indorsement on a note, bill, or draft is not merely a transfer, but is a fresh and substantive contract, embodying all the terms of the instrument indorsed, and binding the indorser, though the instrument be void. Nichols v. Porter, 2 W. Va. 13.
Indorser Considered as Drawing a New Bill. — The indorser of the note is not only considered as warranting the note, but as drawing a new bill; and thereby rendering himself immediately liable to every indorsee to whom it may, for a valuable consideration, be assigned. Every subsequent indorser is considered in the same light: and the bona fide owner of the note, if he does not receive payment of the maker, may, at his election, bring suit against him, or against any indorser, however remote. If he recovers against a remote indorser, snch indorser has the same remedy against the maker of the note, or any prior indorser, as the owner of the note had against him. The currency and credit of such notes is aided by such a construction; for then, the more indorsers, the more security. Dunlop v. Harris, 5 Call 16.
Liability as between Immediate Parties Prima Facie Merely. — But as between the immediate parties, or as to any party having notice, the liability of one whose name isindorsed on negotiable paper Is.arana facie merely, and he may show any facts and circumstances, as against his immediate indorsee, *305 which would constitute a good defence to any other written contract. Hence, he may prove that the party whose name is indorsed below him, really indorsed before him, in point of time. Quarrier v. Quarrier, 36 W. Va. 310, 15 S. E. Rep. 154; Faulkner v. Thomas (W. Va.), 35 S. E. Rep. 915.
Order of Liability Is Successive Not Joint, — When several persons indorse a bill or note in succession, the legal effect is to subject them, as to each other, in the order they indorse. The indorsement imports a several and successive, not a joint, obligation, whether the indorsement be made for accommodation, or for value received, unless there be an agreement aliunde different from that evidenced by the indorsements. When the successive indorsements are for accommodation of other parties, the indorsers for accommodation may make an agreement to be jointly and equally bound, but whoever asserts such agreement must prove it. In cases, therefore, in which no such agreement is proved, the indorsers are not bound to contribution amongst themselves, but each and all are liable to those who succeed them. 1 Daniel, Neg. Inst. § 703; Willis v. Willis, 42 W. Va. 522. 26 S. E. Rep. 515; Bank of U. S. v. Beirne. 1 Gratt. 234; Nat. Bank v. Bates, 20 W. Va. 210; Stovall v. Border Grange Bank, 78 Va. 188.
Joint Indorsement Does Not Always Import Joint Liability. — But the name of the payee of a bill cannot be endorsed thereon jointly with that of other persons, so as to make them all jointly liable as indorsers; and, therefore, a power authorizing an attorney to indorse the names of the principals jointly on a bill is not complied with by making the bill payable to one of the principals and indorsing upon the same the names of all the principals. Bank of U. S. v. Beirne, 1 Gratt. 539.
Positions of Indorsers’ Names Changed without Con» sent. — The third indorser indorsed a note on the faith of the solvency of a prior indorser. On the renewal of the note, the order of the endorsements were changed, without the consent of this third indorser, who for the convenience of renewing the note, had left his blank indorsement with the makers. It was held, that a court of equity would grant him relief as against the indorser who should have preceded him. Slagle v. Rust. 4 Gratt. 274.
Time of Indorsement as Affecting Indorsers’ Liability. —The first indorser of a note in point of time, is not, of course, first responsible. If the payee of a note writes his name over that of a person who indorsed the same in blank before delivery, but did so only on the ground of the payee’s responsibility as first indorser, the payee will be liable as such in point of contract, though second in point of time. Chalmers v. McMurdo, 5 Munf. 252, 7 Am. Dec. 684.
Agreements between Indorsers as to Their Ultimate Liability — It is not a fraud in the holder of a bill of exchange, to make an arrangement with one of the indorsers, by which it is agreed that the whole burden shall be thrown upon the other indorsers, and that the indorser first mentioned is to be liable only in case they should be unable to pay., Farmers’ Bank v. Vanmeter, 4 Rand. 553.
Parol Evidence Inadmissible to Vary the Liability of the Indorser. --In an action by an indorsee against his immediate indorser, upon a protested bill of exchange. parol evidence of an agreement made between them, at the time of the indorsement, which would vary the legal liability of the indorser under his indorsement, is inadmissible. Woodward v. Foster, 18 Gratt. 200.
Effect of Indorsement of a Void Instrument. — Although a bill or note be declared void by statute, so that the drawer or maker is discharged from liability to any subsequent holder, yet any person who indorses such paper to a dona fide holder for value is liable on his indorsement, notwithstanding the invalidity of the instrument; because by indorsing he represents that the paper is genuine, and warrants that it will be paid. Moffett v. Bickle, 21 Gratt. 280; Nichols v. Porter, 2 W. Va. 13.
Transfer of Note after Protest Does Not Affect Indorser’s Liability.- -The liability of an indorser of negotiable paper is not affected by the fact of its transfer to a party responsible therefor after it has been protested for nonpayment. Nichols v. Porter, 2 W. Va. 13.
Law of Place of Transfer Governs Transfer. — The assignor of an instrument is not liable as an indorser, if the paper is nonnegotiable according to the laws of the state where it was transferred, although it may have been negotiable under the laws of the place where it was made. Nichols v. Porter, 2 W. Va. 13.
4. IRREGULAR INDORSERS.
Irregular Indorser Defined. - An irregular or anomalous indorser is a person, not the payee in the instrument, who places his name upon the back of it before it is delivered to the payee. He is not an indorser in the true sense, as the object of placing his name upon the paper is not to effect a transfer of it, but is generally intended to operate as additional security for the paper. Frank v. Lilienfeld, 33 Gratt. 377; Miller v. Clendenin, 42 W. Va. 416, 26 S. E. Rep. 512.
Relation to the Instrument May Be Shown by Ex» trinsic Evidence.' — When a negotiable promissory note made payable to a particular person or order, is first indorsed by a third person, and then delivered to the payee, such indorser is prima facie an original promisor or guarantor, as the payee may elect, or the payee may by indorsing his name above that of such third person, and transferring the note, make him a second indorser in the commercial sense. But the true nature of the transaction, and the understanding of the parties to it at the time, may be shown by parol proof, and such proof may destroy this right of election by the payee, and the third person backing such note maybe held liable only as an original promisor, or as a guarantor, or as an indorser, according to the nature of the transaction, and the original understanding of the parties to it. If it is shown by evidence that such third person signed his name on the back of such a note at the time it was made as security for the maker and for his accommodation, to give him credit with the payee, such proof does not alter the right of the payee to hold him bound as original promisor, or avS guarantor, or as indorser, as he may elect, but strengthens his prima facie right to elect; such option may be exercised at any time by the payee, and so long as he holds the note, may be changed at his pleasure, even after the institution of a suit by him against such third person. If it be shown that the understanding between such third person and the payee at the time of the transaction, was that such third person should be bound only collaterally, such understanding will destroy the right which the payee would have otherwise had, of electing to hold him bound as original promisor. Watson v. Hurt, 6 Gratt. 633; Orrick v. Colston, 7 Gratt. 189; Kearnes v. Montgomery, 4 W. Va. 29; Burton v. Hansford. 10 W. Va. 470; Long v. Campbell, 37 W. Va. 665. 17 S. E. *306 Rep. 167; Roanoke, etc., Co. v. Watkins, 41W. Va. 787, 24 S. E. Rep. 612; Miller v. Clendenin, 42 W. Va. 416, 26 S. E. Rep. 512.
And this rule applies to irregular indorsers of nonnegotiable paper, as well as to irregular indorsers of negotiable paper. Watson v. Hurt, 6 Gratt. 633; Orrick v. Colston, 7 Gratt. 189; Kearnes v. Montgomery, 4 W. Va. 29.
Extrinsic Evidence to Show Intention of Parties. — So where it appears that it was the intention of a party to be bound as an ordinary indorser when he placed his name upon the instrument, his liability is not affected because of the peculiar position of his name upon the paper, but he will be held to the liability which he intended to assume. Frank v. Lilienfeld, 33 Gratt. 377.
Indorsement Hade for , Additional Security. — So in Call v. Scott, 4 Call 402, a party who placed his name upon a bill of exchange as an irregular indorser was allowed to recover the amount of the bill from the drawer, upon proving that he only endorsed the note as security.
Extrinsic Evidence Inadmissible to Change the Contract. — A blank indorsement by a person who is not the payee of a note, and who is not a regular indorsee, imports a guarantee, and this guarantee cannot be altered by proof of a parol agreement, at the time of the execution of the note, that the note was not to be paid until the happening of a contingent future event. Watson v. Hurt, 6 Gratt. 633.
5. ASSIGNORS. — An assignor of nonnegotiable paper is not liable for its payment, unless it be shown that the maker was insolvent at the time the note fell due, or at the time of its assignment, if assigned after it became due, or that due diligence has been used against the maker without recovering the money, or by the use of due diligence the money could not have been made. Nichols v. Porter, 2 W. Va. 18. The liability of the assignor will be found fully treated in a monographic note on “Assignments” appended to Ragsdale v. Hagy, 9 Gratt. 409.
6. TRANSFERRER WITHOUT INDORSEMENT. —One who, for value transfers a negotiable note without an indorsement, thereby guarantees the genuineness of the instrument, but not the solvency of the parties thereto. In such case, it is immaterial whether the person making the transfer received the consideration for his own use, or for the use of another, unless he is acting as agent, and discloses not only his agency, but the name of the principal for whom he is acting. Lyons v. Miller, 6 Gratt. 427, 52 Am. Dec. 129. '
7. ACCOMMODATION PARTIES.
Accommodation Paper Not Binding until Negotiation. —Although a negotiable note on its face imports a debt due from the maker to the payee, and the indorsement imports a debt from the first indorser to the second, yet an accommodation note is not available as a security for money, until It is issued or negotiated to some real holder for valuable consideration. Until such note is so negotiated, it is a mere blank piece of paper, in no manner binding on the makers or indorsers. Whitworth v. Adams, 5 Rand. 342; May v. Boisseau, 8 Leigh 193. An indorser on an accommodation note has a right to retract his indorsement at any time before the negotiation of the note to a bona fide holder for value. And his right to retract such indorsement is not affected by a conveyance of property to him by the maker of the note to indemnify him against his indorsement. May v. Boisseau. 8 Leigh 192; Berkeley v. Tinsley, 88 Va. 1001, 14 S. E. Rep. 842.
And although the paper has been pledged for a certain sum, an accommodation indorser, while of course remaining liable for the amount advanced, may revoke his indorsement and prevent the further discount of the instrument. Berkeley v. Tinsley, 88 Va. 1001, 14 S. E. Rep. 842.
Accommodation Indorsers Liable Successively in Absence of Contract. —It is the established rule that the parties to ordinary commercial paper negotiated for value in the regular course of business are liable to each other in succession as their names appear upon the instrument. In the absence of special agreement, the same rule applies to successive accommodation parties, and a subsequent accommodation indorser who has been compelled to meet the obligation may maintain an action upon the instrument against any prior accommodation party and recover the whole amount paid. Robertson v. Williams, 5 Munf. 381; United States Bank v. Beirne, 1 Gratt. 265; Hogue v. Davis, 8 Gratt. 4.
Where several indorsers of negotiable paper have indorsed it for the accommodation of the maker, they are responsible in the order of their indorsements, unless there has been an agreement among them to be jointly and equally bound ; and the burden of proving such an agreement is upon the prior indorser who seeks the benefit of it. Hogue v. Davis, 8 Gratt. 4.
Order of Liability Changed by Agreement. — Where an accommodation indorser or security of a note, on which judgment has been obtained, purchases real estate from the principal debtor who retained the lien for the purchase price, and it is a matter of contract between them, at the time of the sale, that the indorser or surety shall assume the. payment of the judgment, the relation of the parties inter se is changed. -The indorser or surety becomes the real debtor, and the principal debtor the surety ; and the latter has the right to require that the lien of the judgment shall be enforced against the real debtor for his exoneration. Rhea v. Preston, 75 Va. 757.
Indorser for Accommodation Is a Surety. — .All indorser of a negotiable note who indorses for the accommodation of the maker, is a surety of the maker, and if time of payment is extended by the holder to the maker by a binding agreement without the consent of such indorser, the indorser is thereby released. State Sav. Bank v. Baker, 93 Va. 510, 25 S. E. Rep. 550; Dey v. Martin, 78 Va. 1.
What Is Not an Accommodation Note —in a contract for building a house it was agreed between the contractor and the employer, that the house should be paid for in notes of the employer, to be delivered to the contractor as the work progressed, and at times when a third party should say that the contractor had completed enough work to entitle him to the notes. The first note was properly issued. Before the contractor was entitled to the second note, it was delivered to him by the employer at the request of the contractor. This note though given to the contractor to accommodate him is not an accommodation note in the legal sense, but is a note founded upon a valuable consideration and is enforceable. Ould v. Myers, 23 Gratt. 383.
Right of Accommodation Indorser Who Pays after Protest —An accommodation indorser of a negotiable note who pays the note after protest, has only the right of a surety, to be fully indemnified for his payment on account of his principal. This indemnity is fully secured by the payment to him by the *307 principal of the value paid by the surety. Burton v. Slaughter, 26 Gratt. 914.
V2H. DISCHARGE AND PAYMENT.
1. BY EXECUTION OF NEW NOTE.
Execution of New Note No Payment unless So Intended —The general rule is that the debtor’s own note does not operate as the payment of an antecedent note unless so intended by the parties. In the absence of such intention, express or implied, the note is treated as a conditional payment merely. Hopkins v. Detwiler, 25 W. Va. 734; Lazier v. Nevin, 3 W. Va. 622; Miller v. Miller, 8 W. Va. 550; Poole v. Rice, 9 W. Va. 73; Dunlap v. Shanklin. 10 W. Va. 662; Bantz v. Basnett, 12 W. Va. 772; Sayre v. King, 17 W. Va. 562; Bank v. Good, 21 W. Va. 455; Farmers’ Bank v. Mut. etc., Soc., 4 Leigh 88; Moses v. Trice, 21 Gratt. 556; Lewis v. Davisson, 29 Gratt. 216; First Nat. Bank of Parkersburg v. Handley (W. Va. 1900), 37 S. E. Rep. 536; Morriss v. Harveys, 75 Va. 726; Hess v. Dille. 23 W. Va. 90; Taylor v. Bank of Alexandria, 5 Leigh 471.
Where the Debt Is Passed into Judgment Same Rule Applies — And if the note is passed into judgment, the same rule applies; the new note is considered simply as a conditional satisfaction of the judgment, and upon the dishonor of the former, the latter revives and may be enforced at law or in equity. When the parties provide for the extinguishment of the judgment, it maybe fairly presumed that they contemplate the extinguishment of the debt upon which it is founded. Where a substituted note was accepted in satisfaction of a judgment the court presumed in the absence of evidence to the contrary that it was accepted in satisfaction of the debt represented by the judgment. Morriss v. Harveys, 75 Va. 726; Feamster v. Withrow, 12 W. Va. 611.
Several Small Notes Given for a Large One —And where several small promissory notes were given for a large one. they were held to be no satisfaction for the larger one. unless paid, and suit was allowed to be maintained on tne larger one. McGuire v. Gadsby, 3 Call 234.
Where the New Note Is That of a Stranger. — But where the new note is that of a third party not previously bound for the debt the taking of such new note and the surrender of the old, will t)e treated prima facie as a discharge of the old note, and a release of the maker thereof from personal liability. But where the debt is a lien on land of which the maker of the new note has become the purchaser and as a part of the consideration therefor assumed to pay said debt, such new note given by such purchaser and surrender of the old note will not extinguish the lien on the land or he regarded as a payment of the debt, hut will discharge the old note and operate prima facie as a release of the makers of the old note from responsibility of the old debt. Hess v. Dille, 23 W. Va. 90.
Part Payment and Execution of New Note for Residue. — So where a part of a debt is paid before a note becomes due, and a new note is executed by the debtor for the residue, and the express agreement made between the parties that the old note shall he surrendered, such agreement is founded upon a valuable consideration and extinguishes the old note, and no suit can be brought thereon. Bantz v. Basnett. 12 W. Va. 772.
Note Made by New Parties and Agreement to Surrender Old Note. — In Dages v. Lee, 20 W. Va. 534, the acceptance by a creditor, of a note of a partner and his wife with an express agreement to surrender the evidence of the partnership debt, was held to operate as a discharge of the partnership debt. And the neglect of the creditor to surrender the evidence of the partnership debt according to his agreement, did not constitute a failure of consideration of the note, or release the makers.
Where There Is an Agreement to Accept the Note in Payment. — But, of course, where there is an express agreement between the parties to accept the new note in full satisfaction of the old this agreement will control Merchants’ Nat. Bank v. Good, 21 W. Va. 455; Hopkins v. Detwiler, 25 W. Va. 734; Morriss v. Harveys, 75 Va. 726; First Nat. Bank of Parkersburg v. Handley (W. Va. 1900), 37 S. E. Rep. 536; Poole v. Rice, 9 W. Va. 73; Dunlap v. Shanklin, 10 W. Va. 662; Hess v. Dille, 23 W. Va. 90; Moses v. Trice, 21 Gratt. 556.
Agreement to Accept in Pull Satisfaction Procured by Fraud. — But whether a note is that of one previously hound, or of a stranger, it will not be regarded as a n absolute payment or extinguishment of the precedent debt, even when so expressly received, ü the agreement to so accept it was procured by fraudulent concealments and misrepresentations. Poole v. Rice, 9 W. Va. 73; Merchants’ Nat. Bank v. Good, 21 W. Va. 455.
Surrender of Old Note Creates No Presumption of Payment. — And the fact that the old note is surrendered in such case, does not of itself raise a presumption of an agreement to accept the new note in full satisfaction of the old, and especially is this true where the creditor would thereby lose some security which he held for the debt. Hess v. Dille, 23 W. Va. 90; Merchants’ Nat. Bank v. Good, 21 W. Va. 455.
Note Secured by a Mortgage or Trust Deed.- The same principle is applicable in case of notes secured by a mortgage. Here no change in the form of the instrument which evidences the debt will affect the mortgage. Nothing short of payment of the debt will discharge the mortgage. Hopkins v. Detwiler, 25 W. Va. 734.
Execution oí Consolidated Note for Individual Notes. — Where stockholders of a corporation borrow money for the purposes of the corporation and execute their individual notes for the amount borrowed, upon which they appear indifferently as makers and indorsers, and make a verbal agreement between themselves that should the corporation fail to pay the debt they should share the loss ratably, and subsequently take up these individual notes and execute a consolidated note for the whole amount the execution of the consolidated note effects no merger of the parol agreement, and this agreement may still be enforced between the parties. The execution of the consolidated note operates not only as a renewal of the obligation to the creditor, but impliedly as a renewal and continuance of the verbal agreement between the makers and indorsers, modified so far only as to make it correspond with the date and terms of the new note. Kimmins v. Oldham, 27 W. Va. 258.
Renewal Notes —Upon a sale of land it was agreed, that the vendor was to convey it to the purchaser when the first payment should be made. At the time of making the contract the purchaser made a note to a third party for the amount of the first payment. This party indorsed the note and delivered it to the vendor who had it discounted, When the note matured the third party representeto the vendor that the purchaser had gone to Cincinnati for money to pay the note, and could not *308 get back in time to meet the payment, and that he wanted to renew the note. A new note was accordingly made with the vendor as indorser, and by it the first note was taken up. Upon the maturity of the note the vendor was compelled to take it up. It was held, that the first note was not received by the vendor as a payment on the contract, and that the renewal by the third party did not discharge the purchaser from liability for the first payment. Stephenson v. Rice, 12 W. Va. 575.
Judgment Note as Additional Security — Where a judgment note is given as an additional security to an original promissory note there is no merger. The party claiming the judgment note as collateral may show such fact by parol evidence. Witz v. Fite, 91 Va. 446, 22 S. E. Rep. 171. In this case a plea that a j udgment note was executed in satisfaction of a prior promissory note was held defective as it did not allege that it was.accepted in satisfaction of such note. In no case will a note be discharged by the execution of an instrument of a higher nature, unless the parties intended to effect a merger thereby. Bowles v. Elmore, 7 Gratt. 385.
Usurious Notes No Payment. — Where usurious notes are given for a valid pre-existing note these usurious notes do not cancel the valid note, but that remains still unsatisfied, the new notes being nugatory and void. In such case the creditor is.remitted to his original title thereto and remedy therefor. Parker v. Cousins, 2 Gratt. 372.
2. TO WHOM PAYMENT MAY BE MADE.
Note Deposited in Bank for Collection May Be Paid to Bank — If a note deposited for collection in a bank where it is made payable, is not paid at maturity, but being protested is permitted by the holder to remain in the bank, however long or for whatever motive he may permit it thus to remain there, it may, as a general rule, be safely paid to the bank by the debtor, provided he has not notice that the bank in fact has no authority to receive the money. Alley v. Rogers, 19 Gratt. 366.
Payment at Branch Bank. — The provision in the Code of Virginia, that, “though a bank had a branch * * * all its notes should be received in payment of debts to the bank, whether contracted at the parent bank, or a branch,” applied only while the debts remained due to the bank. When a negotiable promissory note discounted by the Farmers’ Bank of Virginia had been assigned by the bank to trustees, for the payment of antecedent debts, and the maker, having notice of the assignment, after-wards acquired notes of the bank, he could not, with these, pay his debt so assigned, or set them off against it. Farmers’ Bank v. Willis, 7 W. Va. 31.
Where notes were discounted at the Bank of the Old Dominion in Alexandria, payment of these notes made to a branch of that bank, in another town, in confederate money, under an act of assembly authorizing it, the branch not having the notes at the time, was held not to constitute a payment of the notes; though after the war the' bank took possession of all the assets of said branch, including the funds so paid. McVeigh v. Bank of Old Dominion, 26 Gratt. 785.
Payment to Mother Bank. — The mother bank has a right to receive the payment of any debt due the branch, even though contracted with a branch bank, as a negotiable note discounted by a branch bank ; and the mother bank may authorize one of its own officers to receive payment of such a note or confirm the receipt of payment of such a note, if it had previously been done by such officer without express authority. Smith v. Lawson, 18 W. Va. 212.
Payment to Assignor of an Instrument Transferable by Delivery Invalid. — By the indorsement, or transfer by delivery when payable to bearer, of a negotiable note, though after maturity the legal title passes without notice to the maker, and therefore a payment to the assignor or transferrer, who no longer holds the legal title, is not a good payment, though the party making the paymenthad no notice of the assignment or transfer. Smith v. Lawson, 18 W. Va. 212.
Payment of an Overdue Note to Party Who Held It at Maturity. — Payment of an overdue note to one who held it at maturity, but who had transferred it after maturity, and before such payment, of which transfer the one making the payment had no notice, was held not to discharge the maker ; and it made no difference that a written assignment was made separate from the note, it having been previously indorsed by the payee, and being, therefore, transferable by delivery. Smith v. Lawson, 18 W. Va. 212.
Right of Bank to Set Off Deposits. — A joint note, signed by several parties, for $6,000, was presented to a bank for discount by the principal in the note. The bank discounted it for $4,000 only, and the cashier indorsed it “discounted for $4,000 only, and should be so read.” This was done without the knowledge of the sureties in the note. It was held that they were notwithstanding bound, the transaction being equivalent to a'discounting of the note for $6,000 and a repayment by the principal of $2,000 thereon ; and that its not being paid at maturity, general deposits made by the principal, after its maturity, could not without his directions so to apply them, be regarded as payments on this note. Merchants’, etc., Bk. v. Evans, 9 W. Va. 373.
Bank Not Required to Appropriate Deposits to Payment. — when a note of which the bank is the holder becomes due and payable and the bank has not sufficient funds to the credit of the maker to satisfy the note, it is not required to appropriate the deposit to the payment of the note, nor in such case is it required to appropriate subsequent deposits to its payment. Bacon v. Bacon, 94 Va. 686, 27 S. E. Rep. 576.
Deposit in Bank before Maturity Does Not Amount to Payment. — Defendant offered to pay his note to the plaintiff, but at the plaintiff’s request the note was renewed, upon the understanding that it should be deposited in bank for collection. Subsequently the defendant deposited in his own name the amount of the note in the bank, which was burned, with its contents, before the note had matured or been deposited. It was held, that the defendant was liable for the amount of the note. Moses v. Trice, 21 Gratt. 556.
3. IN WHAT CURRENCY PAYMENT MAY BE MADE.
Notes Made with Reference to Confederate Money as a Standard of Value. — During the late war, a firm being indebted to a bank by note, accepted the offer of a third party to take up their note at the bank. This party took up the note paying confederate money, which was the only money having any circulation in Virginia at that time. The firm executed their note to this party without mentioning the currency in which such note was to be paid. It was held that the note was payable in confederate money, as in the absence of stipulation to the contrary, it would be presumed that the parties con *309 tracteü with reference to it. Ashby v. Porter, 26 Gratt. 455.
Upon a sale of land at public auction during the late war, nothing was said at the time of the sale as to the kind of money which should be paid for the land. The land was sold for its value estimated in confederate money as of that date, and the purchaser made a cash payment in that money, and gave his negotiable notes payable in one and two years, with a’ deed of trust to secure them. The vendor received payment of the first note when it became due, in the same money and sold the second note to a third party, who paid for it in the same currency. When this second note became due the maker tendered payment in confederate notes, which was refused. The sale was held to have been made with reference to confederate notes as a standard of value, and the purchaser of the note though a holder for value took it as it was held by the payee. Lohman v. Crouch, 19 Gratt. 331.
Promise to Pay a Sound Money Note in Depreciated Currency No Discharge. — But a perfectly valid debt evidenced by a negotiable note, and payable in sound currency, cannot be discharged by a mere promise without consideration on either side to pay in confederate currency; especially is this true, where the promise has not been performed and no attempt has been made to perform it. In such case an action may be brought on the note though it is in possession of the maker, it not having been surrendered with an intention to discharge it. Lewis v, Davisson, 29 Gratt. 216.
Acceptance of Payments in Depreciated Currency Does Not Amount to Ratification. — Upon a sale of land the purchaser paid one-fourth cash and gave his notes for the balance, payable in one, two and three years. Nothing was said at the time as to the currency in which the notes were to be paid; but the vendor accepted payment of the first two notes in confederate currency. The vendor was held not bound to take confederate currency for the last note; but was entitled to be paid in the legal money of the country. Omohundro v. Crump, 18 Gratt. 703.
Paper in Bank during War — Nonresident Owner. — As to notes deposited in bank for collection during the war, when confederate money was the only currency, they might have been properly paid in such money, at least without notice that other money was demanded. But in the case of a nonresident owner, the bank had no authority to receive payment of the note in depreciated currency, and such payment was void and the notes still remained due. Alley v. Rogers, 19 Gratt. 366.
4. EFFECT OF PAYMENT BY PARTICULAR PARTIES.
Payment by Parties Primarily Bound. — When one who is primarily bound for the payment of a note takes it up, it is a payment and extinguishment of the note, no matter what his intention may have been; but if a note be taken up by a stranger who is neither a party to the paper, nor in any way bound for its payment, it becomes a question of fact, to be determined upon the evidence in the case, whether the transaction constitutes a payment or a purchase. Cussen v. Brandt, 97 Va. 1, 32 S. E. Rep. 791.
Payment by Indorser. — Payment of a dishonored note by an indorser, does not extinguish its negotiability as to him and all parties liable thereon to him. But it discharges the liability of subsequent indorsers, whose liability will not be revived by his putting the note in circulation again. Davis v. Miller, 14 Gratt. 1; Cottrell v. Watkins, 89 Va. 801, 17 S. E. Rep. 328; Smith v. Lawson, 18 W. Va. 212.
Payment after Dishonor — And payment by the maker and indorser of a negotiable note, after it has been protested for nonpayment, taken up by the payee and transferred by him to his creditor as collateral security for a larger debt, such payment being made without knowledge of the transfer, is not a good defence to an action brought on the note by the transferee and holder against the maker. Davis v. Miller, 14 Gratt. 1.
Payment at Bank by Stranger — Payment of a note at a bank is either a sale or a discharge thereof. It cannot be a sale without the bank’s consent. Where the note is paid by a stranger bound for its payment at maturity, the note is thereby actually discharged, and cannot be reissued by him. so as to bind the parties thereto or to keep alive a trust deed executed to secure it, except with the knowledge and consent of those parties. Citizens’ Bk. v. Lay, 80 Va. 436.
5. TENDER OF PAYMENT. — Where an offer of payment of a note is made on condition that the holder will surrender collateral security and other liabilities, the offer is not a proper tender where the party making it has no right to make such a demand for the collateral, and. therefore, the tender does not stop interest on the note. Fidelity, etc.. Co. v. Engleby (Va. 1901), 37 S. E. Rep. 957.
6- DISCHARGE OF PARTIES.
Accommodation Maker.--The maker of an accommodation note is not discharged by the omission of the holder to enforce the collection thereof, until the payee, for whose accommodation the note was made, becomes insolvent, though the holder had looked to the payee for payment. Hansbrough v. Gray, 3 Gratt. 356.
Extension Releases Indorser unless He Has Waived His Rights. — Where the holder of a note extends time to the principal by a binding agreement without the consent of the indorser, however immaterial the extension may be, and even if it is to the advantage of the indorser, he is nevertheless discharged from liability on his indorsement unless he has waived his rights, because by the extension, the holder impairs the remedy which the indorser would have over against the principal to save himself from loss. Dey v. Martin, 78 Va. 1; Merchants’, etc., Bank v. Evans. 9 W. Va. 373. These cases overrule the case of Bennett v. Maule, Gilmer 305.
Suspension Hust Be Binding and for a Definite Time. —Butin order to discharge a surety by indulging the principal, it must be shown amongst other things, that there was an agreement or promise, upon valid consideration, to indulge the principal for some definite time, or at least for a time not altogether indefinite. The partial payment by the principal without an agreement to extend as to the balance is not suificient to discharge the surety, though the principal expected that in consequence of the payment he would not be immediately pressed for the balance, and in fact, he was not so pressed. Bacon v. Bacon, 94 Va. 686, 27 S. E. Rep. 576; Merchants’, etc., Bk. v. Evans. 9 W. Va. 373; Dey v. Martin, 78 Va. 1.
Extension of Time to Second Indorser Does Not Affect First.- — An indorser of anote is not released from liability by an agreement of the bolder with a subsequent indorser to extend the time of payment. Wright v. Independence Nat. Bk., 96 Va. 728, 32 S. E. Rep. 459.
*310 Agreement to Extend upon Condition That the indorser Consents. — Where the holder of a note agrees to an extension of the time of the payment on condition that the indorser consents to the extension, the indorser is not thereby released. Winfree v. Bank, 97 Va. 83, 33 S. E. Rep. 375.
Extension of Time to Maker of Notes Delivered as Collateral. — where the negotiable note of two or more makers upon which there is an accommodation indorser, is delivered as collateral for the note of one of the makers, and both notes are given to secure the same debt, delivered at the same time, and as parts of the same transaction, all payments made on either note should go to the credit of both, and the extension of the time to the principal of the collateral note, by a binding agreement with the creditor, without the consent of the indorser, releases the indorser. State Sav. Bk. v. Baker, 93 Va. 510, 25 S. E. Rep. 550; Dey v. Martin, 78 Va. 1.
What Does Not Amount to a Discharge of Indorser.— After a holder of a note had delivered it to a bank as collateral security for a debt, he gave a plaintiff an order entitling him to the note when the debt was paid. Pending an action by the bank on the note the debt was paid, and the action was dismissed, and subsequently the note was delivered to the plaintiff pursuant to the said order. It was held, that the dismissal was not a retraxit precluding the plaintiff, who was not a party, from subsequently recovering from an indorser who was a party, and acquiesced in the dismissal; nor did the dismissal discharge the indorser because it extended time to the maker. Tate v. Bank, 96 Va. 765, 32 S. E. Rep. 476.
7. EQUITIES ARISING UPON PAYMENT BY PARTIES SECONDARILY LIABLE.
a. Contribution.
Contribution between Several Accommodation Indorsers. — Where several indorsements are made for the accommodation of the-drawer, one indorser has no right to contribution against the other indorsers unless there is a stipulation to that effect. Farmers’ Bank v. Vanmeter, 4 Rand. 553.
But when successive indorsers.are indorsed for the accommodation of the maker, though at different times and without mutual agreement, they are co-sureties and in equity liable to contribution. Stovall v. Border Grange Bank, 78 Va. 188.
Contribution between Cosureties. — A joint and several single bill was executed in the country by a principal and seven sureties, to enable the principal to borrow money from a bank. The principal upon coming to town and finding that the rules of the bank required a town surety, made application to a citizen to beccime such surety. This citizen having adopted a rule not to put his name on bank paper for any purpose, but being willing to accommodate the principal, applied to a friend to become bound on the paper, with an assurance that if the principal did not pay it off when it became due, he would pay it off for him. The friend, upon this assurance, put his name on the paper as co-obligor with the other sureties, without their knowledge. Upon the bill becoming due the principal made default in the payment, and it was paid off by the citizen. Upon a suit in equity brought by this citizen for contribution against the other sureties, it was held that this citizen was to be considered one of the eight sureties, having become such in the name of his friend, and that he was entitled to contribution from all except that friend. Stout v. Vause, 1 Rob. 169.
Nearly a month after the protest of a negotiable note on which two makers were bound, one of the makers for the purpose of paying the note, executed his two negotiable notes, dated on the day of their execution, and with one exception indorsed by new indorsers, and had the same discounted and the proceeds placed to his personal credit in bank. Out of the money thus obtained he paid the original note by his individual check, and the note was marked paid and delivered to him, and he assigned the same to an indorser on one of the new notes. This was held not a renewal of the first note, but an independent transaction, and the assignee of that note was entitled to demand of the other joint maker of it the payment of one-half thereof for the sole benefit of such assignee, and to the exclusion of the other indorsers of the new notes. Conrad v. Smith, 91 Va. 292, 21 S. E. Rep. 501.
Payment by Trustee after Claim Is Barred by Statute. — Where the trustee of one of two joint makers of notes and due bills pays the indebtedness after it had become barred by the statute of limitations, he cannot enforce contribution by the estate of the other joint maker. Turner v. Thom, 89 Va. 745, 17 S. E. Rep. 323.
b. Subrogation.
Indorser Paying a Note Subrogated to Holder’s Rights. — An accommodation indorser paying off a judgment against himself and the maker of a protested negotiable note is entitled to be subrogated to all the rights of the holder! He is under no obligation to appeal from the judgment, as he could not know that relief could be thus obtained. The law imposes no such unreasonable burden upon a surety. Bank of Old Dominion v. Allen, 76 Va. 200.
Indorser Stands in Holder’s Shoes. — And when an indorser pays off the debt, evidenced by the instrument, he has a right to proceed at once against the prior parties to the instrument to collect what he has so paid, and to enforce all the equities of the holder. But if the holder has suspended his own right to proceed, the indorser, who stands in his shoes cannot proceed, because of such suspension; the rights of the indorser being thus impaired by the holder, it operates as an exoneration of the indorser. Shields v. Reynolds, 9 W. Va. 483.
Surety Subrogated to Principal’s Rights. — In an action upon a promissory note, a second indorser having given an injunction bond and his surety in that bond having been compelled to pay the note, this surety was held to be subrogated to the right of the second indorser and was allowed to recover from the first indorser. Chrisman v. Harman, 29 Gratt. 494.
Surety May Enforce principal’s Liens. — And a surety whose principal is dead, may enforce for his exoneration any lien of the creditor on the estate of his principal, and may bring any suit in equity which the creditor can bring, for a settlement of the administration account on the estate of the deceased, and for the administration of the assets, whether legal or equitable; but the creditor must be a party that he may receive the money when it is recovered. Stephenson v. Taverners, 9 Gratt. 399.
And a surety, whose principal is dead, may file a bill guia timet against the creditor and the executor of the debtor, to compel the latter to pay the debt so as to exonerate the surety from the responsibility. Stephenson v. Taverners, 9 Gratt. 399.
Judgment against Maker Kept Alive for Indorser’s Benefit. — At different terms separate judgments were had against the maker and indorser of a negotiable note. On the judgment against the indorser, a judgment was obtained in the state of Illinois, *311 which judgment was satisfied by the indorser. This satisfaction of the Illinois judgment did not extinguish the lien of the judgment against the maker, and as soon as the indorser paid it, he and his assignees were entitled to be subrogated to the lien of that judgment. Bank of Old Dominion v. Allen, 76 Va. 200.
Subrogation Cannot Create a Right Not Already Existing. — Where the first indorser on a note is indemnified against loss thereon by a deed of trust, but becomes discharged from his liability on the note by reason of want of notice of the dishonor of it, the holder cannot by substitution to his rights obtain the benefit of the property conveyed in trust to indemnify the indorser, inasmuch as the indorser has not been injured. Bank of Virginia v. Boisseau, 12 Leigh 387.
Where an accommodation indorser, who is indemnified by the maker of the note by a deed of trust, is discharged from his liability on the note by the laches of the holder, sucb holder can be subrogated only to the rights of the indorser; and the indorser having sustained no damage, and, therefore, having no claim on the trust fund, the holder can have none. Hopewell v. Cumberland Bank, 10 Leigh 206.
Breach of Covenant by Haker — Right of Indorsers against His Heirs. — The maker of a note conveyed land to trustees as security for the note, and to indemnify his accommodation indorsers thereon, and therein covenanted, for himself and his heirs, with the trustees and the holder of the note, that he was possessed of the absolute estate in the land, and that he would warrant and defend the same against all persons. The land being afterwards sold under a prior deed of trust after the grantee’s death, it vras held that the indorsers having paid the note were entitled to come into equity for satisfaction out of the real assets in the hands of the heirs, to the extent of the damages accruing from such breach of covenant. Haffey v. Birchetts, 11 Leigh 83.
IX. ACTIONS.
1. WHO MAY BRING ACTION.
Beneficial Owner of Instrument Transferrable by Delivery. — The beneficial owner of a negotiable instrument, which is payable to bearer or indorsed in blank, may institute a suit thereon in any court of law, in the name of any one who will allow his name to be used for that purpose; and where the defendant has no legal or equitable defence to the instrument as against the real owner thereof, he cannot be permitted to show that the nominal plaintiff, in whose name the suit is brought, is not the real party in interest. Bank of Spencer v. Simmons, 43 W. Va. 79, 27 S. E. Rep. 299.
Holder under a Special Indorsement Only One Who Can Sue. — But if a negotiable instrument, not payable to bearer, be endorsed specially to a particular person, while such person remains the holder and legal owner, the right of action is in him alone, and none but him or his personal representative can sue. Spence v. Robinson, 35 W. Va. 313. 13 S. E. Rep. 1004.
Holder of Instrument Indorsed in Blank. — And an action on a negotiable note indorsed in blank may be maintained in the name of the holder-, who is not the owner, by the owner's consent. Smith v. Lawson, 18 W. Va. 212.
Administrator of an Accommodation Indorser. — And the administrator of an accommodation indorser of a negotiable note protested for nonpayment, who takes up the note after the death of his intestate, may maintain either assumpsit on debt in his own name against the maker of the note, for the amount in value which he has paid for the note. Burton v. Slaughter, 26 Gratt. 914.
Action by Assignee of a NonnegotiabSe Instrument.— The assignee of a note or draft does not acquire the legal title to the debt, but an equitable right only, which by virtue of the statute he may assert at law in his own name, or in that of the original pa' ee, for his benefit; and it is not necessary, that the record should show, that the suit is for the benefit of the assignee. Clarke v. Hogeman, 13 W. Va. 718. See monographic note on “Assignments” appended, to Ragsdale v. Hagy, 9 Gratt. 409.
indorsee against Remote Indorser. — And in Virginia, an indorsee of a promissory note cannot maintain an action against a remote indorser for want of privity. Mandeville v. Riddle, 1 Cranch (U. S.) 290 (1803); Dunlop v. Harris, 5 Call 16.
Holders of Promissory Note against Indorsers.— Though, in general, indebitatus assumpsit for money lent, or money paid and expended, or money had and received, lies for the holders of a promissory note against an indorser, and the indorsement is prima facie evidence to support those money counts ; yet if it be found by special verdict, that the defendant indorsed the note, and the holders discounted it, for accommodation of the maker, and that the defendant received no part of the proceeds of the note so discounted, in such case the holders cannot recover against the defendant on the money counts. Bank of the U. S. v. Jackson, 9 Leigh 221.
Action by Owner of Note Which Has Been Destroyed. —An action at law can be maintained upon a note that has been destroyed. The evidence should, however, satisfy the jury beyond any reasonable doubt, that the note has been destroyed. Moses v. Trice, 21 Gratt. 556.
Action by Owner of Lost Instrument Transferrable by Delivery. — But an action at law cannot be maintained upon a lost negotiable note transferrable by delivery, whether due, or not at the time of the loss. The sole remedy of the owner is in a court of chancery, which can adjust the equities of the parties, and which can require suitable indemnity as a condition of relief. Moses v. Trice, 21 Gratt. 556.
But if at the time of the trial a recovery upon the lost note would be barred by the statute of limitations, the action may be maintained. Moses v. Trice, 21 Gratt. 556.
Attachment. — Upon a settlement of an account, the creditor took a negotiable note from the debtor, for the amount found due. The note was discounted at the bank for the creditor. While the note was in the bank and before it became due, the debtor absconded. It was held, that the creditor could not sue out an attachment against the debtor for the debt due upon the account. McCluny v. Jackson. 6 Gratt. 98.
But an attachment in chancery lies to secure a debt payable at a subsequent day, or to relieve the indorser of a note which has not become payable at the date of such attachment, which binds the property in the hands of the garnishee from the time of its service, so as to inhibit the absent defendant from making a transfer thereof, even for the benefit of a creditor whose claim is already due and payable. Williamson v. Bowie. 6 Munf. 176.
Payee of an Order Drawn on a Fund. — An order drawn on a particular fund or debt, and for the whole thereof, though not accepted by the drawer, *312 is a good equitable assignment of the fund or debt, and it will be recognized by a court of law to the extent of permitting the payee of such an order to institute a suit at law in the name of the drawer against the drawee. First Nat. Bank of Wellsburg v. Kimberlands, 16 W. Va. 555. On this subject, see generally, monographic note on “Assignments” appended to Ragsdale v. Hagy, 9 Gratt. 409.
Action by Holder of Accommodation Paper. — A promissory note negotiable at a bank was made and indorsed 'for the sole purpose of obtaining accommodation for the maker. This note was left with a second indorser to be lodged in bank for discount. This second indorser fraudulently put the note into circulation to raise money thereon for his own use. Itwas held', that the third indorser, knowing nothing of such fraud might'cause the note to be protested as to the maker and prior indorser, pay it himself, and thereupon maintain’his action against the maker and first indorser} notwithstanding the fact that no valuable consideration passed or was contracted for, between him and the second indorser, but he made the indorsement merely for the motive of enabling such second indorser to get the note discounted at the bank. Robertson v. Williams, 5 Munf. 381.
Payee in Representative Capacity — Authority to Sue. —The payee of a note, made’for the benefit of a company for which he was treasurer, transferred it to another. An action was brought in the name of the former for the benefit of the latter, and on the trial the payee testified that he did not authorize the suit to be brought in his name. This was not sufficient to prevent a recovery by the assignee in his action. Kimmins v. Wilson, 8 W. Va. 584.
2. AGAINST WHOM ACTION MAY BE BROUGHT.
Action against Acceptor by the Indorsee. — At common law an action of debt will not lie for the indorsee against the acceptor of a bill of exchange. Smith v. Segar, 3 H. & M. 394; Wilson v. Crowdhill, 2 Munf. 302. But under the statute (Code 1860, ch. 144, sec. 10), which provides, that an action of’debt may be maintained on a note or writing by which there is a promise to pay money, if the same be signed by the party who is charged thereby, or his agent, an action of debt will lie in the name of the indorsee on a bill of exchange again st the acceptor. Hollingsworth v. Milton, 8 Leigh 50; Regnault v. Hunter, 4 W. Va. 257.
Action against Acceptor by the Drawer. — An action of debt will lie for the drawer of a bill of exchange, who is also the payee, against the acceptor at common law. Regnault v. Hunter, 4 W. Va. 257.
Joint Action against Makers and Indorsers of a Foreign Note. — The makers and indorsers of a promissory note executed in another state, under the law of which it is negotiable, are not jointly liable to a holder who discounts it in Virginia, and such holder cannot, therefore, sue the maker and indorsers jointly. Corbin v. Planters’ Nat. Bank, 87 Va. 661, 13 S. E. Rep. 98, 24 Am. St. Rep. 673.
Against a Remote Party. — Where a note not negotiable, was indorsed by several persons in succession, the last assignee could only sue the maker’ and his immediate assignor, and not a remote assignor, prior to the Act of the Assembly of 1807. Caton v. Lenox, 5 Rand. 31; Dunlop v. Harris, 5 Call 16.
But under the provisions of § 2861 of the Va. Code, an action may be maintained by an assignee by a nonnegotiable note against a remote assignor thereof to recover moneyupon the contract implied by the assignment that he will repay the consideration received by him for the note, if by the use of due diligence it cannot be made out of the maker. Hence, an assignee may proceed by motion against the remote assignor for a like recovery under the very terms of § 3211 of the Code. Long v. Pence, 93 Va. 584, 25 S. E. Rep. 593;, Drane v. Scholfield, 6 Leigh 386.
Against One of Two Partners. — A promissory note was executed by one of two partners in the firm name. One of the partners was an infant at the time of the execution of the note. An action brought against the adult partner only was held badly brought, as the act of the infant was voidable only, and was valid until disaffirmed. Wamsley v. Lindenberger, 2 Rand. 478.
Action of Detinue against Bona Fide Holder of Treasury Notes. — treasury note is, by the act of congress transferrable by delivery and assignment only. Myers v. Friend, 1 Rand. 12. In this case a treasury note indorsed in blank, was stolen from the mail, and subsequently passed into the hands of a bona fide purchaser for value. It was held, that the note could be recovered in an action of detinue, brought by the real owner against such bona fide purchaser.
Joint Instrument Seated as to One Party — Joint Action Proper. — An action of debt was brought by the administrator of the payee upon an instrument in these words: “On demand I promise to pay to David Keller, the just and full sum of '$200, for value received, as witness my hand and seal.
“Thomas McHtjeeman. [Seal.]
“Security: — David M. Riere.”
This instrument was held to be a joint and several promise as to both defendants, and prima facie the instrument was on its face as to the defendant McHuffman a single bill obligatory, and as to the defendant Riffe his promissory note, and a joint action was proper in such case. Keller v. McHuffman, 15 W. Va. 64.
Joint Action against Drawer and Indorsers of a Specialty. — A single bill, under seal, is not a note, but a specialtj'; and therefore the drawer and indorsers of such a bill, made “negotiable and payable” ata certain place, cannot be sued jointly thereon. Mann v. Sutton, 4 Rand. 253.
3. THE DECLARATION.
Necessary Averments — Generally.—In an action on a negotiable note against the indorser, the declaration must allege, that the note was duly presented for payment at the place where itwas payable, at the time when it became due and payable, and that it was not paid, and that thereupon the said note was duly protested for nonpayment, of all of which the indorser had prompt notice. Bank v. Hysell, 22 W. Va. 142. In this case a declaration which simply stated, “that the note was presented at the close of banking hours to the cashier of the bank where it was payable, for payment which was refused, and thereupon it was duly protested for nonpayment, and notice thereof was given said indorser,”, was held fatally defective, as it did not state when the note was presented for payment or where it was presented.
Must Aver the Place of Payment. — A negotiable note payable at a particular' office or bank, is a very different instrument from a mere promissory note payable generally, even when between the same parties and for the same amount. The place of pajunent regulates the rate of interest and sometimes determines ¿he character of the instrument *313 as to its negotiability. These are matters of importance and make the place of payment a material part of the description of the note. It is therefore essential that the place of payment fixed by the note should be set out in the declaration on the note; and if this be not done, and the admission of the note in evidence is objected to, the court should exclude it on account of the variance between such note and the one described in the declaration. Damarin v. Young, 27 W. Va. 436; Bank v. Showacre. 26 W. Va. 48.
And where a note on its face is dated at a specified place, and is drawn in such form as to' make it a negotiable instrument at such place, the maker, when sued on such note by an innocent holder for value, will not be allowed to aver or prove that such note was not in fact made at the place at which it purports to have been made. Bank v. Showacre, 26 W. Va. 48.
Plañntiff first Allege That He Is the Payee or Holder. —And in an action of debt on a negotiable note the plaintiff must allege in his declaration, that he is the payee or indorsee or holder of the note. If he fails to make such allegation, though he alleges the drawing of the note and its indorsement by the payee in blank, the declaration is f atally defective on general demurrer. Bank v. Hysell, 22 W. Va. 142.
Necessity for Averment of Presentment. — A count in the declaration on a protested bill of exchange which did not aver presentment and demand of payment, was held bad on demurrer, and the overruling of such demurrer was held error. But in this case it was held that the appellate court would not reverse the judgment for such error, as the presentation and demand of payment was sufficiently alleged in other counts, and no injury could have resulted to the defendant therefrom. Early v. Preston. 1 P. & H. 228.
Averment of Time of Presentment Stated under Videlicet. — A declaration in an action of assumpsit on a bill of exchange, by the holder against an indorser, alleged that “when the bill became due and payable according to the tenor and effect thereof, to wit, on the 27th of December 1816, on the bank of Marietta in Ohio'' it was presented for payment. and dishonored. The 27th of December was not the third, but the fourth day after the time appointed for the payment of the bill. As it was' averred that the bill was presented when it became due according to its tenor and effect, and the date of the presentment was stated under a videlicet, the date so stated was held not material, and the plaintiff might prove presentment on the third day of grace. Jackson v. Henderson, 3 Leigh 196.
Averment of Nonpayment — And in an action of debt or assumpsit upon a promissory note it is indispensable to aver nonpayment, and that to every parti connected with the note entitled to receive payment, whether payee, assignee, decedent, or representative, or survivors of decedent, and each one of the parties jointly entitled to receive payment. Smoot v. McGraw (W. Va. 1900), 35 S. E. Rep. 914.
Averments of Demand and Notice in Case of Accom= modatlon Paper. — But where a declaration upon a note is special, and avers demand and notice to the indorser, the plaintiff may prove at the trial that the note was made and discounted for the accommodation of the indorser, and that he received the proceeds. The plaintiff may recover in the action, though no notice, or an insufficient notice, was given j to the indorser. McVeigh v. Bank of Old Dominion, 26 Gratt. 785.
Averment of Time of Placing a Note for Collection.— In an action against a bank for negligence in failing to protest a note placed with for its collection, it is sufficient if the declaration avers that it was so placed with the bank before its maturity, though the date of placing is not specified. Roanoke Bank v. Hambrick, 82 Va. 135.
Amount of Cost of Protest. — A declaration in debt, under the law of Virginia, upon a protested bill of exchange for the principal, interest, damages and costs of protest, must aver the amount of those costs of protest. Wilson v. Lenox, 1 Cranch (U. S.) 194 (1803).
Declaration Must Demand Currency for Which Instrument Is Given. — in an action of debt upon a protested bill of exchange, drawn for sterling money, the declaration was for the current money value of the sum for which the bill was drawn. The declaration should have been for the sterling money, and judgment being for the sum so demanded, was reversed on a writ of error. Scott v. Call, 1 Wash. 115.
And thus, where a declaration stated that a bill was drawn for current money, without naming the sum of current money, it was held that the plaintiff could only recover current money. Proudfit v. Murray. 1 Call 394.
Interest Should Be Demanded in Declaration.— If a declaration upon a promissory note does not demand interest, and the defendant waives his plea, the court cannot give judgment for interest. Brooke v. Gordon, 2 Call 213; Hubbard v. Blow, 4 Call 224.
Where a bill of exchange had fallen due and been protested before the act allowing 3 per cent, damages, and interest upon the costs of protest, went into operation, such damages and interest are not recovered in action upon a'bill. Friend v. Wilkinson, 9 Gratt. 31.
Omission to State That the Bill Is Payable with Interest. — in Harper v. Smith, 6 Munf. 389, it was held that a judgment entered upon nil dicit in action of debt on a penal bill, ought not to be reversed on the ground that the declaration though describing the bill correctly as to the principal, penalty, and date, omitted to mention that the debt was payable “with interest from a day prior to the date’'; and that the judgment, in conformity with the penal bill, was entered for the penalty, to be discharged by the principal, with such interest, and costs.
Not Necessary to Aver Consideration —Under the Virginia statute, an action of debt may be brought upon a note in writing; and in such action it need not be averred or proved that there was any consideration for the note. The note itself imports consideration, as does a bond: the only difference being that in case of a bond the consideration cannot be inquired into, but in the case of a note it may. Peasley v. Boatwright, 2 Leigh 195; Snead v. Coleman, 7 Gratt. 300; Crawford v. Daigh, 2 Va. Cas. 521; Cheuvront v. Bee, 44 W. Va. 103, 28 S. E. Rep. 751; Jackson v. Jackson, 10 Leigh 452.
Declaration Must Negative Payment to Maker as Well as to Indorsee. — In an action by an indorsee, of a note against the maker, the declaration, failing to negative payment to the maker, as well as to the indorsee, is insufficient. Norvell v. Hudgins, 4 Munf. 496.
Declaration Must Lay an Express Promise. — in an action on the case upon a note of hand, there must be an express assumpsit laid in the declaration; *314 merely reciting the note of hand in haec verba is not sufficient. Cooke v. Simms, 2 Call 39.
Effect of Averment That a Nonnegotiable Note Was “Indorsed.” — in a declaration upon a nonnegotiable note, an averment that a person “indorsed” it, instead of the word “assigned” it, is equivalent to the word “assigned” on demurrer. Smoot v. McGraw (W. Va.), 35 S. E. Rep. 914.
Variance between Declaration and Proof. — A declaration on a negotiable note, stated the indorsement and delivery as at the time of the making; and the proof was that the delivery was after the note fell due. This was held no variance; and if it was, could only be taken advantage of at the trial by a motion to exclude the evidence, or to instruct the jury to disregard it. Davis v. Miller, 14 Gratt. 1.
And so where an action of assumpsit was brought for goods sold and delivered, the declaration filed contained only the common counts. The only count in the declaration to which the evidence applied, was that for goods sold and delivered. It was shown that the goods were absolutely paid for by a check. The demand upon the account being thereby extinguished there was no count in the declaration upon which the plaintiff could recover. Blair v. Wilson, 28 Gratt. 165.
Variance in Descriptions. — A count in a declaration on a promissory note which alleged that the maker, by his promissory note, promised to pay the plaintiff $6,000 (meaning, and intending thereby $4,000), by reason whereof he became liable to pay $4,000, was held bad on general demurrer. Merchants’, etc., Bank v. Evans, 9 W. Va. 373.
Description of Paper Signed with Scroll as Unsealed, Is Correct. — An action of debt was brought upon an instrument, which was in form a promissory note for money, and which concluded “witness the hands” of the parties, but no actual seal was attached to the instrument, scrolls being placed opposite to the signatures and used by way of seals. This instrument was held rightly described in the declaration as a promissory note. Peasley v. Boatwright, 2 Leigh 195.
Error in Declaration Cured by Statute. — But if a declaration describe a note of several parties as several, while the note is joint and several, and no objection is made on account of the variance before judgment, though it be rendered on-demurrer to evidence, it is unavailing to reverse the judgment, by reason of sec. 3, ch. 134 of the Code of W. Va. Long v. Campbell, 37 W. Va. 665, 17 S. E. Rep. 197 (1893).
And if the demand in the declaration in an action of debt be for less than the right of recovery shown by the note described in it, it would be disregarded on demurrer by reason of sec. 29, ch. 125 of the Code, and as the variance does not aggrieve the defendant, but is to his benefit; and also, in the absence of a demurrer, it is cured after judgment by sec. 3, ch. 134 of the Code of W. Va. Long v. Campbell, 37 W. Va. 665, 17 S. E. Rep. 197 (1893).
Declaration for a Sterling Debt. — A sterling debt may be sued for without laying the value in current money; if it is laid, it is merely surplusage, and will not vitiate; but in such case, the damages should be laid in- sterling money, the verdict and judgment should be in sterling money, and the court is to fix the rate of exchange. Skipwith v. Baird, 2 Wash. 165.
Omission of Sum for Which Note Was Given. — In an action against the makers and indorsers bf a protested negotiable note, the accidental omission of the sum for which the note was given, in describing it in the declaration, was held no ground of demurrer, where the sum sufficiently appeared from other parts of the declaration. Archer v. Ward, 9 Gratt. 622.
Conformity of Declaration with the Writ. — In an action of a negotiable note it was held no error to demand interest in the declaration which was not claimed in the writ; but it was held error to claim in the declaration, costs of protest, when those costs were not demanded in the writ. Hatcher v. Lewis, 4 Rand. 152.
Conclusion of Counts. — Where an action of debt is based upon a single bill and simple contract for money lent, money received, or money paid, and the aggregate of all the counts is demanded, the usual conclusion need not be adopted to each count, and if the general conclusion of the declaration is in proper form it will be considered as applying to each count, as well as to all collectively. Somerville v. Grim, 17 W. Va. 803. Upon this subject, see generally monographic note on “Action of Debt” appended to Davis v. Mead, 13 Gratt. 118.
Profert Not Necessary. — In an action of debt on a bill of exchange, it is not necessary for the plaintiff to make profert of the bill in the declaration. Terrell v. Atkinson, 2 Wash. 143.
Demurrer to Declaration in Covenant on a Note.— Demurrer lies to a declaration in covenant on a trust deed executed merely as a collateral security for the payment of a promissory note. Such trust deed does not raise such note to the.dignity of a specialty, and the note is barred by a lapse of five years before suit brought. Wolf v. Violett, 78 Va. 57.
Counts Not Included in Bills of Exception Presumed to Be Proved. — In an action of assumpsit there were two money counts, and one upon an inland bill of exchange. The court gave an improper instruction with regard to the bill of exchange, but the bill of exceptions did not state that there was any other evidence.’ It was held, that it would be presumed after verdict, that the money counts were proved. Willock v. Riddle, 5 Call 358.
4. THE PLEAS.
Proof of Execution Not Necessary unless Put in Issue by a Sworn Plea —In an action of debt at common law upon negotiable paper the plea nil debet put in issue the execution of the instrument and all the transfers thereof. But in Virginia, by statute (Va. Code, § 3279), where the declaration avers the execution and transfer of the paper no proof thereof is required unless such plea is supported by an affidavit. Clason v. Parrish, 93 Va. 24, 24 S. E. Rep. 471.
Object of Statute Requiring Sworn Plea. — The ob j ect of this statute is to dispense with the proof of handwriting in certain cases, and it does not apply to a transfer of paper by mere delivery. Upon an averment of such transfer by a wife, proof of transfer by the husband without proof of his agency is insufficient, even on demurrer to evidence to maintain the issue on the part of the plaintiff tendered by the plea of nil debet. Clason v. Parrish, 93 Va. 24, 24 S. E. Rep. 471.
Genuineness Cannot Be Questioned unless Denied under Oath. — Where the declaration avers that the indorser indorsed a note by subscribing his name on the back thereon, and he not having filed an affidavit with his plea according to the statute, he will not be permitted to question the genuineness of the note, or to show that it was altered after it was indorsed by him. Archer v. Ward, 9 Gratt. 622.
*315 Thus, in an action against the indorsers of a negotiable note, they pleaded nil debet, and filed an affidavit that at the time the note was indorsed and when it was protested it was not stamped, as required by an act of congress, and that it had been since altered by the collector of the United States revenue putting a stamp on it. As this affidavit did not deny their signatures, it was held not necessary for the plaintiff to offer proof of the signature before introducing the note. Crews v. Farmers' Bank, 31 Gratt. 348.
The Affidavit Required. — in Virginia the affidavit which the defendant is required to make is that the said instrument was not made by him as charged in the declaration, and it is not sufficient to make oath that the name subscribed is not in his handwriting, for, if so, a party who had caused the instrufo be signed by his name and in his presence by a third person, might raise an entirely immaterial question. Archer v. Ward, 9 Gratt. 622.
Burden of Proof Shifts after Filing of Sworn Plea,— Where the answer of the maker of a note denied that the payee indorsed it to the complainant as alleged in the latter's bill, and such denial W'as supported by affidavit as required by § 3279 of the Code, the burden of proof was held to be upon the complainant to show such indorsement, and in default thereof his bill was dismissed. Piedmont Bank v. Hatcher, 94 Va. 229, 26 S. E. Rep. 505.
This Statute Applies to Suits in Equity as Well as Actions of Law. — The statutes providing that the execution of the instruments shall stand admitted unless it is put in issue by a plea or an answer under oath apply to suits in equity based upon negotiable instruments. Simmons v Simmons, 33 Gratt. 451; James River, etc., Co. v. Littlejohn, 18 Gratt. 53.
Partnership Notes — Necessity for Sworn Plea Denying Partnership. — -In Virginia it is provided by statute (Code of 1887, § 8380): “That in all actions which may be hereafter commenced in the names of any persons composing a partnership, and the names of the several persons constituting such partnership shall be set forth in the declaration, the plaintiffs shall not be required to prove the existence of the said partnership, as described in said declaration, unless the defendant or some other person shall, by plea verified by affidavit, deny the existence of such partnership.” In Shepherd v. Frys, 3 Gratt. 442, it was held, that this statute applied to negotiable instruments which were signed in the name of the partnership. But the question whether the persons sought to he charged were members of the partnership or not, is still left open.
Thus, in an action of debt brought upon a negotiable note, signed with a partnership name, the declaration charged that the defendants subscribed the note by their partnership name. There was no affidavit by the deiendants or any of them putting the execution of the note in issue. They were held estopped from showing that the partnership had been dissolved before the note was made, and that the person making it had no authority to execute it for the other partners. Phaup v. Stratton, 9 Gratt. 615.
Failure of Consideration under the General Issue.— In Keckley v. The Union Bank, 79 Va. 458, it was held that a failure in consideration of a promissory note could not be shown under the general issue but must be specially pleaded under § 3299 of the Va. Code. But this case has been overruled, and it is now held that failure in consideration may be shown under the general issue. Columbia, etc., Association v. Rockey, 93 Va. 678, 25 S. E. Rep. 1009.
Upon this subject, see generally, monographic note on "Assumpsit” appended to Kennaird v. Jones, 9 Gratt. 183.
That Plaintiff Is Not a Holder for Value Hay Be Shown under General Issue. — And in an action of debt upon a negotiable note, the defence that the plaintiffs are not holders for value of the note, may be made under the plea of nil clébet. Fant v. Miller, 17 Gratt. 47.
Plea That Paper Was Unlawfully Issued by an Unchartered Corporation. — To an action of debt on a note alleged to have been made and discounted by the plaintiffs in Virginia, but made payable at a bank out of the state, a plea that the plaintiffs are an unchartered banking company, issuing and circulatingtheir own paper notes or bills as currency, contrary to law and public policy; and that they as a banking company discounted the said note, contrary to law and public policy, sets up a good defence to the action. So in such a case, a plea that the consideration of the note declared on was the bank paper of the plaintiffs unlawfully issued by them as currency, they being an uncharterd banking company, presents a good defence to the action. Hamtramck v. Selden, 12 Gratt. 28.
Plea of Payment Admits Execution of Instrument.— Where a plea oi payment was entered to an action on a bill oi exchange, it was held error to require the plaintiff to answer interrogatories which tended to show that the bill was not made for a debt due from the defendant in his individual capacity, but as president of an incorporated company, as the interrogatories were immaterial to the issue, the plea of payment having admitted the execution of the instrument. Rand v. Hale, 3 W. Va. 495.
Plea of Payment by Execution of Judgment Note. - -A plea that a judgment note was executed in satisfaction of anote given for the same debt is defective in not alleging that it was accepted in satisfaction of such note. Witz v. Fite, 91 Va. 446, 22 S. E. Rep. 171.
Where Pleas Conclude to Country Simüter Unnecessary. — in an action on a negotiable note, where the plea of nonassumpsit and payment properly conclude to the country, the plaintiff may, without the formal addition of the similiter, proceed to trial as though the issue had been formally joined. Wellsburg Bank v. Kimberlands, 16 W. Va. 555.
Where Defendant Pleads Nil Debet Instrument flust Conform to the Declaration. — Where the defendant in an action of debt on a note files the plea of nil debet, the note produced in evidence must correspon d with that described in the declaration. A note was described in the declaration as a note for three hundred and forty-two dollars payable two months after the date thereof, and the note offered in evidence was for three hundred and forty-two dollars and twenty-five cents, payable sixty days after date. This was held to be a fatal variance and the note was not admissible in evidence. Scott v. Baker, 3 W. Va. 285.
Promissory Note Cannot Be Pleaded In Bar. — In Lazier v. Nevin. 3 W. Va. 622, it was held that a prom issory note could not be pleaded in bar to an action upon a simple contract.
Plea of Nil Debet and Usury -Interrogatories. — En an action against the maker and indorsers of a negotiable note, they plead jointly nil debet and-usury; and file interrogatories to the plaintiff. 1. From whom did you get the note in suit? 2. If from de *316 fendant C, what did you pay him for it? He answers to the first: I received the note from 0, who, so far as I had any knowledge, was the owner of it. He declines to answer the second question. Defendants move to strike out last part of answer to the first question. Held, the only object of the question was to ascertain the character in which 0 indorsed the note; and the answer is therefore responsive to the question. If that was not the object, the answer was immaterial. The pleas being joint, defendants were not entitled to an answer to the second question to reduce the amount of recovery against C; nor were they entitled to the answer whilst they relied on the defence of usury. Hogshead v. Baylor, 16 Gratt. 99.
5. SET-OFF.
The General Rule. — The right of offset, being of modern statutory creation, is neither an equity nor lien recognized by the law merchant as attaching to a negotiable instrument; and therefore the tona Jide purchaser of an overdue negotiable note is not required to take notice of existing offsets, in the absence of legislative enactment. Davis v. Noll, 38 W. Va. 66, 17 S. E. Rep. 791; Davis v. Miller, 14 Gratt. 1.
BUI Cannot Be Set Off against a Party without Notice. — And so in an action by an indorsee against the maker of a promissory note, it was held that the latter could not set off a bill of exchange on which the plaintiff was responsible, unless it appeared that the defendant had received such bill before notice of the indorsement of the note to the plaintiff. Ritchie v. Moore, 5 Munf. 388, 7 Am. Dec. 688.
Unliquidated Claim. — An action of assumpsit was brought against the assignor of a note to collect the amount of the note assigned, on the ground that the obligor was insolvent when the note fell due. At the trial the assignor alleged that the assignment was without recourse and proved that there was a written contract, which was lost, that the assignee was to attend a certain sale of real estate belonging to the obligor, which sale was to take place under a decree of the circuit court, and make his money, but the witness could not remember the exact terms of the contract. The assignor then offered to prove the value of the land, and that the assignee did not attend the sale. It was held, that the assignor could not set off the damage which he had sustained by the breach of this collateral contract, in an action on the note, such claim being for unliquidated damages. McSmithee v. Feamster, 4 W. Va. 673.
6. EVIDENCE.
a. Admissibility.
Revenue Law Requiring Stamp before the Instrument Can Be Admitted Is a Local Law. — A revenue law of a state, which requires a stamp upon the indorsement of an overdue bill or note before such indorsement can be given in evidence, is a local law and has no exterritorial effect. Such note may be given in evidence in the courts of another state although unstamped, as the laws of one state can furnish no rule of evidence for the courts of another. Lambert v. Jones. 2 P. & H. 144.
But under the act of 1812, requiring negotiable notes to be stamped, a note, negotiable at a bank, might be given in evidence if duly stamped, before it became payable, though not so stamped when it was executed. Hannon v. Batte, 5 Munf. 490.
Unstamped Bill or Note Is Admissible. — And a bill or note though unstamped, is admissible in evidence, the act of congress not applying to proceedings in state courts. And they are admissible in evidence in the United States courts unless the omission to stamp was with fraudulent intent. Hale v. Wilkinson, 21 Gratt. 75.
In Crews v. Farmers’ Bank, 31 Gratt. 348, revenue stamps were placed upon a note by a collector of revenue more than a year after it was made. This could only be done upon the payment of a penalty of $50. It was held, that the payment of a penalty did not tend to show that the failure to affix the stamp when the note was made was with an intent to evade the law, and the note was admitted in evidence.
Admissibility of Bill of Exchange. — In Anderson v. Kanawha Coal Co., 12 W. Va. 526, it was held that bills of exchange drawn by the defendant on its agent, in favor of the plaintiff and described with particularity in the bill of particulars filed with the declaration containing the common counts, ought to be received in evidence on the trial of the issue of nonassumpsit.
Parol Evidence to Show Relation of. the Parties.— Parol evidence, by the weight of authority, is admissible, in general, to show the real relation between the parties to a bill or note, and that the actual liability of the parties among themselves is not that which appears upon the face of the instrument; and this is upon the ground that the facts of suretyship is collateral to the written instrument, and does not contradict or vary it. Faulkner v. Thomas (W. Va.), 35 S. E. Rep. 915.
Therefore, a written obligation, after payment thereof, does not preclude the makers and indorsers from proving by parol evidence a contemporaneous oral agreement as an inducement thereto; fixing their ultimate liabilities among themselves in accord with the true consideration and purpose of entering into such obligation. Faulkner v. Thomas (W. Va. 1900), 35 S. E. Rep. 915.
Presumption of Payment Rebutted by Parol Evidence. —The fact that the joint maker of á note pays the same at maturity, and does not for a long time require an indorser to come in and contribute his moiety thereof under á verbal arrangement between the parties, but waits until the death of such indorser, and presents the same'against his estate, is strong circumstantial evidence in rebuttal of such agreement, but it is not conclusive, and may be explained and overcome by sufficient competent parol evidence. Faulkner v. Thomas (W. Va. 1900), 35 S. E. Rep. 915.
Answer to a Bill of Discovery as Evidence. — It is a general rule that a written evidence of indebtedness cannot be contradicted or altered by evidence of verbal arrangement. But where a bill in equity calls on the defendant for a discovery as to the transaction between the parties the answer must be treated not only as evidence, but as evidence introduced by the plaintiff. Thompson v. Clark, 81 Va. 422. As to admissibility of protest in evidence, see ante, “Protest.”
b. Weight or Evidence.
Execution of Noteas Evidence of Settlement. — It is a well-settled rule that the execution of a note in settlement of an account is conclusive upon all the items charged in it, unless some accident be shown. Parkersburg Nat. Bank v. Als, 5 W. Va. 50; Johnston v. Zane, 11 Gratt. 552.
Noteas Evidence in an Action by Assignee. — In a proceeding by an assignee of anote against a remote assignor to recover on the implied contract of assignment, the note is a necessary piece of evidence for the plaintiff in order to prove the assignments, *317 and also to show the measure of the plaintiff’s re- ! covery. In the absence of proof to the contrary the law presumes that the assign or received for the note a sum equal to that specified in it. The fact that the note was seen and inspected by the court need not appear in the entry of the judgment, but the appearance of it does not vitiate the judgment, nor show that the judgment was rendered on the note, and. not on the contract implied from the assignment. Long v. Pence, 93 Va. 584, 25 S. E. Rep. 593.
Note as Evidence in Action by Indorsee. — And in an action on a negotiable note, the note is a necessary part of the plaintiff’s evidence, and there can be no judgment for the plaintiff without the production of the note. If judgment be rendered for the plaintiff, and a writ of error awarded to that judgment, the record certified to the appellate court can alone be looked to to ascertain what evidence was introduced in the trial court. In an action on a note where the record failed to disclose the fact that the note was offered in evidence in the trial court the j udgment was reversed. The appellate court will never presume what the record fails to disclose. Davis v. Poland, 92 Va. 225, 23 S. E. Rep. 292.
Suits upon Lost Instruments — Evidence.—in order to maintain a suit in equity setting up a lost negotiable note and praying for a decree for the payment thereof, it is indispensable, where the loss of such note is controverted by the answer of the defendants, that the loss should at the hearing of the cause be established by competent and satisfactory proofs. Exch. Bank v. Morrall, 16 W. Va. 546.
Evidence of Ratification of Improper Act. — The fact that a cashier handed the plaintiff a renewed note in lieu of the old note which should have been protested, saying the latter was lost. and the plaintiff retained the former some time, is not conclusive evidence of the plaintiff’s ratification of the bank’s action, but is evidence from which the jury might or might not infer such ratification. Roanoke Bank v. Hambrick, 82 Va. 135.
Weight of Check as Evidence. — In an action of assumpsit a check may be offered in evidence under the money counts; and if there is no other evidence in the case, it is of itself sufficient to entitle the plaintiff to recover on those counts. But it is only grima facie evidence of money lent, paid and advanced, or had and received; and when it is proved that no money had come into the hands of the defendant. the presumption raised by the check is rebutted, and no recovery can be had on those counts. Blair v. Wilson, 28 Gratt. 165.
Check Presumed to Be Given in Payment of Debt.— And a check upon a bank implies that it was given in payment of a debt due by the drawer to the party in whose favor it is drawn, or for money loaned by the latter to the former at the time of the execution of the check. Though such implication may be repelled by evidence that the check was not so given, but was in fact given for a loan by the drawer to the payee, such evidence being in conflict with the apparent purport of the transaction, ought to be very strong to repel the implication and to establish the contrary fact. Terry v. Ragsdale, 33 Gratt. 342; Blair v. Wilson, 28 Gratt. 165.
While the giving of a check by the debtor to a creditor is generally presumed to be only a provisional or conditional payment of the debt for which it is given, yet such check may, by special agreement of the parties, be given and received in full payment and absolute discharge of satisfaction of the debt. Whether it was so given and received is a question of fact for the jury. Blair v. Wilson, 28 Gratt. 165.
Recital in Trust Deed as Evidence. — In Powell v. White, 11 Leigh 309, a recital in a deed of trust, that the cestuis que trust were liable as indorsers for the maker of the deed, and that the maker of the deed was willing and desirous to indemnify and secure them from all loss and damage and consequence of their becoming indorsers, by conveying property for the purpose, was held not to entitle the indorsers, after the death of the maker, to rank as specialty creditors, in the administration of his personal assets.
Weight of Evidence a Question for the Jury. — The weight of evidence is in all cases a question for the jury, and it is improper for the court to pass upon the weight of evidence, as this would be usurping the functions of the jury. Thus in an action on a promissory note, the court if requested, should instruct the jury, that twenty years haying elapsed between the time when the note became due and the institution of the action, they ought to presume it paid, unless evidence be offered of some acknowledgment of the debt, or of payment of interest, or part payment of principal, in the twenty years. The court cannot be justified in refusing to give such instruction on the ground that the defendant has not stated the evidence given in the cause in his application; or that in the court’s opinion the said principle of law does not apply to the case, under the circumstances appearing in evidence; for this would be undertaking to judge of the weight of evidence. Wells v. Washington, 6 Munf. 532. For weight of protest as evidence, see ante, “Protest.”
c. Competency op Witnesses.
Husband and Wife as Witnesses.- -Where a husband and wife are joint makers of a negotiable note, neither party is a competent witness in an action on the note although no relief is prayed for in the bill as against the husband. In such case the payee is also incompetent. Jones v. Degge, 84 Va. 685, 5 S. E. Rep. 799. See monographic note on “Husband and Wife.”
Plaintiff or Person for Whose Benefit Suit Is Brought. —And under § 3, ch. 130,, of the W. Va. Code, as amended by Acts of 1882, neither the plaintiff, nor a person for whose benefit a suit is brought, is a competent witness against a defendant, who is the survivor of himself and a deceased party who with him, was a joint maker of the promissory note on which the action was brought, in regard to any personal transactions or communication, between either of them, and such deceased party. Heffiebower v. Detrick, 27 W. Va. 16.
Indorser as Witness in Action against Haker. — But an indorser of a note, whether negotiable or not, is a competent witness in a suit between the holder and maker, to prove that the note was given for a usurious consideration. But where a joint action of debt was brought against the drawers and indorsers, under the act of the assembly allowing a joint action in such case, it was held that one of the indorsers could not render himself a competent witness, by a confession of judgment. Taylor v. Beck, 3 Rand. 316.
Parties Interested. — A negotiable note was indorsed by several parties for the accommodation of the drawer, and at the maturity the last indorser had to take it up. He, thereupon, brought an action against his immediate indorser. At the trial the defendant offered as a witness, the indorser immediately preceding him on the note, to prove that all *318 of the indorsers had agreed at the timé of the execution of the note, to share equally the liability of loss on the note, should any occur, and that, as between themselves, they would be bound as joint securities only, and not be liable the one to the other as successive indorsers of negotiable paper. The trial court held that whether the plaintiff recovered or not, the witness’ interest would be the same except as to the costs, which the plaintiff might recover of the defendant, and that the witness might therefore testify, if the defendant would release him from all liability for costs. While the release was being prepared, it was discovered that the plaintiff had paid the money on the note more than five years before the trial, and hence, that if he failed to recover of the defendant in this suit, his recourse against the witness' would be barred by the statute of limitations, and the witness was not permitted to testify. Upon a writ of error it was held, that, the right of the witness to plead the statute in such an event, disturbs his equality of interest (if such equality existed before) in the subject-matter of this suit, and rendered him incompetent to testify, but his competency might be restored by an entire release to him, by the defendant, of all claim against him on account of his indorsers. Chapman v. Hiden, 2 P. & H. 91.
Party Interested to a Small Degree Is Incompetent.— In an action of debt against the maker and prior indorsers of a negotiable note, they pleaded jointly nil debet and usury. Before the trial the maker confessed a judgment, and there was a final judgment entered against him; and the two prior indorsers released him from all liability to them. As the maker was liable to the two last indorsers under the statute (Code, ch. 146, sec. 6, p. 587), for 5 per cent, damages for any .amount of the debt they might have to pay, he was held not a competent witness for the defendants to prove usury. Mills v. Central Savings Bank, 16 Gratt. 94.
Maker an Incompetent Witness to Prove Usury. — In .an action for debt against the maker and four indorsers of a negotiable note, they pleaded jointly nil debet and usury. Before the trial the maker confessed a judgment, and there was a final judgment entered against him, and the three indorsers released him from all liability to them. The maker was held still liable to the fourth indorser, and was not a competent witness for the defendants to prove usury. An agreement by the plaintiff not to take a judgment against the last indorser unless he recovered against all, did not release him so as to render the maker a competent witness. when released by the prior indorsers. Hogshead v. Baylor, 16 Gratt. 99.
7. THE JUDGMENT.
Judgment against Some and in Favor of Others. — in an action of debt by the holder of a negotiable note, against the maker and the four indorsers, upon the plea of usury by the indorsers, the jury found that the note was indorsed by the first three indorsers, for the accommodation of the maker, and was sold by him to the fourth indorser, at a usurious rate of interest; who afterwards and before it became due, indorsed it to the holder, for value. It was held, that upon this verdict, the court should render a judgment in favor of the maker and the first three indorsers, and against the fourth indorser, under the Code, ch. 177, sec. 9, p. 733. Moffett v. Bickle, 21 Gratt. 280.
An action of debt was brought under the statute, against the drawer and indorser of a protested negotiable note. Upon a demurrer by both defendants to the évidence offered by the plaintiff, in which demurrer the plaintiff joined, the court gave judgment against one defendant and in favor of the other. Raine v. Rice, 2 P. & H. 529.
When Final Judgment May Be Entered and When Writ of Inquiry Necessary. — A final judgment, when no plea is filed, may be rendered in the office at rules, for principal and interest, when the action is founded upon any instrument in writing for the payment of an ascertained sum of money. But where the plaintiff showed by a paper filed by himself, that the defendant was entitled to a credit, the jpdgment ought either to have been entered subject to such credit, or if the plaintiff refused to take judgment in that way, a writ of inquiry should have been awarded ; and where a judgment in such cáse was entered without the allowance of such credit, and without awarding a writ of inquiry, this was held reversible error. Rees v. Conococheague Bank, 5 Rand. 326.
Discontinuance as to a Patty Does Not Affect the Validity of Judgment. — A joint action was brought' against two partners as makers of a negotiable note, and two other parties as indorsers. One .of the partners filed a plea of nil debet, which plea was sworn to. On the motion of the plaintiff’s counsel the cause was discontinued as to the party so pleading. The other parties not appearing judgment was given against them by default. This judgment was held to be a valid judgment against the other parties, as the discontinuance of the action as to one of the parties did notamountto retraxit. A retraxit can only be entered by the plaintiff in person, and in open court. Muse v. Farmers’ Bank, 27 Gratt. 252.
Judgment against Parties Served with Process. — In a joint action against two makers an.d an indorser of a negotiable note, process was served upon one of the makers and the indorser, but was returned again and again as to the other maker, “not found” or “no inhabitant.” Upon a discontinuance of the action as to this maker, he was not thereby released from his liability on the note, and therefore the indorser was not released ; and the plaintiff was held entitled to judgment against the indorser and the maker who had been duly summoned. McVeigh v. Bank of Old Dominion, 26 Gratt. 785.
Confession of Judgment. — "Where two persons were indorsers at a bank for third parties who are insolvent, and, for the purpose of gaining an extension, one of the indorsers confessed judgment for the whole amount for which he was Háble, the third parties agreeing to give certain other collateral security ; and to procure the other indorser to likewise confess judgment, neither of which was done, it was held that the first indorser was liable on his confession of judgment, even though the bank had promised to obtain judgment against his coindorser, such promise being void. Kelly v. Taliaferro, 82 Va. 801, 5 S. E. Rep. 85.
Office Judgment Cannot Be Confirmed without Writer inquiry. — Where a joint action is brought against the drawer and indorsers of a negotiable note, an office judgment cannot be confirmed against all, or either of the defendants, without a writ of inquiry. In a suit against the drawer alone, a judgment might be rendered against him without the writ of inquiry, but when he is sued with the indorser, no judgment can properly he given finally against him, until a final judgment is also given against all of the defendants. Hatcher v. Lewis, 4 Rand. 152; Metcalfe v. Battaile, Gilmer 191.
*319 Judgment against Second Indorser Not Conclusive on First. — A judgment obtained against a subsequent indorser is not conclusive against a prior indorser; but in order to make him responsible, where the subsequent indorser has paid the debt, his liability must be fixed as though no judgment had ever been obtained. When such liability is fixed, a security of the subsequent indorser in a forthcoming bond, is entitled to be subrogated into the shoes of his principal to the extent of that liability. Conaway v. Odbert, 2 W. Va. 25.
Judgment against Indorsers without the Intervention of a Jury Is Error. — A negotiable note is not considered to be a writing for the payment of money as to the indorser, but it is only a collateral contract to pay it under certain circumstances, and judgment against the indorser without the intervention of a jury is improper. Metcalfe v. Battaile, Gilmer 191.
Void Judgment — Note Still a Valid Security. — Though the judgment upon a note rendered by the court not having jurisdiction of the case is void, the notéis still a valid security. Linn v. Carson, 32 Gratt. 170.
8. BELIEF IN EQUITY.
What Is a Sufficient Allegation of Dishonor in Bill.— A charge in a bill in equity that a defendant indorsed certain notes and that “said notes are filed” as exhibits with the bill, does not make the certificates of protest annexed to the notes parts of the bill, and is not a sufficient allegation of dishonor to charge the indorser. Tidball v. The Shenandoah Nat. Bank, 98 Va. 768. 37 S. E. Rep. 318.
Notice of Dishonor a Necessary Allegation. — In a bill to subject a decedent’s estate upon his liability as an indorser oí a negotiable paper, notice of the dishonor of the paper is a necessary allegation in the bill. Tidball v. Shenandoah Nat. Bank, 98 Va. 768. 37 S. E. Rep. 318.
Parties Primarily Liable Necessary Parties in a Suit against Indorsers. — In a suit in equity to subject the estate of an indorser, persons primarily bound on the paper are necessary parties, as they may have defences unknown to the indorser, and, being first liable, equity will not, except under special circumstances subject the estate of the indorser until that of his principal has been exhausted. Tidball v. The Shenandoah Nat. Bank, 98 Va. 768, 37 S. E. Rep. 318; Horton v. Bond, 28 Gratt. 816.
Maker a Necessary Party toa Suit against Indorser.— And upon a suit in equity to subject the land ol an indorser to his liability as an indorser upon a negotiable note, the maker of the note is a necessary party, and in order to charge the indorser, it is necessary to aver and prove dishonor by the maker, and notice thereof to the indorser. Fidelity, etc., Co. v. Engleby (Va. 1901). 37 S. E. Rep. 957.
Assignor Must Be Made Party in a Bill by Assignee.— Where a bill in equity asks relief for a plaintiff as assignee of the rights of another, the assignor must be made a party to the cause, and the assignment averred and proved, though not denied in the answer. Corbin v. Emmerson, 10 Leigh 663.
Where a note was sued on by an alleged assignee which had only been indorsed for collection, it was held necessary to make the alleged assignor a party. Lynchburg Iron Co. v. Tayloe, 79 Va. 671.
Error to Decree Sale of Land of Last Indorser before That of Maker and Prior Indorsers. — On a bill by a judgment creditor to subject the land of his debtors to satisfy a judgment against them as makers and indorsers of a note whose liabilities inter sese are successive, it is error for the court to decree a sale of the lands of the last indorser before resorting to the lands of the maker and prior indorsers of such note, unless to require the plaintiff to exhaust the estates of those debtors, whose liabilities are prior to the last indorser, will in the opinion of the court unduly deiay the plaintiff in the collection of his debt. Nat. Bank v. Bates, 20 W. Va. 210.
No Adequate Remedy at Law. — A written agreement between the maker and the payee of a note, in relation to the contract in pursuance of which the note was made, having been lost at the time a judgment was recovered on the note, and without which the maker had no defence at law, it was held that equity had jurisdiction of the case. Vathir v. Zane, 6 Gratt. 246.
Jurisdiction of Law and Equity Concurrent in Case of Lost Instruments. — Equity has jurisdiction wherever a lost instrument is to be set up, notwithstanding courts of law now exercise jurisdiction in the same case. In such case, a court of equity, having jurisdiction for one purpose, will adjudicate the whole merits of the cause. Hall v. Wilkinson, 35 W. Va. 167, 12 S. E. Rep. 1118.
Better Rule to Offer Indemnity in the Bill in Case of Lost Note. — Where a bill in equity is filed setting up a lost negotiable note and praying a decree against the maker and indorsers for the debt, while it may not be indispensable, it is safer, and more in conformity with what seems to be a general practice to offer in the bill to give the proper indemnity under the direction of the court. Exch. Bank v. Morrall, 16 W. Va. 546.
Court Must Decree Indemnity — And in a suit in equity upon a lost negotiable instrument where the court decrees for the debt, it is indispensable for the court to decree ample indemnity for the protection of the makers and indorsers oí such notes, and each of them decreed against; and the court should provide in its decree that the plaintiff shall take no benefit thereof until such indemnity be given. Exch. Bank v. Morrall, 16 W. Va. 546.
Court May Fix Liability on Party First Responsible. —On a bill in equity exhibited by the holder of a promissory note against the maker, or the indorsers, the court may fix the debt on the person first responsible, in order to avoid circuity of action. Chalmers v. McMurdo, 5 Munf. 252.
Charging a Wife’s Separate Estate — Joinder of Par= ties. — Equity is the appropriate tribunal for changing a wife’s separate estate, and an indorser on her note may be joined as a party. And if from cause developed in the suit, the plaintiif fails in his remedy against that estate, he may have relief in the same suit against the indorser. Walters v. Farmers’ Bank, 76 Va. 12.
A Decree Which Does Not Decide the Rights of the Indorsers Inter Sese Does Not Work an Estoppel. — In a suit upon a note against the maker and indorser, a decree was rendered in favor of the first indorser : but it not appearing 3ipon the face of the record, nor by extrinsic evidence, that the adjudication was upon the merits and that it decided the respective rights of the indorsers as between themselves, it was held, that the siirety of the second indorser, who had been compelled to pay the note, was not estopped by that adjudication from recourse against the first indorser Chrisman v. Harman, 29 Gratt. 494.
Moulding the Decree to Fit the Particular Case. — The maker of a note negotiable at the Bank of Virginia, filed a bill of injunction against the payee and his assignee, on the ground of an equity affecting the payee only. It was held, that the court of equity *320 having before it all the parties concerned, ought not to discharge the maker altogether, nor to turn over the assignee to a suit at law against the payee, but should decree against the latter in the first instance, that he should pay the amount of the note to the assignee, and the costs at law ; and liberty should be reserved to the assignee to apply to the court to dissolve the injunction as to the maker for so much of the said debt as he might not be able to recover from the payee ; in which case a decree ought also to be rendered in favor of the maker against the said payee, for so much thereof as he might be compelled to pay out as aforesaid. And the decree should further direct that the action at law in favor of the assignee against the payee if any be pending.be perpetually enjoined, exceptaste costs. In such case, the payee should pay to both the other parties, their costs in chancery, and j,n the court of appeals, upon a bill taken by himself and the assignee in the decision of which, both, the other parties substantially .prevailed. McNiel v. Baird, 6 Munf. 316.
Jurisdictional Amount of Appellate Court In Injunction Cases. — The amount in controversy on an appeal from a decree perpetually enjoining a sale under a deed of trust given to secure notes amounting to $500, from which a usurious discount of $52 has been deducted, is the whole sum secured, and the court of appeals has jurisdiction of the case. Schmelz v. Rix, 95 Va. 509, 28 S. E. Rep. 890.
Cancellation of Note Given by Incompetent Party. — A court of equity has power to decree the delivery up and cancellation of a promissory note given by an old man who .is clearly shown to be mentally incapable of transacting such business. Hiett v. Shull, 36 W. Va. 563, 15 S. E. Rep. 146.
Indorsers Right to File a Bill Quia Timet, — Where the holder of a note has recovered a judgment against the maker and the two indorsers and has issued execution on such judgment, the second and last indorser has not the right as. a matter of course to file a bill auia timet asking a court of equity to compel the payment of this judgment out of the sale of the real estate of the maker and first indorser, simply because he alleges that he is afraid that his own real estate .may be subjected to the payment of the judgment. Watson v. Wigginton, 28 W. Va. 533.
In Call v. .Scott, 4 Call 402, the drawer of a bill of exchange gave a mortgage to,indemnify anindorser against future liability, and the indorser was allowed to bring- a bill auia timet against the representative of the drawer to foreclose the mortgage and pay the whole of the bill of exchange.